UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MARTEL MILLER and PATRICK )
THOMPSON, )
    Plaintiffs, )
)  Case No. 05-2142
Vs. )
)
CITY OF CHAMPAIGN, CITY OF )
URBANA, )
And CHAMPAIGN COUNTY, )
    Defendants. )

FILED
AUG 1 7 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

**MEMORANDUM OF LAW
IN SUPPORT OF COMPLAINT**

The Illinois eavesdropping statute is unconstitutional in regards to the First Amendment right to document law enforcement activity in the public way, including by means of audiotape, so long as there is no actual interference with police work. According to 720 ILCS 5/14-3 Sec. 14-3 Exemptions, the following activities shall be exempt from the provisions of this Article:

(C) Any broadcast by radio, television or otherwise whether it be a broadcast or recorded for the purpose of later broadcasts of any function where the public is in attendance and the conversations are overheard incidental to the main purpose for which such broadcasts are then being made;

In all instances of the video recordings there was public attendance by large groups of people. With regard to gathering news in public places, members of the general public have all of the First Amendment rights of members of the press. Moreover, Miller and Thompson was collecting videotape and audiotape in part to create a documentary to provide information to the broader public regarding police-civilian relations- a core news gathering function of the press. This documentary was later broadcast on the Urbana Public Television station. .

(h) Recordings made simultaneously with a video recording of an oral conversation between a peace officer, who has identified his or her office, and a person stopped for an investigation of an offense under the Illinois Vehicle Code.

Mr. Miller was filming a bicycle traffic stop between a peace officer and a citizen, would surely be preserved these same rights and be exempt of the ILCS 5/14-3 Sec. 14-3 Exemption.

The First Amendment protects the right of civilians to photograph police officers performing their duties in public places. See Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969) (holding that a class of news photographers who covered the 1968 Democratic National Convention and attendant demonstrations in Chicago stated a claim against the police for "interfering with the plaintiff' constitutional right to gather and

report news, and to photograph news event"); Connell v. Town of Hudson, 733 F. Supp. 465, 473 (D.N.H. 1990) (holding that a police officer violated the First Amendment by ordering a news photographer to stop taking photographs next to the scene of a car crash. See also Williamson v. Mills, 65 F.3d 155, 158, (11th Cir. 1995) (holding that photographing an undercover police officer a t a public event "is a facially innocent tact, " and that a police officer violated the Fourth Amendment by arresting the photographer).

Moreover, the First Amendment protects the right of civilians to videotape police officers performing their duties in public place. See Smith v. city of Cummings, 212 F.3d 1332 (11th Cir 2000) (recognizing "a First Amendment right, subject to reasonable time, manner and place restriction, to photograph or videotape police conduct"); Channel 10, Inc.v. Gunnarson, 337 F. Supp. 634, 635, 638 (1972) (protecting the right of a journalist to use a "motion picture' device to record the arrest of an accused burglary suspect, and holding that "employees of the news media have a right to be in public places and on public property to gather information, photographically or otherwise").

Also, the First Amendment protects the right to make audio recordings of government activity. See Blackstone v. State of Alabama, 30 F.3d 117 (11th Cir. 1994).

(striking down a ban on a civilian's use of a tape recorder to document the meetings of a government body). See also Dorfman v. Meiszner, 430 F.2d 558 (7th Cir. 1970) (striking down on First Amendment grounds a ban on radio broadcasting in and around Chicago's federal courthouse, including in the surrounding plaza and sidewalks and the interior lobby and non-courtroom floors); Iacobucci v. Boulter, 193 F.3d 14 (1st Cir. 1999) (upholding a damages award against a police officer who falsely arrested a civilian for using a video/audio camera inside a publicly accessible area of a government building to record a conversation between government officials after the close of an open meeting).

**B.    Limits on the right to document law enforcement activity.**

The personal privacy of police officers is not a legitimate basis to restrict the use of photographs, videotapes, and audiotapes to document on-duty police activity. For example, in Cassidy v. ABC, Inc, 377 N.E.2d 126 (Ill. App. Ct. 1st Dist. 1978), the Illinois Appellate Court dismissed an undercover vice officer's invasion of privacy lawsuit against a journalist who surreptitiously videotaped him through a one-way mirror during a massage parlor bust. The court explained:

> [N]o right of privacy against intrusion can be said to exist with reference to the gathering and dissemination of news concerning discharge of public duties. . . . [T]he conduct of a policeman on duty is legitimately and necessarily an area upon which public interest may and should be focused. . . . [T]he very status of the policeman as a public official . . . is tantamount to an implied consent to informing the general public by all legitimate means regarding his activities in discharge of his public duties.

Id. at 132.

Moreover, the personal privacy of civilians interacting with police officers in public places is not a legitimate basis to restrict the use of photographs, videotapes, and audiotapes to document police activity. See Connell, 733 F. Supp. at 471 (rejecting as

"paternalistic" a police officer's claim that he could forbid a journalist from photographing a decedent in order to protect the privacy of the decedent and his family). When civilians stand in public places and speak in a conversational volume, they ordinarily can have no reasonable expectation that their words will remain private – especially when they speak with police officers, who famously can use everything they say against them. If a civilian speaks with a police officer in a public place, another civilian is free to capture the visual images of this conversation by means of a photograph or videotape. There is no invasion of privacy where another civilian also uses an audio recording device to capture the words. To the extent a civilian and/or a police officer wish to have a private conversation, they can simply retire to a private setting, such as the inside of a squad car with the windows rolled up.

However, civilians who wish to photograph, videotape, or audiotape police officers performing their duties in public places may not actually interfere with that police work. See State v. Lashinsky, 404 A.2d 1121 (N.J. 1979) (upholding the conviction of a photographer who disobeyed a police instruction to get out of the immediate vicinity of a car crash, while a victim in need of medical care was still in the car). Cf. Connell, 733 F. Supp. at 470 ("Chief Brackett could not lawfully interfere with Nick Connell's pictures-taking activities unless Connell unreasonably interfered with police and emergency functions"); Channel 10, Inc., 337 F. Supp. at 638 (the police could only order a television camera man to turn off his lighting device upon a "reasonable belief that such is interfering with or endangering them in their work").

*See California v. Greenwood,* 486 U.S. 35, 39 (1988). The Supreme Court has on a number of occasions suggested that there can be no reasonable expectation of privacy in what is exposed to the public.

In Rice v. Gercar 77 F.3d 483 (6th Cir. 1996), The Plain View Doctrine, because Sergeant Gercar had no lawful right of access to the videotape at the time he instructed officers to seize it, *see United States v. Dunn,* 480 U.S. 294, 301 (1987), the lawful right of access requirement protects property, not privacy, interests. confiscation of the videotape violated the Rice's rights under the Fourth Amendment The government may not search the Races' tape without a warrant anymore than it may search a newscast's tape of the arrest without a warrant.

Secondly, according to the Traffic Stop Study, reported by the Illinois Department of Transportation, in the year 2004 the Champaign Illinois driving population consisted of 7,568 African Americans. Out of those 7,568, 3,219(42%) were stopped by the Champaign Police Department. Whereas the white driving population consisted of 42, 438, and only 5,682 (13%) were stopped by the Champaign Police Department. See *Chavez v. Illinois State Police,* 251 F.3d 612 (7th Cir.2001) (rejecting a claim that a statistical disparity in traffic stops is enough by itself to establish racial profiling). *Martinez v. Vill. of Mount Prospect,* 92 F.Supp.2d 780, 782 (N.D.Ill.2000) ("Racial profiling of any kind is anathema to our criminal justice system....")

Hampton v. Hanrahan 600 F.2d 600, A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by

unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage.' Rotermund v. United States Steel Corp., 474 F.2d 1139 (8th Cir. 1973) (citation omitted). In order to prove the existence of a civil conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators; "(c) circumstantial evidence may provide adequate proof of conspiracy." Hoffman-LaRoche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971). See also United States v. Varelli, 407 F.2d 735, 741-42 (7th Cir. 1969). In Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969), we held that supervisory personnel are proper party-defendants to a section 1983 action.

Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, U.S.Ill. 1972. Jan 13, 1972
The only across-the-board special treatment which the Supreme Court has guaranteed pro se litigants, apart from the due process rights accorded all litigants in civil cases is the right to have courts liberally construe their pleadings. Pro se litigants deserve, of course, the minimum due process rights to which all other litigants are entitled. The most significant of these rights is an opportunity to be heard, 'granted at a meaningful time and in a meaningful manner. Allegations of pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. It is not, however, justifiable in civil cases, where many litigants appear pro se not because they prefer to do so, but because they cannot afford counsel. Modern procedural due process jurisprudence requires, at the very least, that courts should give the pro se civil litigant a liberal construction of his pleadings. The court should then determine what further process is due, based on the

individual facts and circumstances of the case. In short, in civil cases, there sometimes may be a 'license not to comply' with procedural requirements.

## ARGUMENT

Sergeant Griffet, who consulted with Assistant States Attorney, Elizabeth Dobson regarding his ability to seize the camcorder without a warrant. In the 40 minute VEYA documentary, Sgt. Griffet stated to Mr. Miller that he did not have any problem with him being filmed. Officer's Justus Clinton, Michael Pyburn, and Assistant States Attorney Elizabeth Dobson violated our First Amendment right to freedom of speech and the press, and our Fourth Amendment rights to illegal search and seizure, and our Fourteenth Amendment right to property without due process of the law, and unreasonable discrimination. Chief R.T. Finney, Deputy Chief John Murphy, Deputy Chief Troy Daniels, Lt. John Swenson, can be held liable for their responsibility and role they played. Therefore Thompson and Miller filming Champaign Police officers and civilian encounters would be meaningless without sound to the video image. Martel Miller and Patrick Thompson's documentary has been played at numerous local venues, aired on UPTV. Therefore, officers had no lawful right to seize the video-camcorder. In regards to the traffic stops, Officer stated in the video from his squad car, that he was being pulled over for a seat belt violation, whereas his statement in the letter reads, that he pulled me over because it seemed like I was excessively speeding. There was no radar detector used for him to make this determination. It was 1:30 am, it was dark and I was driving an older model 2-door, 1985 Cadillac. The officer's statement of me speeding does not correspond with him noticing a seat belt violation. The second and third traffic stop

shows a pattern of the Champaign police department racially profiling African Americans in the community. The traffic stop were premeditated and planned by the Champaign police officers. The Officer did not notice a light out on my vehicle and then request identification and check for any outstanding warrants. It was the other way around, because of him mistaking a coffee mug for a 40 ounce bottle of beer, he notified other officers for a possible warrant and to find a reason to justify a stop. Therefore the officer orchestrated a stop of an African American. This is a clear violation of my fourteenth amendment right to move freely. There was no need for the officer to run a records check, there was no need for the officer to also involve other officers to find an opportunity to run a warrant check

In regards to the conspiracy the Chief of the Champaign Police Department, commanding staff, and assistant States Attorney engaged in violating our constitutional rights by meeting to discuss how to file criminal charges to prevent Martel and Patrick from video taping police interactions in the community for a documentary, which was later broadcast on UPTV and other local venues.

WHEREFORE, the plaintiffs request this Court for an order granting the continuance of the complaint.

                                                      Plaintiffs

                                        Martel Miller and Patrick Thompson

Martel Miller, 114 E. Park St., Champaign IL, 61820

Patrick Thompson, 723 S. Mattis Avenue, Champaign IL, 61821

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on Thursday, July 28, 2005, service of the foregoing was made by submitting a true copy to the United States District Court for the Central District of Illinois and defendants.

Howard W. Small, Ansel & Small, Ltd. P.O. Box 468, Champaign IL 61824-0468

Jerome P. Lyke, Flynn, Palmer & Tague, P.O. Box 1517, Champaign IL 61824-1517

David E. Krchak, 30 E. Main PO Box 560, Champaign IL 61824-0560

Plaintiffs

Martel Miller and Patrick Thompson

*[signatures]*