E-FILED
Wednesday, 17 August, 2005 03:56:58 PM
Clerk, U.S. District Court, ILCD

MARTEL MILLER and PATRICK )
THOMPSON, )
    Plaintiffs, )
)
)   Case No. 05-2142
Vs. )
)
CITY OF CHAMPAIGN, CITY OF )
URBANA, )
And CHAMPAIGN COUNTY, )
    Defendants. )

## MEMORANDUM OF LAW
## IN SUPPORT OF COMPLAINT

FILED
AUG 17 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

The Illinois eavesdropping statute is unconstitutional in regards to the First Amendment right to document law enforcement activity in the public way, including by means of audiotape, so long as there is no actual interference with police work. According to 720 ILCS 5/14-3 Sec. 14-3 Exemptions, the following activities shall be exempt from the provisions of this Article:

(C) Any broadcast by radio, television or otherwise whether it be a broadcast or recorded for the purpose of later broadcasts of any function where the public is in attendance and the conversations are overheard incidental to the main purpose for which such broadcasts are then being made;

> In all instances of the video recordings there was public attendance by large groups of people. With regard to gathering news in public places, members of the general public have all of the First Amendment rights of members of the press. Moreover, Miller and Thompson was collecting videotape and audiotape in part to create a documentary to provide information to the broader public regarding police-civilian relations- a core news gathering function of the press. This documentary was later broadcast on the Urbana Public Television station. .

(h) Recordings made simultaneously with a video recording of an oral conversation between a peace officer, who has identified his or her office, and a person stopped for an investigation of an offense under the Illinois Vehicle Code.

> Mr. Miller was filming a bicycle traffic stop between a peace officer and a citizen, would surely be preserved these same rights and be exempt of the ILCS 5/14-3 Sec. 14-3 Exemption.

The First Amendment protects the right of civilians to photograph police officers performing their duties in public places. See Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969) (holding that a class of news photographers who covered the 1968 Democratic National Convention and attendant demonstrations in Chicago stated a claim against the police for "interfering with the plaintiff' constitutional right to gather and report news, and to photograph news event"); Connell v. Town of Hudson, 733 F. Supp. 465, 473 (D.N.H. 1990) (holding that a police officer violated the First Amendment by

ordering a news photographer to stop taking photographs next to the scene of a car crash. See also <u>Williamson v. Mills,</u> 65 F.3d 155, 158, (11th Cir. 1995) (holding that photographing an undercover police officer a t a public event "is a facially innocent tact, " and that a police officer violated the Fourth Amendment by arresting the photographer).

Moreover, the First Amendment protects the right of civilians to videotape police officers performing their duties in public place. See <u>Smith v. city of Cummings</u>, 212 F.3d 1332 (11th Cir 2000) (recognizing "a First Amendment right, subject to reasonable time, manner and place restriction, to photograph or videotape police conduct"); <u>Channel 10, Inc.v. Gunnarson</u>, 337 F. Supp. 634, 635, 638 (1972) (protecting the right of a journalist to use a "motion picture' device to record the arrest of an accused burglary suspect, and holding that "employees of the news media have a right to be in public places and on public property to gather information, photographically or otherwise").

Also, the First Amendment protects the right to make audio recordings of government activity. See <u>Blackstone v. State of Alabama</u>, 30 F.3d 117 (11th Cir. 1994).

(striking down a ban on a civilian's use of a tape recorder to document the meetings of a government body). See also Dorfman v. Meiszner, 430 F.2d 558 (7th Cir. 1970) (striking down on First Amendment grounds a ban on radio broadcasting in and around Chicago's federal courthouse, including in the surrounding plaza and sidewalks and the interior lobby and non-courtroom floors); Iacobucci v. Boulter, 193 F.3d 14 (1st Cir. 1999) (upholding a damages award against a police officer who falsely arrested a civilian for using a video/audio camera inside a publicly accessible area of a government building to record a conversation between government officials after the close of an open meeting).

B. **Limits on the right to document law enforcement activity.**

The personal privacy of police officers is not a legitimate basis to restrict the use of photographs, videotapes, and audiotapes to document on-duty police activity. For example, in Cassidy v. ABC, Inc, 377 N.E.2d 126 (Ill. App. Ct. 1st Dist. 1978), the Illinois Appellate Court dismissed an undercover vice officer's invasion of privacy lawsuit against a journalist who surreptitiously videotaped him through a one-way mirror during a massage parlor bust. The court explained:

> [N]o right of privacy against intrusion can be said to exist with reference to the gathering and dissemination of news concerning discharge of public duties. . . . [T]he conduct of a policeman on duty is legitimately and necessarily an area upon which public interest may and should be focused. . . . [T]he very status of the policeman as a public official . . . is tantamount to an implied consent to informing the general public by all legitimate means regarding his activities in discharge of his public duties.

Id. at 132.

Moreover, the personal privacy of civilians interacting with police officers in public places is not a legitimate basis to restrict the use of photographs, videotapes, and audiotapes to document police activity. See Connell, 733 F. Supp. at 471 (rejecting as

"paternalistic" a police officer's claim that he could forbid a journalist from photographing a decedent in order to protect the privacy of the decedent and his family). When civilians stand in public places and speak in a conversational volume, they ordinarily can have no reasonable expectation that their words will remain private – especially when they speak with police officers, who famously can use everything they say against them. If a civilian speaks with a police officer in a public place, another civilian is free to capture the visual images of this conversation by means of a photograph or videotape. There is no invasion of privacy where another civilian also uses an audio recording device to capture the words. To the extent a civilian and/or a police officer wish to have a private conversation, they can simply retire to a private setting, such as the inside of a squad car with the windows rolled up.

However, civilians who wish to photograph, videotape, or audiotape police officers performing their duties in public places may not actually interfere with that police work. See State v. Lashinsky, 404 A.2d 1121 (N.J. 1979) (upholding the conviction of a photographer who disobeyed a police instruction to get out of the immediate vicinity of a car crash, while a victim in need of medical care was still in the car). Cf. Connell, 733 F. Supp. at 470 ("Chief Brackett could not lawfully interfere with Nick Connell's pictures-taking activities unless Connell unreasonably interfered with police and emergency functions"); Channel 10, Inc., 337 F. Supp. at 638 (the police could only order a television camera man to turn off his lighting device upon a "reasonable belief that such is interfering with or endangering them in their work").

See *California v. Greenwood*, 486 U.S. 35, 39 (1988). The Supreme Court has on a number of occasions suggested that there can be no reasonable expectation of privacy in what is exposed to the public. In Rice v. Gercar 77 F.3d 483 (6th Cir. 1996), The Plain View Doctrine, because Sergeant Gercar had no lawful right of access to the videotape at the time he instructed officers to seize it, *see United States v. Dunn*, 480 U.S. 294, 301 (1987), the lawful right of access requirement protects property, not privacy, interests. confiscation of the videotape violated the Rice's rights under the Fourth Amendment The government may not search the Races' tape without a warrant anymore than it may search a newscast's tape of the arrest without a warrant.

Hampton v. Hanrahan 600 F.2d 600, A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage.' Rotermund v. United States Steel Corp., 474 F.2d 1139 (8th Cir. 1973) (citation omitted). In order to prove the existence of a civil conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators; "(c) circumstantial evidence may provide adequate proof of conspiracy." Hoffman-LaRoche, Inc. v. Greenberg, 447 F.2d 872, 875 (7th Cir. 1971). See also United States v. Varelli, 407 F.2d 735, 741-42 (7th Cir. 1969). In Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969), we held that supervisory personnel are proper party-defendants to a section 1983 action. The Supreme Court in Imbler did not hold that all official actions of a state prosecutor are absolutely immune from section 1983 liability. Imbler held only that a prosecutor has

absolute immunity "in initiating a prosecution and in presenting the State's case." Imbler, supra 424 U.S. at 431, 96 S.Ct. at 995. See Briggs v. Goodwin, 186 U.S.App.D.C. 179, 569 F.2d 10 (1977), Cert. denied, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978) (prosecutor's immunity limited to his "advocacy" functions). The Court left standing circuit decisions which, by focusing on "the functional nature of the activities" rather than the "status" of the prosecutor, held that certain official actions by state prosecutors are entitled only to qualified immunity. Imbler, supra, 424 U.S. at 430, 96 S.Ct. at 995. See, e. g., Guerro v. Mulhearn, 498 F.2d 1249, 1256 (1st Cir. 1974); Hampton v. City of Chicago, 484 F.2d 602, 608-09 (7th Cir. 1973); Robichaud v. Ronan, 351 F.2d 533, 536-37 (9th Cir. 1965). These cases clearly indicate that when a state prosecutor is performing investigative rather than advocacy functions, he is not wrapped with absolute immunity See Briggs, supra, 569 F.2d at 16- 17. In Hampton I, supra, we examined the claim of Hanrahan and Jalovec to absolute immunity for their pre-raid conduct. We concluded that their alleged participation in the planning and execution of a raid of this character has no greater claim to complete immunity than activities of police officers allegedly acting under (their) direction. *People v. Crane*, 307 Ill.App.3d 816, 719 N.E.2d 138, 142-43 (1999) (explaining that the dismissal of the indictment "is the only possible remedy" where a defendant's constitutional right to a speedy trial is violated) (citing *Barker v. Wingo*, 407 U.S. 514, 522 (1972)). To establish ineffective assistance of counsel, petitioner must show 1) that his trial counsel's performance was deficient or fell below an objective standard of reasonableness and 2) that such deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, U.S.Ill. 1972. Jan 13, 1972

The only across-the-board special treatment which the Supreme Court has guaranteed pro se litigants, apart from the due process rights accorded all litigants in civil cases is the right to have courts liberally construe their pleadings. Pro se litigants deserve, of course, the minimum due process rights to which all other litigants are entitled. The most significant of these rights is an opportunity to be heard, 'granted at a meaningful time and in a meaningful manner. Allegations of pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. It is not, however, justifiable in civil cases, where many litigants appear pro se not because they prefer to do so, but because they cannot afford counsel. Modern procedural due process jurisprudence requires, at the very least, that courts should give the pro se civil litigant a liberal construction of his pleadings. The court should then determine what further process is due, based on the individual facts and circumstances of the case. In short, in civil cases, there sometimes may be a 'license not to comply' with procedural requirements.

## ARGUMENT

Elizabeth Dobson violated our First Amendment right to freedom of speech and the press, and our Fourth Amendment rights to illegal search and seizure, and our Fourteenth Amendment right to property without due process of the law, and unreasonable discrimination. Chief R.T. Finney, Deputy Chief John Murphy, Deputy Chief Troy Daniels, Lt. John Swenson, can be held liable for their responsibility and role they played. Therefore Thompson and Miller filming Champaign Police officers and civilian encounters would be meaningless without sound to the video image. Martel Miller and Patrick Thompson's documentary has been played at numerous local venues, aired on UPTV.

Therefore, officers had no lawful right to seize the video-camcorder.
In regards to the conspiracy the Chief of the Champaign Police Department, commanding staff, and assistant States Attorney engaged in violating our constitutional rights by meeting to discuss how to file criminal charges to prevent Martel and Patrick from video taping police interactions in the community for a documentary, which was later broadcast on UPTV and other local venues. Also Elizabeth Dobson during her ride along as a civilian was also seen filming in the Mac's Gas station where large groups of African Americans were hanging out. The fact remains that Dobson was able to bring charges against Miller and Thompson for filming and authorized the seizure of the camcorder without a warrant from Martel Miller while acting as a prosecutor during her role as a civilian. On a separate occasion Assistant States Attorney Elizabeth Dobson, was caught on videotape filming civilians at a Mac's gas station. In both of these

occasions she was doing a ride along as a civilian with the Champaign Police Department. Therefore, as a civilian Mrs. Dobson was able to film citizens without being scrutinized or prosecuted violating the eavesdropping statute.

Dobson played a major role in violating Miller and Thompson's first, fourth, and fourteenth amendment of the U.S. Constitution by preventing Miller and Thompson from exercising their first amendment rights to freedom of speech and freedom of press in filming civilian and police interaction and our fourth amendment right authorizing the seizure of the video camera with out an arrest warrant. According to Miller and Thompson's fourteenth amendment to the U.S. Constitution, no person shall be denied due process of the law, fairness in government actions, equal protection of the law and protection of unreasonable discrimination and not to be deprived of life liberty and property.

In regards to Plaintiff Thompson who was criminally charged in August 24, 2004 states that his sixth amendment right to a speedy trial has been violated in 04-CF-1571. The U.S. Supreme Court has ruled that keeping an individual in custody up to the 116th day and releasing him on his own recognizance or bond, to add another 40 days to extend the time for trial. The courts went on to say the speedy trial act itself would become meaningless. Plaintiff Thompson's only opportunity to address the court in this matter was on December 10, 2004 after plaintiff was released from custody on December 3, 2004 where he expressed that his council was providing ineffective assistance of counsel. Plaintiff Thompson asserts that both cases 04-CF-1609 and 04-CF-1571 were being politically driven by both the parties. Thompson was no longer able to receive equal

protection under the law and a fair trial by an impartial jury based on all the bias and prejudiced that existed from the political body. The filming and documentary played a major role in the political campaign for office of states attorney which resulted in the removal of States Attorney John Piland and Assistant States Attorney Elizabeth Dobson.

The damage and the harm to Plaintiff Thompson were initiated by the conspiracy of the eavesdropping charges. A day after Miller was charged with the eavesdropping, Thompson was charged with allegations of home invasion and criminal sexual abuse by Assistant States Attorney Elizabeth Dobson. During the course of these events plaintiff Thompson suffered from the intentional prejudiced and biased and the long delay of going to trial, to avoid any long period of uncertainty and damage to his reputation. The sixth amendment guarantees these rights to a speedy trial.

Chapter 38, (725 ILCS 5/103-5) (b) For purposes of computing the 160 day period under this subsection, every person who was in custody for an alleged offense and demanded trial and is subsequently released on bail or recognizance and demands trial, shall be given credit for time spent in custody following the making of the demand while in custody. Any demand for trial made under this provision shall be in writing; and in the case of a defendant not in custody, the demand for trial shall include the date of any prior demand made under this provision while the defendant was in custody.

WHEREFORE, the plaintiffs request this Court for an order granting the continuance of the complaint.

Plaintiffs

Martel Miller and Patrick Thompson

*[signatures]*

Martel Miller, 114 E. Park St., Champaign IL, 61820

Patrick Thompson, 723 S. Mattis Avenue, Champaign IL, 61821

## CERTIFICATE OF SERVICE

**The undersigned hereby certifies that on Wednesday August 17, 2005, service of the foregoing was made by submitting a true copy to the United States District Court for the Central District of Illinois and defendants.**

Howard W. Small, Ansel & Small, Ltd. P.O. Box 468, Champaign IL 61824-0468

Jerome P.Lyke, Flynn, Palmer & Tague, P.O. Box 1517, Champaign IL 61824-1517

David E. Krchak, 30 E. Main PO Box 560, Champaign IL 61824-0560

Plaintiffs

Martel Miller and Patrick Thompson

*[signatures]*