UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| MARTEL MILLER and PATRICK THOMPSON, VEYA, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 05-2142 |
| ) | JURY DEMAND |
| CITY OF CHAMPAIGN, CITY MANAGER STEVE CARTER, ) | |
| CITY ATTORNEY FRED STAVINS, CHIEF OF POLICE R.T. ) | |
| FINNEY, DEPUTY CHIEF JOHN MURPHY, DEPUTY CHIEF ) | |
| TROY DANIELS, LT. JOHN SWENSON, SGT. DAVID ) | |
| GRIFFET, OFFICER JUSTUS CLINTON, OFFICER MICHAEL ) | |
| PYBURN, and UNKNOWN OFFICER, All in Their Individual ) | |
| and Official Capacity, CHAMPAIGN COUNTY, STATE'S ) | |
| ATTORNEY JOHN PILAND, ASST. STATES ATTORNEY ) | |
| ELIZABETH DOBSON, All in Their Individual and Official ) | |
| Capacity, CITY OF URBANA, ASSISTANCE CHIEF OF ) | |
| POLICE MIKE BILY, All in Their Individual and Official ) | |
| Capacity, ) | |
| ) | |
| Defendants. ) | |

## RESPONSE TO MOTION TO DISMISS AMENDED CIVIL COMPLAINT FILED APRIL 10, 2006

**(Mike Bily)**

NOW COMES, the Plaintiffs MARTEL MILLER, PATRICK THOMPSON, AND VEYA INC., by and through their attorneys, ROBERT G. KIRCHNER LAW OFFICE and hereby file a response to the *12(b)(6) Motion to Dismiss the Amended Civil Complaint Filed April 10, 2006* on behalf of Mike Bily and state as follows:

I. Standard of Review

In ruling upon Defendant's *12(b)(6) Motion to Dismiss* this Court must accept the allegations of Plaintiff's Complaint as true and draw all reasonable inferences therefrom in a light most


favorable to the Plaintiff. (*Triad Associates, Inc. V. Robinson,* 10 F. 3rd 492, 495 (7th Cir.). If it does not appear beyond doubt that the Plaintiff cannot establish any set of facts which would entitle him to relief the Court must deny Defendant's *Motion to Dismiss*. (*Hishon v. King and Spaulding,* 467 U.S. 69 (1984)*; Conley v. Gibson,* 355 U.S. 41 (1957). Additionally, because a Plaintiff need not plead all of the essential facts in his Complaint, the Court must also consider factual allegations which are consistent with the Complaint that are provided by Affidavit, attached Exhibits, or subsequent Briefs. (*Hrubec v. National Ry. Passenger Corp.,* 981 F. 2d 962, 963 (7th Cir. 1992)*; Doe v. First National Bank of Chicago,* 865 F. 2d 864, 873 (7th Cir. 1989)

## II. Statement of Points and Authorities

1. The seizure and withholding of the video production and interference with its publication constituted an unlawful prior restraint. (*Channel 10 Inc. V. Gunnarson*, 337 F. Supp. 634 (Dist. Minn. 1972), (*Robinson v. Fetterman*, 378 F. Supp. 2d 534 (E.D. Penn 2005), *Berglund v. City of Maplewood, Minnesota*, 173 F. Supp. 2d 935, 943 (Dist. Minn. 2001)

## III. Background

On or about March 26, 2004, Plaintiffs Patrick Thompson and Martel Miller, as leaders of VEYA, Inc. mailed correspondence addressed to Champaign Police Chief Finney explaining that the organization would be monitoring the police. (EXH. M, p.2). The letter includes the following statement: "If you have any questions or concerns, you may contact us at: veya@lists.cu.groogroo.com" (EXH. M, p.2) Both Martel and Patrick have access to the email listed above, checked it regularly, and never received any comments from any officers, the City, or anyone else raising any concerns or questions about the videotaping. (EXH. M, P. 2, EXH. N, p. 2) Additionally, no one ever contacted either Patrick or Martel after this letter was sent about

any concerns they had about monitoring the police or our project. (EXH. M, P. 2) The correspondence mailed to Police Chief Finney was signed by Martel Miller, and a copy of that correspondence was mailed on or about March 26, 2004 to City of Champaign Mayor Gerald Schweighart and City of Champaign City Manager Steve Carter. (EXH. M, P. 2)

On or about the first of May, 2004, Martel Miller and Patrick Thompson held a public forum at which they discussed their project to monitor police and citizen interactions. (EXH. M, P. 2) Many officers, including Defendant Griffet, and other community members were present at the forum. Thompson believes he told the audience that they were going to be taping interactions between the police and citizens, and putting it on UPTV. (EXH. M, P. 2) The forum that was held on their program to monitor police and citizen interactions was broadcast on UPTV from May through June, 2004. (EXH. M, P. 2)

At no time did any of the officers, including those present at the forum, or any other public official present at the forum, voice any displeasure or objection to their intent to tape the police interactions with local citizens until the tape and camcorder were confiscated on August 7, 2004.(EXH. M, P. 2) In fact, prior to beginning the videotaping, Martel and Patrick met with Mayor Schweighart. (EXH. M, P. 2) He asked them what the letter that we sent him (on March 26, 2004) was about, and Martel and Patrick told him that they were going to be taping the police interactions with citizens. (EXH. M, P. 2) Mayor Schweighart said he didn't have any problem with them doing that.(EXH. M, P. 2)

Patrick and Martel had several interactions with Champaign, Urbana, and University police officers between Memorial Day Weekend, 2004 and August 7, 2004 while Patrick and Martel were taping the officers' interactions with local citizens. (EXH. M, P. 2-3, EXH. N, P. 2-

3) The police officers, including Officer Griffet and Urbana Police Officer Anthony Cobb saw Patrick and/or Martel taping them and talked with them while Patrick and Martel were taping. (EXH. M, P. 3, EXH. N, P. 3)

While taping, both Patrick and Martel were cautious to never incite any individuals in their interactions between officers and citizens. (EXH. M, P. 3, EXH. N, P.3) There was never more than one person taping for VEYA at a time. (EXH. M, P. 3, EXH. N, P.3) In fact, other than Nikki Lamers taping a scene on the University of Illinois campus, all of the rest of the taping for VEYA was conducted by either Patrick or Martel Miller. (EXH. M, P. 3, EXH. N, P.3)

Both Patrick and Martel made a conscious effort to not interfere with any police/citizen action by waiting to speak with any citizens until after the police/citizen interaction had ended. (EXH. M, P. 3, EXH. N, P.3) Throughout the taping of police interactions with local citizens, both Patrick and Martel conducted themselves out in the open where everyone could see them and could see what they were doing. (EXH. M, P. 3, EXH. N, P.3) They also took precaution to not interfere with any of the officers' interactions with the citizens by waiting to interview citizens, and even talk with officers, until after the officers had concluded their interactions with the citizens.

Throughout their interactions with the police – from the letter to Chief Finney, their conversation with the Mayor, their conversations with various police officers including Officer Griffet, and the lack of any communication from any officer noting any dissent made both Patrick and Martel believed that they had permission to video and audio record the officers' interactions, including Officer Griffet's. (EXH. M, P. 3, EXH. N, P.3) They then proceeded with

the filming of their documentary.

On about August 22, 2004, Thompson and Miller finished editing the CitizenWatch videotape for viewing on UPTV. (EXH. N, ¶14, P. 2) The videotape was submitted to Urbana Public Television on August 23, 2004. (EXH. N, ¶15, P. 2) The video tape submitted to Urbana for viewing on the public access channel (hereinafter 'UPTV tape') included taping between Memorial Day weekend, 2004 and August 7, 2004. (EXH. N, ¶16, P. 2) The UPTV tape includes Officer Griffet telling Thompson he doesn't mind Thompson taping him. (EXH. N, ¶17, P. 2) The UPTV tape also includes footage of Officer Griffet waving at the camera and walking toward Thompson, and telling Thompson that he was curious about the videotaping and that he did not feel that they were doing anything improper. (EXH. N, ¶18, P. 2) The UPTV tape shows Officer Griffet asking Martel about what he was doing and referring to the videotaping that Martel was conducting at the time and Officer Griffet stating to Martel that he had no problem with the taping that was taking place. (EXH. N, ¶19, P. 2)

Martel turned the video in to Chris Foster at UPTV on 8/23/04. (EXH. N, ¶20, P. 3) When he returned to pick up the tape from UPTV on 8/24/04, Christ Foster told him that Urbana Police Department (Asst. Chief Bily) had already confiscated the tape. (EXH. N, ¶21, P. 3) No subpoena was served at that time.

The video included club scenes at the American Legion (Patrick taped this part), traffic stops, Campus getting out, interview of African American after he was stopped by police for allegedly shoplifting (which he hadn't done); more than five police cars; campus when the bars let out (no police- also there was a lot of jay walking, property destruction); the fair ground incident at the Champaign County Fair; Urbana Police Officer Cobb saying that the police tape

people, so if the cops charge Patrick and Martel, they'd have to charge the officers with the same offense, and also stating that the law of not permitting audio taping is not enforced. (EXH. N, ¶22, P. 3)

On August 24, 2004, Miller went to the UPTV office in the City Building of the City of Urbana and asked to retrieve the videotape he had given to Chris Foster the previous day. (EXH. N, ¶59, P. 6) He told Miller that his boss, Steve Holz, had taken the tape from him. (EXH. N, ¶59, P. 6) Miller then spoke with Police Chief Adair, and when he returned less than an hour later to speak with Chris Foster again, he told Miller that he had checked with Steve Holz, and had been told that Assistant Police Chief Bily had the tape. (EXH. N, ¶59, P. 6) A subpoena for the tape was not issued until August 31, 2004 (See EXH. I)

Because David Griffet, a Defendant in this case, includes in his police report CC0410399 that he was made aware of the UPTV tape by Urbana Police Lieutenant Mike Metzler about one week before the date of the report (dated 9/3/04) he had reviewed the tape, Miller believes that the actions of Bily to confiscate the tape kept the video from being aired on UPTV. (EXH. N, ¶60, P. 6) (See also EXHIBIT C, attached and #34, p. 3 of 8)  Additionally, no subpoena for the tape was issued until August 31, 2004 (See Subpoena Duces Tecum, Filed August 31, 2004, attached as EXHIBIT D) (EXH. N, ¶60, P. 6) The seizure and withholding of the camera and film and its subsequent alteration in order to interfere with filming and broadcast has been held to constitute an unlawful prior restraint. (*Channel 10 Inc. V. Gunnarson*, 337 F. Supp. 634 (Dist. Minn. 1972) (See also *Robinson v. Fetterman*, 378 F. Supp. 2d 534 (E.D. Penn 2005) and citations therein at 541.)

Once the charges against Miller were dropped, the same video tape that had been

confiscated by Assistant Chief Bily of the Urbana Police Department was shown to packed crowds of hundreds of people at the local Art Theater, Champaign Public Library, Smith Hall at the University of Illinois campus, and other locations, all <u>without incident</u> and without threat of prosecution. (EXH. N, ¶61, P. 6) (See newspaper clippings attached as EXHIBIT G) The seizure and charges were obviously intended to prevent publication of the broadcast and it was successful.  The claim that it would have been unlawful to view it is refuted by the facts before this Court and subsequent events.

Defendant Bily has filed a Motion to Dismiss consisting of three paragraphs in which he asserts an entitlement to dismissal based upon this Courts prior Order of February 13, 2006 in which the Court found that there was no possessory interest or expectation of privacy in the videotape delivery to Urbana Public Television and that no First Amendment protection was afforded for which relief may sought as a result of the video constituting a violation of the Illinois Eavesdropping Act.

No factual information, including affidavits, have been presented on behalf of the Defendant Bily.  Further factual development however is afforded by the affidavits of the Plaintiffs.  Specifically, that information indicated that subsequent to the videotape which the Defendant Bily claims could not have been broadcast, by virtue of being in violation of Illinois Eavesdropping Act, was actually broadcast on more than one occasion in public to multiple audiences.  Furthermore, as reflected in the argument filed herewith as to Defendant Dobson there is no evidence upon which this Court could find as a matter of law that the videotaping at issue violated the Illinois Eavesdropping Act.

Defendant Bily incorporates by reference his earlier pleadings, including an earlier

Memorandum of Law.  It was Defendant Bily who seized the tape from Urbana Public Television and prevented the broadcast of the documentary and thus he is personally and individually liable for the Plaintiff's claims with respect to the interference with the publication of the viewing of the documentary.  That seizure occurred <u>PRIOR</u> to any subpoena being served.

In *Berglund v. City of Maplewood, Minnesota*, 173 F. 2d 935 (Dist. Minn. 2001) similar issues were presented in the filming for broadcast of Plaintiffs television public access show entitled  "Inside/Insight News Hour".  The Court specifically noted that during the confrontation the Plaintiff operated a video recorder and when he was arrested passed it to another who refused to voluntarily give up the video tape inside the video despite a demand that he do so.  That then resulted in all police officers seizing and restraining the Plaintiff and confiscating the tape without a warrant on the alleged basis that it contained evidence of the commission of a crime.  The Court concluded that both the First and Fourth Amendments applied to the seizure at issue and that First Amendment materials are entitled to greater constitutional protection than material otherwise generally seized under the Fourth Amendment. (*Berglund v. City of Maplewood, Minnesota*, 173 F. Supp. 2d 935, 943 (Dist. Minn. 2001) The exigent circumstances exception acknowledged in Berglund has not been advanced by the Defendant herein nor is it factually supported.  While the ultimate decision in Berglund is adverse to the Plaintiffs' position in this case the analytical framework as applied to the eavesdropping statute as interpreted by the Illinois Supreme Court and the facts before this Court, which it must accept as true, clearly support the maintenance of the Plaintiff's claims and the denial of the Motion to Dismiss.

The assertion that all that Defendant Bily did was to respond to a lawful subpoena is inaccurate and belied affidavits of the Plaintiffs filed herewith.

Miller turned the video in to Chris Foster at UPTV on 8/23/04. (EXH. N, ¶20, P. 3) On August 24, 2004, Miller went to the UPTV office in the City Building of the City of Urbana and asked to retrieve the videotape Miller had given to Chris Foster the previous day. (EXH. N, ¶59, P. 6) He told Miller that his boss, Steve Holz, had taken the tape from him. (EXH. N, ¶59, P. 6) Miller then spoke with Police Chief Adair, and when I returned less than an hour later to speak with Chris Foster again, he told me that he had checked with Steve Holz, and had been told that Assistant Police Chief Bily had the tape. (EXH. N, ¶59, P. 6) A subpoena for the tape was not issued until August 31, 2004 (See EXH. I)**.**

Not a single authority has been cited by Defendant Bily in the context of his *Motion to Dismiss* or in any Memorandum of Law for any purpose other than for the purpose of demonstrating the legal insufficiency of the allegations made against the City of Urbana (See Memorandum of Law filed 7.21.05) The attachment of a docket sheet to the Memorandum of Law filed August 16, 2005 serves no purpose and has no relevance to the issues before the Court.

At the time of its seizure and retention Defendant Bily had no knowledge of its contents therefore there can be no claim of qualified immunity (nor has one been made.) Moreover even had the contents been known the tape was not unlawful or evidence of a crime as no unlawful "eavesdropping" had occurred.

In *People v. Ceja* 204 Ill.2d 332, 789 N.E. 1228 (Illinois 2003), the Illinois Supreme Court addressed the post-amended version of the Illinois Eavesdropping Statue and held that no violation of that statute occurs when the individuals are aware that their statements are being monitored. The Court characterized this as acquiescence in an implied consent to monitoring

when the communications continue despite the knowledge that they were being monitored. (*Ceja* at 349) Specifically, the Court noted that the controlling principals have been widely recognized and that the element of consent may be satisfied either expressly or by implication. Consent exists when a persons behavior manifests acquiescence. Implied consent, the Court stated, is consent in fact which is inferred from the surrounding circumstances indicating that the party knowingly agreed to the surveillance. Although the circumstances relevant to an implication of consent will vary from case to case, language or acts that tend to prove a party knows of or assents to encroachments of the routine expectations, conversations of private are sufficient. The Court specifically noted the visibility of the speakers as a factor in determining consent. (*Ceja* at 349-350) As demonstrated by the facts presented herein. The Plaintiffs notified the City of Champaign Police Department of their intent to produce a documentary depicting the activities of the Champaign Police Department and it's officers and, in particular, their involvement in traffic stops. (See also EXH N, ¶ 4 p. 1-2 , ¶ 10 P. 2, ¶ 19 P. 2-3 ; EXH. M, p. 2, and EXH .A) That letter was received and acknowledged by the command staff and City officials and it is clear from the factual information provided herewith, that specific officers, including Officer Griffett, had full knowledge and awareness of the monitoring of their activities in conjunction with the production of this documentary. Additionally, Griffet, in the documentary tape, speaks with Miller while he is filming and Officer Griffet telling Miller he had no problem with the taping that was taking place. (EXH. N ¶¶ 18, 19, P. 2) Thus, at the very least, a factual issue is presented which should entitle the Plaintiffs to pursue discovery.

These same principles were applied by the Appellate Court in *People v. Soto* 342 Ill.App.3d 105, 796 N.E. 690 (2nd Dist. 2003).

Thus, as early as 2003 the law had been established by the Illinois Supreme Court and an Appellate Court that the type of consent required to avoid liability under the Eavesdropping Statute existed under circumstances akin to that presented herein. Moreover, accidental overhears of recordings of a conversation clearly do not violate the Eavesdropping Act. (*People v. Ledesma* 327 Ill.App.3d 805, 812, 763 N.E.2d 806 (4th Dist. 2002)) The post-amendment principles were entirely consistent with earlier precedent.

WHEREFORE, the Plaintiffs' pray that this Court deny the *Motion to Dismiss* of Defendant Bily.

Respectfully submitted,

PATRICK THOMPSON, MARTEL MILLER and VEYA, INC., Plaintiffs

**By: s/ Robert G. Kirchner**
Robert G. Kirchner Bar Number 6182070
Attorney for Plaintiffs
Robert G. Kirchner Law Office
100 Trade Centre Drive Suite 402
Champaign, IL 61820
Email: rgk-kirchnerlaw@sbcglobal.net

**By: s/ Ruth E. Wyman**
Ruth E. Wyman Bar Number: 6284294
One of the Attorneys for the Plaintiff
Robert G. Kirchner Law Office
100 Trade Centre Drive, Suite 402
Champaign, IL 61820
Phone: 217-355-5660
Facsimile: 217-355-5675
E-mail: rw-kirchnerlaw@sbcglobal.net

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of November, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Howard W. Small       hwslaw@shout.net

David E. Krchak       krchak@tmh-law.com

James D. Green        jim@tmh-law.com

Jerome P. Lyke        jeromelyke@yahoo.com


**By: s/ Robert G. Kirchner**
Robert G. Kirchner
One of the Attorneys for Plaintiffs
100 Trade Centre Drive, Suite 402
Champaign, IL 61820
Phone: (217) 355-5660
Facsimile: (217) 355-5675
E-mail: rgk-kirchnerlaw@sbcglobal.net

**By: s/ Ruth E. Wyman**
Ruth E. Wyman Bar Number: 6284294
One of the Attorneys for the Plaintiff
Robert G. Kirchner Law Office
100 Trade Centre Drive, Suite 402
Champaign, IL 61820
Phone: 217-355-5660
Facsimile: 217-355-5675
E-mail: rw-kirchnerlaw@sbcglobal.net