UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| MARTEL MILLER and PATRICK THOMPSON, VEYA, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CITY OF CHAMPAIGN, CITY MANAGER STEVE CARTER, ) <br> CITY ATTORNEY FRED STAVINS, CHIEF OF POLICE R.T. ) <br> FINNEY, DEPUTY CHIEF JOHN MURPHY, DEPUTY CHIEF ) <br> TROY DANIELS, LT. JOHN SWENSON, SGT. DAVID ) <br> GRIFFET, OFFICER JUSTUS CLINTON, OFFICER MICHAEL ) <br> PYBURN, and UNKNOWN OFFICER, All in Their Individual ) <br> and Official Capacity, CHAMPAIGN COUNTY, STATE'S ) <br> ATTORNEY JOHN PILAND, ASST. STATES ATTORNEY ) <br> ELIZABETH DOBSON, All in Their Individual and Official ) <br> Capacity, CITY OF URBANA, ASSISTANCE CHIEF OF ) <br> POLICE MIKE BILY, All in Their Individual and Official ) <br> Capacity, ) <br> ) <br> Defendants. ) | 05-2142 <br> JURY DEMAND |

**Plaintiffs' Respondense to Defendant Sgt. David Griffet's Motion for Summary Judgment Under Count III of Plaintiffs' Amended Civil Complaint**

NOW COME the Plaintiffs, MARTEL MILLER, PATRICK THOMPSON, and VEYA, Inc., by and through their attorneys, Robert G. Kirchner Law Office, and in response to Defendant Sgt. David Griffet's Motion for Summary Judgment Under Count III of Plaintiffs' Amended Civil Complaint, state and show unto this Court as follows:

**A.    Introduction**:

Defendant Griffet seeks summary judgment solely on the basis that Patrick Thompson violated the Eavesdropping Act. Griffet supports his claim by his own affidavit and does not

describe in any fashion the audio content, or how that content violates the eavesdropping law.

He has not demonstrated an entitlement to summary judgment.

**B.   Response to Undisputed Material Facts**:

(1)   Undisputed Material Facts;

Plaintiffs do not dispute the following undisputed material facts:

3.a; 3.b;

(2)   Disputed Material Facts

Plaintiffs dispute the following material facts:

3.e   (Third clause) - Thompson taped Griffet on at least 2 other occasions.  (See Additional Material Facts, paragraph 32 and EXH. M, P. 5.)

3.f   Griffet consented to being taped both in the video, as well as in his lack of objection at any time – including when Miller was speaking with him while he was taping; when Thompson was taping on June 29, 2004; and by his and other officers' lack of objection to the taping that Miller and Thompson conducted in the community between Memorial Day weekend 2004 and Labor Day weekend 2004.  (See Additional Material Facts, ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 26, 27, and 28.

(3)   Immaterial Facts

Plaintiffs believe the following facts are immaterial:

3.a.   Griffet alleges in this paragraph that he was videotaped by Thompson at Mac's on June 29, while he was having a conversation with Allen Wilson.  Videotaping an officer as alleged in this paragraph is not a violation of the Illinois Eavesdropping Act.

3.b.   Griffet's allegation that Thompson was videotaping his conversation with Allen Wilson,

      which was not the result of a traffic stop does not suggest any facts that would demonstrate that Thompson, while "videotaping" was doing anything illegal.

3.c. The reason for Griffet being called to Mac's on June 29, 2004 is not within the personal knowledge of any of the Plaintiffs. Additionally, the reason for Griffet being at Mac's on June 29, 2004 is irrelevant to the videotaping that Thompson conducted.

3.d The reason why Griffet approached Allen is immaterial.

3.e (First and second clause) Whether a conversation is <u>videotaped</u> is irrelevant under the Eavesdropping statute.

(4) Additional Material Facts

Plaintiffs hereby submit the following additional material facts:

1. On or about March 26, 2004, Plaintiff Patrick Thompson and Martel Miller, as leaders of VEYA, Inc. mailed correspondence addressed to Champaign Police Chief Finney explaining that the organization would be monitoring the police. (EXH. M, p.2).

2. The letter includes the following statement: "If you have any questions or concerns, you may contact us at: veya@lists.cu.groogroo.com" (EXH. M, p.2)

3. Both Martel and Patrick have access to the email listed above, checked it regularly, and never received any comments from any officers, the City, or anyone else raising any concerns or questions about the videotaping. (EXH. M, P. 2, EXH. N, p. 2)

4. Additionally, no one ever contacted either Patrick or Martel after this letter was sent about any concerns they had about monitoring the police or our project. (EXH. M, P. 2)

5. The correspondence mailed to Police Chief Finney was signed by Martel Miller, and a copy of that correspondence was mailed on or about March 26, 2004 to City of

       Champaign Mayor Gerald Schweighart and City of Champaign City Manager Steve Carter. (EXH. M, P. 2)

6. On or about the first of May, 2004, Martel Miller and Patrick Thompson held a public forum at which they discussed their project to monitor police and citizen interactions. (EXH. M, P. 2)

7. Many officers, including Defendant Griffet, and other community members were present at the forum.

8. Thompson believes he told the audience that we were going to be taping interactions between the police and citizens, and putting it on UPTV. (EXH. M, P. 2)

9. The forum that was held on their program to monitor police and citizen interactions was broadcast on UPTV from May through June, 2004. (EXH. M, P. 2)

10. At no time did any of the officers, including those present at the forum, or any other public official present at the forum, voice any displeasure or objection to our intent to tape the police interactions with local citizens until our tape and camcorder were confiscated on August 7, 2004.(EXH. M, P. 2)

11. In fact, prior to beginning our videotaping, Martel and Patrick met with Mayor Schweighart. (EXH. M, P. 2)

12. Schweighart asked Miller and Thompspon what the letter that we sent him (on March 26, 2004) was about, and Martel and Patrick told him that they were going to be taping the police interactions with citizens. (EXH. M, P. 2)

13. Mayor Schweighart said he didn't have any problem with them doing that.(EXH. M, P. 2)

14. Patrick and Martel had several interactions with Champaign, Urbana, and University police officers between Memorial Day Weekend, 2004 and August 7, 2004 while Patrick and Martel were taping the officers' interactions with local citizens. (EXH. M, P. 2-3, EXH. N, P. 2-3)

15. The police officers, including Officer Griffet and Urbana Police Officer Anthony Cobb saw Patrick and/or Martel taping them and talked with them while Patrick and Martel were taping. (EXH. M, P. 3, EXH. N, P. 3)

16. Throughout our taping of police interactions with local citizens, both Patrick and Martel conducted themselves out in the open where everyone could see us and could see what we were doing. (EXH. M, P. 3, EXH. N, P.3)

17. Throughout their interactions with the police – from the letter to Chief Finney, their conversation with the Mayor, their conversations with various police officers including Officer Griffet, and the lack of any communication from any officer noting any dissent made both Patrick and Martel believed that they had permission to video and audio record the officers' interactions, including Officer Griffet's. (EXH. M, P. 3, EXH. N, P.3)

18. On June 29, 2004, at approximately 2 am, Patrick Thompson was standing in the parking lot of Mac's, and videotaped a traffic stop that involved three officers. (EXH. M, P. 5)

19. Thompson was more than 100 feet away from the traffic stop while he was taping the stop. (EXH. M, P. 5)

20. As he was taping the traffic stop, a crowd began to form in front of Mac's. (EXH. M, P. 5) Within thirty seconds of finishing filming of the traffic stop, Thompson turned the

       camera toward the crowd forming at Mac's.  (EXH. M, P. 5)

21. Thompson began taping the crowd and had conversations while he was taping, with some of the people in the crowd.  (EXH. M, P. 5)

22. While taping, Thompson also saw and videotaped Elizabeth Dobson videotaping the same scene of events that he was taping.  (EXH. M, P. 5)

23. Thompson does not know if she was recording any voices because he has not seen the videotape she made.  (EXH. M, P. 5)

24. During his taping, Thompson noticed Officer Griffet yelling at a man whose name I later learned to be Allen Wilson.  (EXH. M, P. 5)  They did not appear to be having a private conversation, since Griffet was yelling and swearing at him, and Mr. Wilson was yelling back.  (EXH. M, P. 5)

25. Two other officers were present and in the crowd that Thompson was taping.  (EXH. M, P. 5)

26. Despite Thompson's presence with his camcorder, none of the officers, including Officer Griffet, nor Assistant State's Attorney Dobson, asked him to stop taping them or the scene.  (EXH. M, P. 5)

27. In addition to taping Defendant Griffet on June 29, 2004 at Mac's, Thompson has videotaped him on two other occasions since June 29, 2004.  (EXH. M, P. 5)

28. Despite these three times that Thompson videotaped him and he was aware of Thompson taping him, he never approached Thompson or otherwise contacted him to request that he not audio or video tape him or to even suggest any displeasure at Thompson taping him and his interactions with other people.  (EXH. M, P. 5)

C.     Argument

Griffet's only argument is that Thompson violated the Eavesdropping Act. Griffet does not, however, demonstrate that Thompson unlawfully audio taped Griffet or that the taping was not incidental to the taping he was conducting. The entirety of his allegations – in his Motion for Summary Judgment and his affidavit, is that Thompson videotaped him. Under the facts Griffet puts forth, there is no violation of the Eavesdropping Act and no entitlement as a matter of law to summary judgment. Consent, appears to be disputed, and consent is potentially dispositive.

In *People v. Ceja* 204 Ill.2d 332, 789 N.E. 1228 (Illinois 2003), the Illinois Supreme Court addressed the post-amended version of the Illinois Eavesdropping Statue and held that no violation of that statute occurs when the individuals are aware that their statements are being monitored. The Court characterized this as acquiescence in an implied consent to monitoring when the communications continue despite the knowledge that they were being monitored. (Ceja at 349) Specifically, the Court noted that the controlling principals have been widely recognized and that the element of consent may be satisfied either expressly or by implication. Consent exists when a persons behavior manifests acquiescence. Implied consent, the Court stated, is consent in fact which is inferred from the surrounding circumstances indicating that the party knowingly agreed to the surveillance. Although the circumstances relevant to an implication of consent will vary from case to case, language or acts that tend to prove a party knows of or assents to encroachments of the routine expectations, conversations of private are sufficient. The Court specifically noted the visibility of the speakers as a factor in determining consent. (Ceja at

349-350) As demonstrated by the facts presented herein. The Plaintiffs notified the City of Champaign Police Department of their intent to produce a documentary depicting the activities of the Champaign Police Department and it's officers and, in particular, their involvement in traffic stops. (See also EXH N, ¶ 4 p. 1-2 , ¶ 10 P. 2, ¶ 19 P. 2-3 ; EXH. M, p. 2, and EXH .A) That letter was received and acknowledged by the command staff and City officials and it is clear from the factual information provided herewith, that specific officers, <u>including Officer Griffett</u>, had full knowledge and awareness of the monitoring of their activities in conjunction with the production of this documentary. Additionally, Griffet, in the documentary tape, speaks with Miller while he is filming and Officer Griffet telling Miller he had no problem with the taping that was taking place. (EXH. N ¶¶ 18, 19, P. 2) Thus, at the very least, a factual issue is presented which should entitle the Plaintiffs to pursue discovery.

These same principles were applied by the Appellate Court in People v. Soto 342 Ill.App.3d 105, 796 N.E. 690 (2nd Dist. 2003).

Thus, as early as 2003 the law had been established by the Illinois Supreme Court and an Appellate Court that the type of consent required to avoid liability under the Eavesdropping Statute existed under circumstances akin to that presented herein. Moreover, accidental overhears of recordings of a conversation clearly do not violate the Eavesdropping Act. (People v. Ledesma 327 Ill.App.3d 805, 812, 763 N.E.2d 806 (4th Dist. 2002)) The post-amendment principles were entirely consistent with earlier precedent.

## Conclusion

In light of the Additional Material Facts submitted by Plaintiffs, which create a genuine issue of material fact, and the "consent" being at issue, summary judgment is inappropriate and should be denied.

        Respectfully submitted,

        PATRICK THOMPSON, MARTEL
MILLER and VEYA, INC., Plaintiffs

**By: s/ Robert G. Kirchner**
Robert G. Kirchner Bar Number 6182070
Attorney for Plaintiffs
Robert G. Kirchner Law Office
100 Trade Centre Drive Suite 402
Champaign, IL 61820
Email: rgk-kirchnerlaw@sbcglobal.net

**By: s/ Ruth E. Wyman**
Ruth E. Wyman Bar Number: 6284294
One of the Attorneys for the Plaintiff
Robert G. Kirchner Law Office
100 Trade Centre Drive, Suite 402
Champaign, IL 61820
Phone: 217-355-5660
Facsimile: 217-355-5675
E-mail: rw-kirchnerlaw@sbcglobal.net

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of November, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Howard W. Small    hwslaw@shout.net

David E. Krchak    krchak@tmh-law.com

James D. Green    jim@tmh-law.com

Jerome P. Lyke    jeromelyke@yahoo.com

**By: s/ Robert G. Kirchner**
Robert G. Kirchner
One of the Attorneys for Plaintiffs
100 Trade Centre Drive, Suite 402
Champaign, IL 61820
Phone: (217) 355-5660

-9-

Facsimile: (217) 355-5675
E-mail: rgk-kirchnerlaw@sbcglobal.net

**By: s/ Ruth E. Wyman**
Ruth E. Wyman Bar Number: 6284294
One of the Attorneys for the Plaintiff
Robert G. Kirchner Law Office
100 Trade Centre Drive, Suite 402
Champaign, IL 61820
Phone: 217-355-5660
Facsimile: 217-355-5675
E-mail: rw-kirchnerlaw@sbcglobal.net