E-FILED
Wednesday, 29 November, 2006 11:59:16 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| MARTEL MILLER and PATRICK THOMPSON, VEYA, INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | 05-2142 |
| CITY OF CHAMPAIGN, CITY MANAGER STEVE CARTER, CITY ATTORNEY FRED STAVINS, CHIEF OF POLICE R.T. FINNEY, DEPUTY CHIEF JOHN MURPHY, DEPUTY CHIEF TROY DANIELS, LT. JOHN SWENSON, SGT. DAVID GRIFFET, OFFICER JUSTUS CLINTON, OFFICER MICHAEL PYBURN, and UNKNOWN OFFICER, All in Their Individual and Official Capacity, CHAMPAIGN COUNTY, STATE'S ATTORNEY JOHN PILAND, ASST. STATES ATTORNEY ELIZABETH DOBSON, All in Their Individual and Official Capacity, CITY OF URBANA, ASSISTANCE CHIEF OF POLICE MIKE BILY, All in Their Individual and Official Capacity, | ) | JURY DEMAND |
| Defendants. | ) | |

**PLAINTIFF'S EXHIBITS**

704-10399

March 26, 2004

R.T. Finney

Champaign, IL 61820

*Introduction to VEYA and VEYA Citizen Watch Program*

Dear R.T. Finney:

Our organization, Visionaries Educating Youth and Adults, or VEYA, is a nonprofit, community based organization dedicated to providing education for prevention of at-risk youths' incarceration and to reduce the recidivism rate of incarcerated adults.

We are writing to inform you of one of our programs, the VEYA Citizen Watch program, dedicated to the elimination of potential police abuse through civilian observation. We wish to notify you of our activities in the hope of avoiding misunderstanding and potential conflict with you officers. Accordingly, we ask that you, in turn, notify your officers of the existence of our program and that you ask that they respect our right to act as impartial observers.

VEYA is not an "anti-police" organization and the VEYA Citizen Watch program is not intended to interfere with or hinder the important work that your officers perform. Please note that VEYA observers are simply that—*observers*—who will not interfere in any way with police activities as they occur. For their own safety, VEYA observers generally operate in groups of 3-4 persons.

Thank you for your time and consideration. If you have any questions or concerns, you may contact us at: veya@lists.cu.groogroo.com

Sincerely,

VEYA—Visionaries Educating Youth and Adults

CC:
Steve Carter,
Gerald J. Schweighart

PLAINTIFF'S
EXHIBIT
A



IN THE CIRCUIT COURT OF CHAMPAIGN COUNTY, ILLINOIS

During the Month of SEPTEMBER A.D., 2004

THE PEOPLE OF THE STATE OF ILLINOIS

vs.

E.MARTEL MILLER

FILED
SIXTH JUDICIAL CIRCUIT
SEP 02 2004
Linda S. Frank
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY ILLINOIS

INDICTMENT

CT I –III EAVESDROPPING

A TRUE BILL

Foreman of the Grand Jury

**WITNESSES**

**David Griffet,IV, Champaign Police Department-CT I & III**
**Joseph McCullough, University of Illinois Police Department-CT II**

Bond fixed in the amount of

$__________

Judge

PLAINTIFF'S
EXHIBIT
B

STATE OF ILLINOIS )
) ss.
COUNTY OF CHAMPAIGN )

Criminal No. 04-CF-1482
Count I

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT, CHAMPAIGN COUNTY, ILLINOIS, in the year of our Lord Two Thousand Four

FILED
SIXTH JUDICIAL CIRCUIT
SEP 02 2004
Linda S. Frank
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY ILLINOIS

THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the name and by the authority of the State of Illinois, upon their oaths do present:

THAT E.MARTEL MILLER

late of said County, on the 7th day of August, in the year of our Lord Two Thousand Four at and within the said County of Champaign and State of Illinois aforesaid committed the offense of:

EAVESDROPPING-CLASS 1 FELONY,

In that the said defendant knowingly and intentionally used an eavesdropping device for the purpose of recording a conversation between Joseph McCullough, Eric Vogt, and John Richert, without the consent of Joseph McCullough, Eric Vogt, and John Richert, and that Joseph McCullough and Eric Vogt were law enforcement officers engaged in the performance of their official duties at the time of said recording, in violation of 720 Illinois Compiled Statutes, 5/14-2(a)(1)(A).

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the said People of the State of Illinois.

John C. Piland, State's Attorney

STATE OF ILLINOIS )
) ss.
COUNTY OF CHAMPAIGN )

Criminal No. 04-CF-1482
Count II

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT, CHAMPAIGN COUNTY, ILLINOIS, in the year of our Lord Two Thousand Four

THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the name and by the authority of the State of Illinois, upon their oaths do present:

THAT E.MARTEL MILLER

late of said County, on the 7th day of August, in the year of our Lord Two Thousand Four at and within the said County of Champaign and State of Illinois aforesaid committed the offense of:

FILED
SIXTH JUDICIAL CIRCUIT
SEP 02 2004
Linda S. Frank
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY ILLINOIS

EAVESDROPPING-CLASS 1 FELONY,

In that the said defendant knowingly and intentionally used an eavesdropping device for the purpose of recording a conversation between Michael Pyburn, Justus Clinton, and James Woods, without the consent of Michael Pyburn, Justus Clinton and James Woods, and that Michael Pyburn and Justus Clinton were law enforcement officers engaged in the performance of their official duties at the time of said recording, in violation of 720 Illinois Compiled Statutes, 5/14-2(a)(1)(A).

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the said People of the State of Illinois.

John C. Piland, State's Attorney

STATE OF ILLINOIS )
) ss.
COUNTY OF CHAMPAIGN )

Criminal No. 04-CF-1482
Count III

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT, CHAMPAIGN COUNTY, ILLINOIS, in the year of our Lord Two Thousand Four

FILED
SIXTH JUDICIAL CIRCUIT
SEP 02 2004
Linda S. Frank
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY ILLINOIS

THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the name and by the authority of the State of Illinois, upon their oaths do present:

THAT E.MARTELL MILLER

late of said County, on or about June-July,

in the year of our Lord Two Thousand Four at and within the said County of Champaign and State of Illinois aforesaid committed the offense of:

EAVESDROPPING-CLASS 1 FELONY,

In that the said defendant knowingly and intentionally used an eavesdropping device for the purpose of recording a conversation between himself and David Griffet,IV, without the consent of David Griffet,IV, and that David Griffet,IV was a law enforcement officer engaged in the performance of official duties at the time of said recording, in violation of 5/14-2(a)(1)(A).

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the said People of the State of Illinois.

John C. Piland, State's Attorney



FILED
SIXTH JUDICIAL CIRCUIT
SEP 24 2004
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, PLAINTIFF,

vs.

E. MARTEL MILLER, DEFENDANT.

NO. 2004-CF-1482

## STATE'S MOTION TO DISMISS

NOW COME the People of the State of Illinois, by Assistant State's Attorney Elizabeth J. Dobson, who move this Honorable Court to enter an order of dismissal as to the above-entitled cause, and in support thereof state as follows:

1. The defendant in this case is charged in an indictment filed September 2, 2004, with the offense of Eavesdropping (class 1 felony).

2. That the charge in this case was initiated at the request of the Champaign Police Department an the case was maintained in support of the law enforcement officers as victims of the charged offense.

3. That the Office of the Champaign County State's Attorney communicated to the Chief of Police of the City of Champaign that the charge would remain on file until either the case was tried or the Champaign Police Department made a request that the charge be dismissed.

4. That on September 23, 2004, the Office of the Champaign County State's Attorney received a written request, by fax, from the Chief of Police of the City of Champaign and the City Manager of the City of Champaign that the charge in this case be withdrawn and dismissed.

WHEREFORE, the People pray that this Honorable Court enter an order of dismissal in this cause.

Respectfully submitted,

Elizabeth J. Dobson
Lead Prosecutor

PLAINTIFF'S
EXHIBIT
C

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, | ) | |
| -vs- | ) | No. 2004-CF-1482 |
| E. MARTEL MILLER, Defendant. | ) | |

## AFFIDAVIT IN SUPPORT OF MOTION TO DISMISS

Elizabeth J. Dobson, being first duly sworn, deposes and states as follows:

1. That she is an Assistant State's Attorney for Champaign County, Illinois, and that she is the prosecutor who drafted and filed the Information alleging the offense of Eavesdropping (Class 1 Felony) in the above-entitled cause.

2. That on Saturday, August 7, 2004, based on information and belief, the defendant in the above-entitled cause used a video-audio recoding device to record a conversation that took place between officers of the Champaign Police Department and a citizen during the course of a traffic stop.

3. That, based upon information and belief, the defendant consented to the review of his tape at the scene of the traffic stop and a command officer from the Champaign Police Department noted that the officers involved in the stop had been video and audio recorded. This information was provided to Affiant, who advised that the camera and tape should be seized under exigent circumstances for subsequent review.

4. That, based upon information and belief, the recording equipment and video/audiotape were seized and maintained as evidence by the Champaign Police Department.

5. That, on Monday, August 9, 2004, Affiant went to the Champaign Police Department at the invitation of command staff to review the video/audiotape and to discuss the possibility of criminal charges being filed in the case. Affiant did go to the Champaign Police Department and did meet with two members of command staff about the case, but did not view the video/audiotape, as it was entered into evidence and was inaccessible to the involved personnel at that time.

6. That, during the course of the meeting on August 9, 2004, Affiant was advised of the existence of a letter to the Chief of Police of the City of Champaign, purportedly authored by the defendant in this case, who claimed to represent a citizen group called VEYA. The letter purportedly notified the Chief of Police of the City of Champaign that the citizen group was going to act as observers concerning police-citizen interactions. Affiant requested a copy of this letter, purportedly from the defendant, to determine if mention had been made of the video/audio recording of police officer activity and to determine if consent, implied or otherwise, had been given by the police to the recording activity at issue.

7. That Affiant was accompanied by command personnel at the Champaign Police Department from the meeting room on the first floor to the administrative offices on the second floor.

8. A meeting then took place between Affiant and other members of the police department command staff, as an attempt was made to locate a copy of the requested letter. That the

letter was not located in the first administrative office and that command officers then proceeded into the occupied office of the Chief of Police in order to retrieve the requested letter.

9.   That conversation was ongoing between Affiant and command officers at the Champaign Police Department as to whether charges would/could be filed under these facts.

10.  That the above-referenced conversation was taking place while command officers were present in the office of the Chief of Police, with the Chief of Police present, while Affiant stood outside the door to the office and waited.

11.  That at this time, command officers communicated to Affiant the concurrence of the Chief of Police with the filing of criminal charges in this matter, specifically that the Chief of Police had authorized charges and that his concern was that the Champaign Police Department not be the first or only police agency alleged as the victim of the Eavesdropping offense.

12.  That, as a direct result of the request of the Chief of Police of the City of Champaign, command staff contacted the University of Illinois Police Department and made arrangements for the report from UIPD officers concerning a video/audio recorded conversation between UIPD officers and a citizen that was recorded on the same tape that was seized by the Champaign Police Department, to be forwarded to the Office of the State's Attorney for consideration of charges.

13.  That, before she left the Champaign Police Department that day, Affiant received reports from the Champaign Police Department to consider for charging, along with the requested letter from VEYA from the Chief's office.  Additionally, when Affiant returned to her office, she was provided by fax with a copy of the report from the University of Illinois Police Department detailing the video/audio recorded traffic stop conducted by that department. Furthermore, the UIPD reports did not contain the name of the citizen who was recorded in connection with the traffic stop, so Affiant contacted UIPD and METCAD and was provided with that citizen's name.

14.  That Affiant communicated the desire of the Champaign Police Department to the Champaign County State's Attorney and, based on that reported position, received authorization from the State's Attorney to initiate criminal charges.

15.  That on Tuesday, August 10, 2004, Affiant filed the criminal charges in this case by way of a 2-count information: count I alleging the illegal recording as it pertained to the UIPD officers and count II alleging the illegal recording as it pertained to Champaign Police Department officers.

16.  That on Tuesday, August 10, 2004, Affiant sought the issuance of an arrest warrant for the

defendant on this class 1 felony offense, but this request was denied and a summons was ordered to issue for the defendant, with the return date of August 23, 2004.

17. That at no time between the filing date of August 10, 2004 and the summons return date of August 23, 2004 did Affiant receive information from the Champaign Police Department suggesting an administrative change in position concerning the filing of criminal charges.

18. That at no time between the summons return date of August 23, 2004 and the Grand Jury date of September 2, 2004 did Affiant receive information from the Champaign Police Department suggesting an administrative change in position concerning the filing of criminal charges.

FURTHER AFFIANT SAYETH NOT.

Elizabeth J. Dobson
Lead Prosecutor

STATE OF ILLINOIS )
) ss
CHAMPAIGN COUNTY, ILLINOIS )

Elizabeth J. Dobson, Assistant State's Attorney for Champaign County, Illinois, being first duly sworn, deposes and states that she has read the above and foregoing Affidavit by her subscribed and that the facts and information set forth therein are true to the best of her knowledge and belief.

Subscribed to and Sworn before Me

This 24th day of September, 2004.

Circuit Clerk



# John C. Piland
## CHAMPAIGN COUNTY STATE'S ATTORNEY

Courthouse
101 E. Main Street
P.O. Box 785
Urbana, IL 61801
Phone (217) 384-3733
Fax (217) 384-3816
Traffic fax: (217) 384-6591

*First Assistant State's Attorney*
William R. Gaston

*Criminal Division*
Elizabeth J. Dobson
Steven D. Ziegler
Duke C. Harris
Mick McAvoy
Kelly M. Griffith
Lawrence T. Solava
Michelle E. Brooks
Sarah J. Carlson
Kenneth R. Swails
Robert A. Scales
Timothy J. Sielaff
Daniel C. Jackson
Lindsey R. Steiling

*Civil Division*
Brookens Administrative Center
1776 E. Washington
Urbana, IL 61802
Phone (217) 384-3776
Fax (217) 384-3896
Joel Fletcher
Matthew J. Hartrich

*Child Support Enforcement Alliance*
Phone (217) 384-3850
Mary K. Manning
Wanda E. Donnelly
Investigator
Gerald A. Morgan

*Misdemeanor*
Phone (217) 384-3813
David C. Steigmann

*Domestic Violence Unit*
Phone (217) 384-3750
Adam M. Dill
*Domestic Violence Advocates*
Susan Y. Chapin
Lisette Lugo
*Investigator*
David Griffet

*Investigator*
James E. Davis

*Administrative Assistant*
Theresa A. Smith

*Paralegal*
Janelle Albrecht

*Victim/Witness Services*
Phone (217) 384-8625
Terry Chaney-Bruce
Bobbie Sykes

*Adult Diversion Program*
(217) 384-3802
Martin Sheridan
Kathryn J. McGee

FOR IMMEDIATE RELEASE

Contact: State's Attorney
John Piland
384-3733

State's Attorney John Piland today characterized as "totally false" suggestions made in News Gazette articles reporting that the Champaign County State's Attorney's Office failed to provide the Champaign Police Department with an opportunity for input regarding the filing of eavesdropping charges. Piland stated that the charges were filed at the request of the Champaign Police Department only after the command staff at the Champaign Police Department reviewed the matter and informed the State's Attorney' s Office of their desire to proceed.

"The charges were filed at the <u>request</u> of the Champaign Police Department and only after command staff had the opportunity to review their case" stated Piland. "Furthermore, the charges remain on file at their direct request. Statements or suggestions to the contrary are completely false."

Piland stated that he personally made the decision to file charges in support of the involved police officers only after being informed that the Champaign Police Department requested charges be filed.

Felony eavesdropping charges were filed by the State's Attorney's Office on August 10, 2004. The Champaign County Grand Jury later indicted E. Martel Miller and Patrick Thompson on the counts originally charged as well as additional counts. Rules of Professional Conduct prohibit the State's Attorney's Office or the Police Department from describing or discussing the specific facts of these cases in an effort to correct other factual errors printed in the News-Gazette. The rules require the statement that the fact that a defendant has been charged with a crime is merely an accusation and that the defendant is presumed innocent unless proven guilty.

PLAINTIFF'S EXHIBIT
D

Piland stated that he is not trying to ascertain the source or reason for the incorrect statements but does believe the public should be informed rather than misinformed on this issue. Piland indicated that while the case remains pending he understands that the Champaign Police Department desires the opportunity to speak with certain groups and individuals in an attempt to avoid any future problems. Piland also stated that because the police are the victims in the case, he would continue to respect the wishes of the Champaign Police Department in whether the cases would be

For confirmation of the assertion that the command staff of the Champaign Police Department had the opportunity to review the matter and after reviewing their own case requested charges be filed by the Champaign County State's Attorney contact:

Deputy Chief John Murphy and Lt. John Swenson @ 351-4545
These individuals have first hand knowledge of these facts.

For confirmation of the assertion that the command staff of the Champaign Police Department has specifically requested the State's Attorney's Office not dismiss charges pending meetings with certain groups and individuals contact:

Deputy Chief Troy Daniels @ 351-4545
He has first hand knowledge of these facts.

IN THE CIRCUIT COURT FOR THE SIXTH JUDICIAL CIRCUIT

CHAMPAIGN COUNTY, ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS, )
)
Plaintiff, )
)
v. ) No. 04-CF-1482
)
E. MARTEL MILLER, )
)
Defendant. )

---

THE PEOPLE OF THE STATE OF ILLINOIS, )
)
Plaintiff, )
)
v. ) No. 04-CF-1609
)
PATRICK D. THOMPSON, )
)
Defendant. )

---

REPORT OF PROCEEDINGS had in the above-entitled causes on September 2, 2004, before the Grand Jury.

APPEARANCES:

MS. ELIZABETH DOBSON
Assistant State's Attorney
for the People

---

Melissa Clagg, RDR, CRR
License No. 84-2876
Official Court Reporter
Champaign County Courthouse
Urbana, Illinois 61801

PLAINTIFF'S
EXHIBIT
E

[illegible] two cases together this morning. Those are 2004-CF-1482, People v. E. Martel Miller, and 2004-CF-1609, People v. Patrick D. Thompson.

In Case No. 2004-CF-1482, the indictment is against E. Martel Miller and read as follows: Count I states that on August 7th, 2004, within Champaign County, Illinois, E. Martel Miller committed the offense of eavesdropping, in that the said Defendant knowingly and intentionally used an eavesdropping device for the purpose of recording a conversation between Joseph McCullough, Eric Vogt, and John Richert, without the consent of Joseph McCullough, Eric Vogt, and John Richert, and that Joseph McCullough and Eric Vogt were law enforcement officers engaged in the performance of their official duties at the time of said recording, in violation of 720 ILCS 5/14-2(a)(1)(A).

Count II states that on August 7th, 2004, within Champaign County, Illinois, E. Martel Miller committed the offense of eavesdropping, in that the said Defendant knowingly and intentionally used an eavesdropping device for the purpose of recording a conversation between Michael Pyburn, Justus Clinton, and James Woods, without

And Count III states that on or about June to July, 2004, within Champaign County, Illinois, E. Martel Miller committed the offense of eavesdropping, in that the said Defendant knowingly and intentionally used an eavesdropping device for the purpose of recording a conversation between himself and David Griffet, IV, without the consent of David Griffet, IV, and that David Griffet, IV, was a law enforcement officer engaged in the performance of official duties at the time of said recording, in violation of 720 ILCS 5/14-2(a)(1)(A).

In Case No. 2004-CF-1609, the indictment is against Patrick D. Thompson and states that on or about June to July, 2004, within Champaign County, Illinois, Patrick D. Thompson committed the offense of eavesdropping, in that the said Defendant knowingly and intentionally used an eavesdropping device for the purpose of recording a conversation between Allen Wilson and David Griffet, IV, without the consent of Allen Wilson and David Griffet, IV, and that David Griffet, IV, was a law

enforcement officer engaged in the performance of official duties at the time of said recording, in violation of 720 ILCS 5/14-2(a)(1)(A).

I'll remind the Grand Jury that with regard to each case and each Defendant you have the right to subpoena and question any person against whom the State's Attorney is seeking a bill of indictment or any other person and to obtain and examine any documents or transcripts relevant to the matter being prosecuted by the State's Attorney.

Now, before we get to the testimony concerning these cases, I wanted to indicate a couple of things concerning the offense of eavesdropping.

I know that this case -- these cases have generated a lot of media attention, and it may be that you are operating under some misapprehension as to what the law actually is in connection with this case, because it has been publicly indicated incorrectly as to what the actual law pertaining to eavesdropping is.

What you need to understand is that eavesdropping applies to recorded conversations. It does not apply to recording things that are visual only. So, once we -- any of us put ourselves out in the public forum, we are subject to being recorded, to having ourselves recorded,

[illegible] any number of places. People can do it. Businesses can do it. Banks do it all the time. Stores do it all the time. That's perfectly legitimate. It is not illegal to record the outer aspects of a person. That's one of the rights and responsibility, I guess, we have as citizens is that when you go in the public in this way, you subject yourself to being recorded in that manner. And there is not a thing that the government is attempting to do in order to regulate that type of thing.

The only way I know that we're regulating the recordings of someone's outer aspect are in dressing rooms at stores. You're not supposed to do that. Of course, in private homes, you're not supposed to do that, but out in public, you get recorded all the time, and that's not eavesdropping.

What is eavesdropping is when you record conversations. And that's different, because then the offense refers to the use of eavesdropping device to hear and record all or any part of a conversation. So, that is what the protection is that we have pursuant to the eavesdropping statute is that you cannot have conversations recorded in most instances other than with a person's advanced knowledge and permission in connection

Now, another thing you need to know about this is
there's been some examples that get put out publicly like,
oh, can't you record your kid or recital or can't you
record your child playing baseball or whatever and what
happens if some conversations get incidentally recorded.

The answer is perfectly clear in the statute. If
you are incidentally, that is to say, accidentally
recording conversation, that is not illegal. That is not
eavesdropping. Eavesdropping requires the knowing and
intentional use of a device in order to record a
conversation.

So, I want to make sure that you understand that
because there's, again, there's been a lot of publicity in
connection with these cases and a lot of things that have
been put out in the community incorrectly in terms of --
in terms of what these offenses really are.

The other thing you need to understand is that law
enforcement officers are a protected class under the
eavesdropping statute.

Law enforcement officers are allowed to record
people's exterior and also to record conversations, but
they only have two circumstances under which they can
record conversations. These are then specific statutory

exemptions that exist in order to govern police officers' conduct with other individuals in the community.

Situation number one, traffic stops. So, if an officer is conducting a, you know, stop somebody for speeding or any of the petty traffic violations or the more serious, you know, DUI, driving while revoked, those types of crimes, those conversations are recorded and that is permissible under the statute. It's under the eavesdropping code as an exemption and it's also in the motor vehicle code that those will be recorded.

The other opportunity that the officers have in order to legally conduct recording of conversations are when they have judicially authorized overhear paperwork. They have to go before a judge. They have to lay out what their investigation consists of and they have to obtain prior judicial authorization in order to conduct the overhear or recording of conversations.

You've heard, I think, already, and I'm sure you'll hear again in your service about cases, particularly involving drug activity, where an informant may be wired. They put recording devices on the person and send them in to conduct a controlled buy and then they come out and then the investigation continues. That is done and it can only be done with prior court

authorization.

So, those are police officers acting with authorization from court in advance of what they do or police officers acting in the context of traffic stop. Both specific statutory exemptions allow them to conduct recordings that other people are not allowed to do.

So, again, with regard to taping your kids, go ahead.

With regard to taping a police officer engaged in the course of his professional occupation, most likely you can't do it if it's a matter of audio recording as opposed to video recording.

Okay. So, with that, let me start with Officer McCullough.

JOSEPH MCCULLOUGH

being first duly sworn, was examined and testified as follows:

EXAMINATION

BY MS. DOBSON:

Q. Would you state your name, please.

A. Joseph McCullough.

Q. What is your occupation?

A. Police officer with the University of Illinois.

Q. And how long have you been with the University

Police Department?

A. I've been a university police officer now for four years, ten months of which at the University of Illinois.

Q. All right. Do you also have occasion to work with another officer at the University of Illinois Police Department named Eric Vogt?

A. Yes.

Q. Now, I'd like to turn your attention, Officer, to August 7th of 2004. On that date, do you recall conducting a stop, a traffic stop of a motorcycle at the Garcia's parking lot?

A. Yes.

Q. Did you have occasion to issue a citation, a traffic citation to that particular motorcyclist?

A. Yes, I did.

Q. Was Officer Vogt also present and assisting in connection with the traffic stop?

A. Yes, he was.

Q. Now, during the course of the stop, did you note a black male individual to come to within about 20 feet of your stop and hold up a video camera?

A. Yes, I did.

Q. Had you or the other officer given permission to have your conversation, that is, to have your voice

recorded in connection with this device?

A. No, we did not.

Q. Now, when this traffic stop was concluded, did you see the same male individual who had the camera then approach the driver who had been ticketed?

A. Yes.

DAVID I. GRIFFET, IV

being first duly sworn, was examined and testified as follows:

EXAMINATION

BY MS. DOBSON:

Q. All right. Sergeant, would you state your name, please.

A. David I. Griffet, IV.

Q. What is your occupation?

A. Police officer, City of Champaign.

Q. How long have you been with the Champaign Police Department?

A. Since February 5th of 1996.

Q. All right. Now, I want to ask you some questions first concerning a traffic stop that occurred with the Champaign Police Department on August 7th of 2004, around 11:26 p.m. Was an Officer Pyburn and an Officer Clinton involved in a traffic stop at 826 West Bradley in

Champaign?

A. Yes.

Q. Now, did Officer Pyburn have occasion to stop an individual who was on a bicycle who was riding at night without a headlight?

A. Yes.

Q. And during the course of the interaction between the officer and the cyclist, was the cyclist ultimately issued a citation?

A. Yes, he was.

Q. Did Officer Clinton also participate in the traffic stop acting as backup for Officer Pyburn?

A. Yes, he did.

Q. Did Officer Clinton indicate that he noted the Defendant, Martel Miller, had a camera, approach the traffic stop area, and appeared to be recording?

A. Yes.

Q. All right. Was Mr. Miller observed then also to flag down the cyclist following this stop and begin to speak with him?

A. Yes.

Q. And did Officer Clinton indicate that he felt that there was audio recording being conducted during the course of the stop?

A. Yes, he did.

Q. All right. Now, did the Defendant, Martel Miller, then speak with Officer Pyburn about what had been going on?

A. Briefly.

Q. All right. And did he indicate to Officer Pyburn that he was recording contact between police officers and members of the community to provide a better relationship between the two of them?

A. Yes.

Q. Did Officer Pyburn indicate to Mr. Miller during the course of this conversation that it was illegal to record voices without permission?

A. Yes.

Q. Did he ask Mr. Miller if he had recorded officers or if the audio on the camera was disabled?

A. He did.

Q. And did Mr. Miller decline to answer at that time?

A. Yes.

Q. Were you the supervising Sergeant at that time when these officers were interacting with Mr. Miller?

A. Yes, I was.

Q. And did you have occasion then yourself to approach Mr. Miller and speak with him about his

recording?

A. Yes, I did.

Q. All right. And did he indicate to you that, in fact, the incidents were being audio recorded?

A. He handed me his recorder and allowed me to review the tape that he had in the camera to --

Q. Were you able to determine at that point that it did contain audio recordings of what had been going on between officers and citizens?

A. From the brief examination of the tape at that time, yes, I could tell that there was audio recordings on the tape.

Q. All right. And then because, of course, this was evidence of criminal activity, did you have occasion to seize it and take this camera and tape into police custody?

A. Yes, I did.

Q. All right. Sergeant, are you familiar with a letter that was authored to the Chief of Police of the City of Champaign on March 26th of 2004?

A. Yes.

Q. What's your chief's name?

A. R.T. Finney.

Q. All right. And in connection with the document,

I'm gonna hand you a document, I'm gonna mark it as Grand Jury Exhibit 1. I'm gonna hand you this and ask would you read that letter into the record, please?

A. It's dated March 26th, 2004. "R.T. Finney, 82 East University, Champaign, Illinois, 61820. Introduction to VEYA and VEYA Citizen Watch Program."

"Dear R.T. Finney: Our organization, Visionaries Educating Youth and Adults, or VEYA, is a non-profit, community based organization dedicated to providing education for prevention of at-risk youths' incarceration and to reduce the recidivism rate of incarcerated adults."

"We are writing to inform you of one of our programs, the VEYA Citizen Watch program, dedicated to the elimination of potential police abuse through civilian observation. We wish to notify you of our activities in the hope of avoiding misunderstanding and potential conflict with you officers. Accordingly, we ask that you, in turn, notify your officers of the existence of our program and that you ask that they respect our right to act as impartial observers."

"VEYA is not an anti-police organization and the VEYA Citizen Watch program is not intended to interfere with or hinder the important work that your officers perform. Please note that VEYA observers are simply

that -- observers -- who will not interfere in any way with police activities as they occur. For their own safety, VEYA observers generally operate in groups of three to four persons."

"Thank you for your time and consideration. If you have any questions or concerns, you may contact us at: Veya@lists.CU.Groogroo.com."

"Sincerely, E. Martel Miller, VEYA, Visionaries Educating Youth and Adults." And it's carbon copy to Steve Carter, the city manager of Champaign, and Gerald Schweighart, the mayor of Champaign.

Q. Now, Sergeant, in connection with work of the Champaign -- the City of Champaign Police Department, since this letter came to your chief's attention in March of 2004, have you and other officers been aware that there were citizen watch groups watching police actions and police interactions with citizens?

A. Yes.

Q. And were you also aware in connection with observations that you and other officers have made on the street that it appeared video cameras were being used and that transactions between citizens and police officers were being recorded?

A. Yes.

Q. Has it only then been coming to your attention recently, and by that, I would mean since your contact with Mr. Miller in August of 2004, that you were actually being audio recorded?

A. Yes.

Q. I take it then that at least with regard to the Champaign Police Department that there was no policy or anything implemented preventing a citizen from watching or visually recording what officers were doing in their interactions with citizens?

A. No.

Q. It was simply the audio recording and the violation of the statute that came to the attention of the police department that resulted in these charges?

A. That's correct.

Q. Officer McCullough, let me ask you, too, with regard to the policy at the University of Illinois Police Department, there is no policy that prohibits individuals from watching police action or a video recording the outward aspects and activities of individuals in police and citizen contacts; correct?

OFFICER MCCULLOUGH: Correct.

Q. But then, again, also, the University of Illinois Police Department is concerned with regard to the audio

recording that is violative of the eavesdropping statute?

OFFICER MCCULLOUGH: Yes.

Q. Okay. Sergeant Griffet, let me ask you now, have you been made aware of a recording that was provided to the Urbana Police Department from an Urbana public access television station?

A. Yes.

Q. And with regard to the video that was provided by the television station, did you have occasion then to see a copy of the video that had been turned over and review it?

A. Yes.

Q. All right. In connection with your review of the videotape, did you have occasion to see yourself on it?

A. Yes.

Q. And are you video, that is, visually as well as audio recorded in connection with this tape that was turned over to the Urbana Police Department?

A. In many places.

Q. All right. Now, in July -- or, I'm sorry, June and July of 2004, were you engaged frequently and regularly in your scheduled work activities?

A. Yes.

Q. And in connection with scheduled work activities,

PLAINTIFF'S EXHIBIT F

Dear Abby

Late husband's secret comes along to haunt his widow.

— B-6

LOCAL COPY

Saturday, September 11, 2004

The News-Gazette B

…mber …month …nths'

…licted last week, …went beyond just …r Prostate Cancer and College Savings …lay, he also …d Security …

…ges "all state …es, companies …preparedness …plans and programs to respond … natural and …man-made disasters that can affect the well-being of this state."

…Homeland …ecurity is no laughing matter, …specially today, …at this has got to …approaching …e record for …ial designa- …

# Official questions handling

## Police chief says he would have tried simple chat instead

By MARY SCHENK
News-Gazette Staff Writer

Champaign Police Chief R.T. Finney said if it had been up to him, Martell Miller and Patrick Thompson would have been brought in for a face-to-face chat with him about their videotaping of police instead of being criminally charged.

"I did not know about the charges being filed," until after they had been filed, Finney told The News-Gazette on Friday.

He said he was aware that a report about Miller's activity on Aug. 7 had been generated by officers and that Miller had not been arrested that night. He said it's department policy to send non-arrest reports to the state's attorney for a determination of whether criminal activity has occurred, which is what happened in this case.

FINNEY

"From that point, things occurred rather quickly in terms of the charging," he said. "When they charged it, that stopped us from taking any fur-

Please see POLICE, B-3

## Lawyers say state eavesdropping law not well-defined

By MARY SCHENK
News-Gazette Staff Writer

A local lawyer well-versed in First Amendment issues said the current state of the eavesdropping law in Illinois and at the federal level is "really, really confusing."

Steve Beckett, an Urbana lawyer and a professor of law at the University of Illinois College of Law, had the personal experience of trying to get justice for former UI basketball player Deon Thomas over a decade ago after assistant Iowa basketball coach Bruce Pearl tape-recorded phone conversations with the then-recruit and used them to try to show recruiting violations by the UI.

"Before I filed that suit, I was pretty much revulsed by Pearl's conduct in tape-recording a phone call of a young man who was a senior in high school and manipulating the conversation and using the recording for his own ends. What I was told in court was that's no different than sitting down and taking notes and repeating what the notes have to say. It's no big deal. It doesn't really violate the statute," Beckett said, summarizing a 1993 decision from the 7th Circuit Court of Appeals in Thomas v. Pearl.

Please see LAW, B-3

## Let the sale begin

## Company to buy Rantoul station

WJCI-AM will keep ESPN

... this intermediate period in terms of sitting down and trying to work out the issues that need to be worked out."

Asked if he has talked to State's Attorney John Piland about the issue, he said, "We are having conversations regarding a number of issues."

One of those issues, he said, is reviewing policy about video along with officers.

Assistant State's Attorney Elizabeth Dobson can be seen on the tape made by Miller and Thompson videotaping them at a north Champaign convenience store, apparently when she was on a ride-along with an officer.

Piland said Dobson was using a camera provided by his office that has the sound recording element disabled.

"I encourage assistant state's attorneys to participate with police in activities they're doing. I don't think there's anything wrong with that at all. Nor do I think it's weird for my guys to ...

... ter [illegible] om Miller [illegible] saying that their group, Visionaries Educating Youth and Adults, would be observing police and had no intention of interfering with police activity.

"Nothing in here indicates they were going to videotape or audiotape," Finney said of the letter, adding "we are not trying to hide anything."

He stressed that police do not mind being videotaped and are always aware that their actions are being watched. It's the recording of audio that causes problems, he said.

"If it was video without audio, it wouldn't be an issue," he said of the whole case. "Certainly I don't have a problem with them videotaping. If they came across something negative, that's happened, they should report it to us and it would be good to have (the tape) as evidence. The other side of it is, if citizens knew of ...

... the street that should not be put on audio. That's what this law addresses," he said.

Since his arrival in Champaign last November, Finney has been working to generate goodwill with the entire community. In March he decided that his officers would not use Tasers after a huge public outcry.

"I think we're making headway," he said of his department's public relations effort. "We've got a lot of programs we're executing in interaction with the youth of the community, and I think we're doing a good job in that. There's always some bumps in the road. We're dealing with those. We need to reduce the ones that are unnecessary."

*You can reach Mary Schenk at 217-351-5313 or via e-mail at mschenk@news-gazette.com.*

# Law

Continued from B-1

"The basic notion behind it hasn't changed. There has to be some sort of criminal purpose behind the tape recording. And I think the courts are having a terrible time making sense out of this," Beckett said.

"The notion that a casual observer who wants to preserve the moment by audio or video for a lawful purpose (could be guilty of eavesdropping) is lost. It criminalizes every Little League parent, every basketball parent everywhere, and that just doesn't make any sense," Beckett said.

"A statute like this in the hands of someone bent on getting back at the recorder is devastating. This statute can be used to turn around at someone who is doing something for the most proper objectives and paint them as criminals. That's not the purpose of the law," he said.

Scott Daly, an Effingham criminal defense lawyer, had similar observations about the law criminalizing seemingly innocuous behavior like videotaping at a wedding.

Daly explained that the statute defines "conversation" as "any oral communication between two or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation."

That language, he observed, is part of the problem because even when people are talking and don't intend their communications to be private — such as the comments in the bleachers at the Little League game — the conversation is likely covered under the statute unless it falls within the exemptions.

Exemptions include television and radio stations only so long as the public is in attendance and the conversations are overheard incidental to the main purpose for which such broadcasts are then being made.

"The print media aren't included in that exemption, so a newspaper reporter must rely on the accuracy of his or her handwritten notes," he said.

Another exemption is for recordings which are made by or at the request of police.

Daly, who represented a Decatur man convicted of eavesdropping in 1997 in Macon County, said he finds it "shocking" that the offense is a felony.

In his client's case, the attorney general's office asked for incarceration, but the judge's sentence included time already served in jail.

"I have seen eavesdropping prosecuted four times that I can recall statewide. In two of the four cases, they were African-American males in activities that were making the authorities uncomfortable and they were targeted with prosecution under this rarely prosecuted statute. Another case was a fellow who was a public defender in southern Illinois who was going to run for office against the state's attorney, and the state's attorney orchestrated the prosecution of the offender," Daly said.

*You can reach Mary Schenk at (217) 351-5313 or via e-mail at mschenk@news-gazette.com.*

# Groups ask for dismissal

## Two accused of taping police encounters

By MARY SCHENK
News-Gazette Staff Writer

CHAMPAIGN — Martell Miller sat quietly, saying little on Friday, as supporters and representatives of civil rights groups called on Champaign County State's Attorney John Piland to dismiss eavesdropping charges against him.

At a news conference at the Champaign Public Library, representatives of the American Civil Liberties Union; CU Citizens for Peace and Justice, a group that formed early this year to oppose Champaign police use of Tasers; Visionaries Educating Youth and Adults (VEYA); and a minister spoke out in support of Miller and his colleague Patrick Thompson.

**Related news:**
Police chief wanted a more diplomatic approach, **B-1.**

The two men are members of VEYA and have been videotaping police encounters with citizens since the spring, they said.

Miller, 43, of Champaign, was first charged on Aug. 10 with two counts of the Class 1 felony offense alleging that he recorded conversations between Champaign police officers dealing with citizens without their permission while they were engaged in traffic stops on Aug. 7.

On Sept. 2, a grand jury added a third count of eavesdropping, alleging Miller tape-recorded a conversation between Sgt. David Griffet and himself sometime in June or July without Griffet's permission. Thompson was also indicted by the grand jury on the eavesdropping charge involving Griffet.

Thompson was not present at Friday's news conference as he is being held in the Champaign County jail on felony charges of home invasion and other allegations stemming from an Aug. 24 attack on his neighbor in Urbana. He has been unable to post the $250,000 bond in that case.

Please see TAPING, A-6

Darrell Hoemann/The News-Gazette

Martell Miller, who has been charged with eavesdropping as a result of his taping local police interactions, listens as the audience watches a clip of a confiscated videotape, during a press conference Friday at the Champaign Public Library in Champaign. Supporters of Miller, as well as members of various civil rights groups, spoke at the conference.

### Videotape to be shown

A 40-minute videotape produced by Visionaries Educating Youth and Adults — VEYA — that police seized in their investigation of eavesdropping charges against Martell Miller of Champaign and Patrick Thompson of Urbana will be shown at:

— 4 p.m. today in the auditorium of the Champaign Public Library, 505 S. Randolph St., C.

— 1 p.m. Sunday at Boardman's Art Theatre, 126 W. Church St., C.

9/11/04 News Gazette

fil... ag... ho...

High... of ma... cover...

By DEBRA ...
News-Gazette ...

DANVI... of the me... United Center ... against th... saying U... threatenin... physician... County by ... tinue to c... practice ... can't affor...

The suit ... Vermilion ... by Dr. J... Danville c... he is chall... actions on ... medical st... tans.

Fabrizio... ra, said the ... doctors on ... ical staff ... pended fro... fail to car... ance level ... higher tha... their curre...

Pliura, ... cian, said ... were mutu... the hospita... require dc... practice in ... of $200,00... occurrence ... aggregate ...

# Taping

Continued from A-1

Both men are tentatively set to be tried on the eavesdropping charges in November.

The Rev. Jerome Chambers, pastor of the Liberty Temple Church, 1218 Holiday Drive, C, said the groups were showing solidarity for a cause they are not sure constitutionally applies to the men.

"It is no secret that something out of the blue has caused two men to be arrested and accused of wrongdoing," he said. "Are the minorities causing that much of a problem that their rights for free speech are being questioned?"

"Politics may well be at the heart of what's going on. We can't say it isn't, but are certainly suspicious that it is," he said. "If so, there is a good reason for such an outcry," said Chambers, who also publicly spoke out in the spring against the Champaign police use of Tasers, a decision that Chief R.T. Finney put on a back burner in the wake of the controversy.

Rachael Dietkus of the Champaign County ACLU said the group supports the right of an individual or organization to videotape government activity in a public place, including police detentions of civilians.

"A person standing in the public way ordinarily can have no reasonable expectation that their words or actions will remain private," she said.

And Carol Ammons, of the CU Citizens for Peace and Justice, said that group would work to change the law to allow citizens to record — both visually and audibly — police activity.

It's that distinction between recording images and sound that Piland wants to make certain the public understands.

"This situation of equating the purposeful and intentional videotaping, which includes audio of police in conversation, is completely different than someone videotaping action at a youth football game. I don't believe the police have any objection to someone simply capturing video images of their conduct and activities. The eavesdropping law protects officers and citizens from having their conversations taped without their consent," he said. "That has been the law for 10 years."

Piland stressed that police in drug investigations are required to get judges to issue orders allowing them to record conversations of suspects without their knowledge.

*You can reach Mary Schenk at (217) 351-5313 or via e-mail at mschenk@news-gazette.com.*

# Sept. 11

Continued from A-1

project called the 9/11 Never Forget Project, in which it helps students organize a flag memorial.

Bell, who is the president of the Native American Law Students Association at the UI law school, got his group involved in the project and sought out other law student organizations as well. The Federalist Society, a conservative organization which Bell also belongs to, is participating, and the Young America's Foundation, which is affiliated with the Federalist Society, is providing the flags at a discount. It is also providing buttons bearing the name of the project, which Bell planned to hand out at the law school.

Other law student organizations involved are the Latino/Latina and Jewish law student groups, the law school chapter of the ACLU and the Military Law Society.

"The whole point was for us to bring all kinds of groups together to cross party and ideological bounds to do the project," Bell said. "It's not about left and right. I think bringing the school together is important, especially in these political times."

Bell contacted local VFW posts asking for help with the $550 cost of the flags. Champaign's VFW Post 5520 donated $300.

He also got a donation of doughnuts for the volunteers putting up the flags this morning from the Green Street Dunkin' Donuts store, where Bell is a regular.

Bell was surprised that within hours of sending out an e-mail about the project, he already had 25 students offering to be at the law school at 5 a.m. to help put up flags. They planned to turn the west lawn into a sea of 2,973 flags.

"Everybody's going to see it," Bell said. "They're going to be up after the game. There will be plenty of time for folks to come by and take pictures or say a prayer, whatever they might want to do."

*You can reach Jodi Heckel at (217) 351-5216 or via e-mail at jheckel@news-gazette.com.*

# Provena

Continued from A-1

In fact, Fabrizio said he was present when a high-ranking official of Provena Health told Vermilion County doctors that liability costs for the Mokena-based Provena hospital group are lower when doctors carry higher malpractice coverage.

Karen Kansfield, vice president of business and strategic services for Covenant and United Samaritans ... said ... Foundation Hospital in Urbana must carry a $1 million single and $3 million aggregate level of coverage to maintain privileges at that hospital, a Carle spokeswoman said.

Fabrizio said United Samaritans officials did ask doctors back in 1993 to raise their liability coverage to the higher level, but the doctors never agreed to it under a change in their bylaws — though individ-... premium categories really need to go back," he said. "These are physicians who have served our community for 25 to 30 years."

And Vermilion County can't afford to lose any more doctors, he added. Already, due to doctor departures, local patients have to leave the area to get many medical services that were once available in the community, Fabrizio said.

Fabrizio ...

# Hurrica[ne]

Continued from A-1

ricane does, we w... together" to rebuild...

In South Florida, ... reappeared at gas s... shoppers swarmed l... ing stores and supe...

Forecasters said I... tear through the Ke... as Monday, though ... still a chance the st... instead move out int... of Mexico.

Farther south, ... already struck by Iva... ities discovered mo... along Venezuela's ... coast and in devastat... da, where the U. ... Department was arra... the evacuations of a... cans who wish to l... island.

"When dogs interf... garbage bags and s... contents all over the ... that's what Grenada lo... Trinidadian leader ... Manning said after vi... island.

In Jamaica, awed o... stood transfixed on th... Palisadoes Highwa... Kingston's airport a... waves crashed to shor... ing rocks and dead tre... es more than 100 feet ... road.

"I've lived here all ... and I've never seen ... like this," said busi... Chester Pinnock, ... under an umbrella ... drenching rain, which ... here Friday morning.

"This is going to b... trous; we could have h... dead. Hurricane Gilbe... puppy compared to t... said. Gilbert killed d... Jamaicans and devast... island when it struck as ... gory 3 storm in 1988.

Meteorologists warn... Ivan could cause "life-t... ing" flash floods and mu...

"What we're exper... now is only the beg... Jamaica's prime minist... in an address to the ... "Residents living near ... areas must evacuate bef... too late. ... I cannot str... strongly that Ivan is a ... ous hurricane."

But only 5,000 people ... into shelters islandwide, ... gency management d... Barbara Carby said. Th...

04 Vol. 153, No. 46 $1.50

Darrell Hoemann / The News-Gazette

…w student Tim Bell, the group hoped … fans would see the memorial, com… 73 flags, across from Memorial Sta… …eir way to Saturday's game with … on 9/11 observances, A-4, B-7.

# Videotape of police stirs local audience

By JODI HECKEL
News-Gazette Staff Writer

CHAMPAIGN — After seeing a videotape of police officers dealing with black residents in the community, Melissa Beard of Champaign had the urge to grab her camera and join Martell Miller, who has been charged with eavesdropping for making the recording.

"My first reaction was, all of us should get our video cameras and go do this," Beard said. "If they arrest all of us, it shows how ludicrous it would be."

Beard and her husband, Joe Minarik, were among about 70 people who watched Miller's videotape at the Champaign Public Library Saturday afternoon. It will be shown again at 1 p.m. today at Boardman's Art Theatre, 126 W. Church St., C.

An organization called CU Citizens for Peace and Justice showed the video Saturday and asked audience members to get involved in getting the eavesdropping charges dropped and changing the eavesdropping statute to permit both video and audio recording of police activity.

Miller, 43, of Champaign has been charged with three counts of eavesdropping for recording conversations of Champaign police officers dealing with citizens in traffic stops and a conversation between Miller and Champaign police Sgt. David Griffet. Miller's colleague, Patrick Thompson, is charged with one count of eavesdropping for the conversation involving Griffet.

The peace and justice group urged those at the video screening to write to Champaign County State's Attorney John Piland, write letters to the editor of The News-Gazette and register to vote.

Getting involved is exactly what Beard and Minarik had in mind. They are new to Cham-

9/12/04
News Gazette

use of extreme ultraviolet to fabricate faster chips.

Intel, the industry's 600-pound gorilla, and SeMaTech, the major consortium of chip manufacturers, have paid for most of a $1 million-plus commercial unit for extreme ultraviolet experiments and diagnostics.

The UI's machine, which arrived over the summer, is one of only three like it in the world.

Ruzic and colleagues originally built their own ultraviolet test unit. The purchase of the new machine, custom made by a German company, is a sign of the burgeoning interest in the technique as current chip-mak-

tors that make up a chip.

The patterns are then used to etch the components onto the chip's surface. In general, the smaller, and closer together, that circuitry can be patterned and etched, the faster the chip.

But chip makers are stretching the capability of lasers and other light sources with wavelengths above extreme ultraviolet to make even finer patterns.

Cutting-edge chips currently are being made on a 90-nanometer scale. Ruzic said techniques using extreme ultraviolet and its much smaller wavelength could eventually push that down to less than 14 nanometers and possibly lower.

such things as the plasma's composition, what it gives off besides light, ways of dealing with emissions that could be a problem in chip making and methods of manipulating and focusing the extreme ultraviolet to create patterns, among other things.

Ruzic said those are the kinds of things the industry needs to know to build equipment that is able to make chips using extreme ultraviolet on a manufacturing scale.

*You can reach Greg Kline at (217) 351-5215 or via e-mail at kline@news-gazette.com.*

1 foot of rain, possibly causing flash floods and mud slides, the Hurricane Center said.

If Ivan hits land in the Caribbean at its current strength, it would be the first Category 5 storm to do so since Hurricane David devastated the Dominican Republic in 1979, said Rafael Mojica, a meteorologist at the Hurricane Center in Miami. Hurricane Mitch was a Category 5 storm in the Caribbean Sea in 1998, but it hit Central America.

Only three Category 5 storms are known to have hit the United States. The last was Hurricane Andrew, which hit

coffee, was saved from a direct hit when the hurricane unexpectedly wobbled and lurched to the west. Jamaica was ravaged by winds just below 155 mph.

"Mercifully, we were spared a direct hit and whatever our religion, faith or persuasions may be, we must give thanks," Jamaican Prime Minister P.J. Patterson said in an address to the nation.

East of Kingston, the capital, dazed survivors stood in the rain and watched 25-foot waves crash onto beachfronts where a dozen houses used to stand at Harbour View. Associ-

# Videotape

Continued from A-1

paign-Urbana and interested in relations between the community and the police.

"I think they are really critical issues, especially in terms of race relations in the community," Minarik said.

"One thing about the video — it's helping promote transparency and accountability," he continued, noting the police could use it to help improve their services. "I think the law enforcement folks would really want that to show the effectiveness of what they are doing. To shut that down, I'm not sure the folks in law enforcement are doing what's best for their mission."

Beard, who described herself as an activist, said she wasn't surprised to hear of race relations problems.

"I think it's a perfect example of people of color being targeted for doing work in the community," she said. "I can't imagine, as a white woman, if I took my video camera and taped these incidents, that I would be charged with eavesdropping. I believe racial profiling happens."

She was especially upset by a black boy in the video who said he thought the police wanted to arrest him and his friends just because they were black.

"I was very saddened by the responses of the youth," Beard said. "That just broke my heart."

In a videotaped interview with Miller, shown before his recording of police activity, Miller said he was making a documentary in an attempt to improve relations between young black residents and the schools and police.

"This video is not to antagonize or be anti-police," said Aaron Ammons, a member of CU Citizens for Peace and Justice. "This is just to educate the community."

After seeing the video, Eunice Bucknerboone of Champaign was angry about what several at the screening said was disparate treatment of blacks and whites by police.

"This is our community, too. What's on the north end is our community. If the community wouldn't accept it, it wouldn't be this way," she said. "These issues have been going on for as long as I've lived here, and I'm sick of it. What are we going to do about it?"

"Use your passion and your frustration to push it and continue to get something done," Ammons told her. "Bring your passion to what we're going to do here."

CU Citizens for Peace and Justice will meet at 6 p.m. Thursday at the Douglass Branch Library, 504 E. Grove, C, to make plans for further action.

"I think people are really committed to improving the community," Minarik said. "This is exciting. I'm really glad that many people were here, and there are plans for the next steps."

*You can reach Jodi Heckel at (217) 351-5216 or via e-mail at jheckel@news-gazette.com.*

WHAT DOES CHANGE LOOK LIKE?
rebuilding
healing
OVERCOMING YOURSELF

# Legal overkill by the state's attorney

Champaign County State's Attorney John Piland couldn't leave bad enough alone.

In August he charged Martel Miller with felony counts of eavesdropping after Miller, using a video recorder, taped interactions and conversations between citizens and Champaign police officers at traffic stops.

A month later he took the issue to a grand jury and got an indictment out of it. Talk about overkill. What's next, the prosecution of certain individuals — not all of them, just certain ones — who jaywalk or who "roll through" stop signs?

Miller and his friend Patrick Thompson were targeted by the state's attorney's office because they had been recording conversations — on public property — between police and other citizens. This same kind of activity — recording public events in a public setting — goes on every day in Illinois and no one gets charged by the local prosecutor. Only in the Champaign County state's attorney's office — where sometimes it seems that up is down and in is out — does such legal weirdness occur. Remember, this is the same office that refused to prosecute a University of Illinois student (who also happened to be a college basketball star) after he was implicated in a burglary.

Yes, Illinois' poorly written eavesdropping law does seem to make it illegal for people to make audio recordings of anyone unless everyone who is recorded gives permission. But this is a law very seldom enforced; otherwise anyone within a microphone's range at a birthday party, a football game, a wedding or a parade would have to sign off — or the recorder would face prosecution.

There was an easier way to handle this little fuss between the Champaign police and Miller and Thompson. It's the one that Champaign Police Chief R.T. Finney said he wished had been employed in the first place.

"When (the state's attorney's office) charged it, that stopped us from taking any further immediate action in terms of sitting down and trying to work out other issues that needed to be worked out," Finney told News-Gazette reporter Mary Schenk.

Finney seems to understand, better than the state's attorney, the wisdom of using diplomacy and discretion rather than the heavy (and expensive and time-consuming) hand of the law.

Instead, the result is a police department again forced to try to mend relations with the black community, a state's attorney wasting valuable resources in a picayunish prosecution and one more bit of evidence of John Piland's poor judgment.

9/14/04 News Gazette

The News-Gazette

JOHN R. FOREMAN
Publisher

JOHN BECK
Executive Editor

TOM KACICH
Editorial Page Editor

OUR OPINIONS

# Eavesdropping charge should be dismissed

There is a law in Illinois against eavesdropping that is broken literally hundreds of times a day. The loosely worded statute prohibits people from "(k)nowingly and intentionally us(ing) an eavesdropping device for the purpose of hearing or recording all or any part of any conversation" unless they do so with the consent of everyone involved in the conversation.

Every day in Illinois thousands of ordinary, law-abiding citizens break this law by videotaping or tape recording piano recitals, Little League games, swim meets, wedding receptions, graduation ceremonies, parades and other public events in public settings.

Fortunately, most prosecutors exercise discretion and choose not to fill the courtrooms and the jails with these evildoers.

But not Champaign County State's Attorney John Piland. Apparently at the request of Champaign police officers, Piland has opted to charge E. Martell Miller of Champaign with eavesdropping because Miller used a video camera to record a conversation between officers and a man who had been stopped by police.

Miller was on public property when he recorded the incident, and he did not interfere with or harass the police. In fact, he did nothing more than any other curious bystander at a police scene, or anyone who happens to be a passenger in a car that is pulled over by law enforcement — except that Miller had a camera which, by Piland's astonishingly broad and foolish definition, makes him a criminal.

## Vets' attacks on 'dishonorable lie...

To the editor:

Thanks to The News... for covering the story... controversy surround... John Kerry's military... still does not counter... age done by the "Swi... Veterans for Truth..." should be named "S... Villains for Charact... nation."

9/25/04 News Gazette



Miller was on public property when he recorded the incident, and he did not interfere with or harass the police. In fact, he did nothing more than any other curious bystander at a police scene, or anyone who happens to be a passenger in a car that is pulled over by law enforcement — except that Miller had a camera which, by Piland's astonishingly broad and foolish definition, makes him a criminal.

This case, which deserves to be dismissed as quickly as it was filed, is an overreaction by hypersensitive police officers and by a state's attorney who has proven again and again that he lacks good judgment. If Piland had used common sense here, he would have told the offended officers that they should have nothing to fear from a camera (in fact, the state's attorney helped get video cameras installed in squad cars — those, incidentally, are exempted from the state eavesdropping law) and that he has better things to do with his time.

And so does the rest of the justice system.

There is a history between the police and Martell Miller who, along with Patrick Thompson, are part of a group called Visionaries Educating Youth and Adults. The group was involved in the debate over the prospective use of Tasers by police. Thompson also had notified city officials last spring that the group would undertake a "citizens watch" of police, but would not interfere with their duties. No one, according to Thompson, voiced any objection.

Now police are apparently upset that someone is watching them do their work. Thankfully, it's a free country and citizens are allowed to do that, so long as they don't interfere. But by abusing the power of his office, Piland is attempting to turn that benign behavior into a criminal offense.

So be careful how you use that video camera. The official at your son's football game might object to being recorded without his permission, and John Piland might take you to court.

## Old, new media used in fighting crime

A combination of an old medium (a newspaper story) and a new medium (the Web site of the DeWitt County sheriff's office) has led to the arrest of a man believed to be responsible for as many as seven bank robberies in central Illinois.

Last Friday, Champaign police and officials with the U.S. attorney's office arrested 63-year-old William Ginglen of Lewistown at a Champaign home. He was charged with one count of armed bank robbery in connection with a July 12 heist at the Bank of Kenney in DeWitt County.

An alert reader saw a story about the bank robberies in the Peoria Journal Star, then went to the sheriff's Web site. The reader, who has not been identified, recognized the man in the photos and contacted the Lewis...

9/11 attacks. P... them long enou... administration... war machine ...

The gullibili... this issue is es... bling, since o... they would be... the outrage o... hero diminish... especially so ... fit a presiden... combat servi... troops into a... and ill-conce... their benefi...

C. ...

## Will Kerry p... over needs ...

To the editor:

In the 1990s, we... president who pri... own popularity an... above the welfare... — not just once or... a regular basis.

One result is tha... Ladin is still a fact... terrorism; another... the 9/11 attack itse...

Today, we have... presidential candi... John Kerry, who h... four months of Vie... as the cornerstone... paign.

Here's my quest... can't handle a han... nam vets who chal... accounts of his wa... Kerry has decided... trate his campaign... muzzling ads and t... refute his claim as... Kerry's lawyers ar... prevent ads from r... intimidating radio/... Kerry's lawyers ar... prevent a publishe... lishing an anti-Ker... Kerry is filing com... the Federal Electio... sion because he ca... heat; if Kerry isn't... cuss his senatorial... instead, puts his se... tion above the man... issues that face thi... how can we expect... different as presid... United States?

Are we ready for... round of presidenti... tection at the exper... nation's security?

RC...

## Bible story pr... an Important...

To the editor:

9/25/04
News Gazette

Robin Scholz/The News-Gazette

…lldogs beat Bloomington Central Catholic …-14 to take sole possession of first place in … Corn Belt Conference. Story, C-4.

# Felony charges dropped

## ■ Three counts of eavesdropping were dismissed

By MARY SCHENK
News-Gazette Staff Writer

URBANA — Martell Miller was happy to hear the news that he no longer faces serious felony eavesdropping charges for recording the actions of local police at work.

"It taught me a lesson I already knew — that justice is used two different ways. Certain people get justice one way and other people get justice another way," said the 43-year-old Champaign man upon being informed of the dismissal.

MILLER

Assistant State's Attorney Elizabeth Dobson, the prosecutor who filed the charges against Miller a month ago, asked Presiding Judge Tom Difanis early Friday afternoon to dismiss them, which he did.

In a three-page affidavit in support of her motion to dismiss, Dobson maintained that the charges were filed at the request of the Champaign police department and that Chief R.T. Finney was aware of her conversations with other Champaign police command officers who asked that they be filed.

Further, she stated in the affidavit, the state's attorney's office was not advised of any change in position by the police department administration regarding continued prosecution until a letter from Finney and City Manager Steve Carter was sent to Piland's office Thursday.

Asked about the tone of the affidavit which appeared to con-

Please see EAVESDROPPING, A-6

## Community reacts to dismissal

By MARY SCHENK
News-Gazette Staff Writer

The dismissal of felony charges of eavesdropping against Martell Miller brought a variety of reactions from various people in the community.

Miller was pleased that he's free of prosecution but upset that his colleague, Patrick Thompson, is not getting the same consideration.

"We both made the documentary. It still shows he (State's Attorney John Piland) is picking the way he wants to use the law," Miller said.

Maria Thompson, wife of Patrick Thompson, who's being held in the county jail on other more serious felony charges stemming from his Aug. 24 arrest in Urbana, was also upset that her husband's eavesdropping charge was not dropped.

"In light of the fact that they dropped the charges for Martell, I think that reviewing all his charges and dropping Patrick's as

Please see REACTION, A-6

# …nd leader … UI ties

# Gold Stars to

# Eavesdropping

Continued from A-1

tradict Finney's assertion he wasn't aware the charges had been filed, Piland said: "The affidavit says what it says. I don't know there's anything to add."

Finney could not be reached for comment Friday.

Miller is one of the founding members of a citizens' group called Visionaries Educating Youth and Adults — VEYA — which had been tape-recording, with a video camera, stops of young black men by local police for a few months. Miller's colleague and another founding member of VEYA, Patrick Thompson, 35, helped Miller in the production of a 40-minute documentary that was a compilation of some of their recordings. That was also seized as part of the police investigation into the eavesdropping complaints, but was shown at the Champaign Public Library and Boardman's Art Theatre earlier this month.

The charges against Miller were two counts of a Class 1 felony alleging on Aug. 7 he tape-recorded conversations between two University of Illinois police officers and a man they had stopped in Champaign and he had also recorded a conversation between two Champaign officers and a man they stopped in Champaign.

A third count, added later by grand jury indictment, alleged Miller recorded a conversation between a Champaign police officer and a man he was talking to at Mac's on North Neil Street sometime in June or July. That same count was also lodged against Thompson and was not dismissed by the state's attorney.

"The case (as to Thompson) remains pending along with much more serious charges which are on file," Piland said.

He was referring to felony charges filed in the wake of Thompson's arrest on Aug. 24 at an apartment in Urbana. Thompson is charged with home invasion, intimidation, unlawful restraint and criminal sexual abuse, alleging he forced his way into a woman's apartment in the 1700 block of East Colorado Avenue early that day, held her down on a bed, refused to let her leave and fondled her breast. Thompson remains in the county jail in lieu of $250,000 bond.

His wife, Maria Thompson of Urbana, said Friday she was sad to hear Piland hadn't dismissed the charge against her husband. She relayed the following message from her husband:

"I would like to thank the community for coming out and supporting VEYA. As a community we should be able to work together to move forward. We need to work together to keep our youth from failing in school and keep them from being incarcerated," he said.

Urbana attorney Bruce Ratcliffe, attorney for Miller and unsuccessful GOP candidate for state's attorney in the March 2004 primary, filed a motion to dismiss the charges against Miller last Friday but hadn't set it for hearing.

Public Defender Randy Rosenbaum said he intends to file a motion to dismiss the eavesdropping charge against Thompson next week and has heard from the state American Civil Liberties Union it intends to file a friend of the court brief in support of his motion.

Meantime, Miller said he hopes to get his seized camera back and continue the work of VEYA, without recording the conversations of police. Piland said he has to make sure the camera is not needed in Thompson's case before agreeing to its release.

Miller said he feels the community has the ability to fix its problems from within and he wants to be part of that.

Single, but the father of six children ranging in age from 7 to 25, Miller said he could move anywhere but feels "this is a good community to raise my kids."

And he applauded the efforts of Finney to try to build bridges between the black community and police.

"With the chief we got over there, I can see some changes. He's really looking at the issues," Miller said.

You can reach Mary Schenk at (217) 351-5313 or via e-mail at mschenk@news-gazette.com.

# Reaction

Continued from A-1

well is the best thing for the community so we can get on with building community relations," she said. "I want us to get back to the good work they're doing with their organization. That's what it's all about."

Miller's attorney, Bruce Ratcliffe of Urbana, said he was pleased to hear the news.

"Mr. Miller was merely trying to act as a good citizen as part of his community action group. Before charges were filed, I met with Mr. Miller and Mr. Thompson and with members of the Champaign Police Department in an attempt to come to an agreement about how to protect not only Mr. Miller, but also the police, prior to criminal charges being filed," Ratcliffe said.

"It is unfortunate that there was miscommunication between the state's attorney's office and the Champaign Police Department. City Manager Steve Carter and Champaign Police Chief R.T. Finney have correctly assessed this, quoting their letter, "a need for increased dialogue with members and leaders of the community."

Tom Bruno, an Urbana attorney who's been kept apprised of developments in the case due to his role as a Champaign City Council member, said the case grew to proportions it needn't have reached.

"John Piland's stubbornness and insistence on worrying about who got the blame for this latest mess made this unfortunate incident into something much bigger than it needed to be," he said.

"It would have been much more helpful to improving community relations in Champaign if Piland had spent more effort trying to build bridges and mend fences and less effort trying to point fingers. We have an excellent police department whose command officers acted in good faith and for whom the ultimate goal was always to do the right thing. I continue to have complete faith in our police department," Bruno said.

The Rev. Jerome Chambers, pastor of Temple Liberty Church in Champaign and one of the people who spoke at a news conference Sept. 10 in support of Miller and Thompson's actions, said he was excited and elated at the news of the charges against Miller being dismissed.

"I believe that all of this is the answer to a prayer and it's time to look into what needs to be done as it relates to anyone else that may be charged with eavesdropping. If nobody's using the statute, let's see what we can do to eliminate it," Chambers said.

*News-Gazette Staff Writer Steve Bauer contributed to this report.*

# Iraq

Continued from A-1

Speaking in Washington, Allawi said that of Iraq's 18 provinces, "14 to 15 are completely safe. There are no problems."

Hours later, kidnappers in Baghdad seized two Egyptian engineers working on the

est level since major combat ended in May 2003.

Allawi told PBS in the past five months, 3,600 civilians have been killed by insurgents and 12,000 have been wounded.

Allawi didn't list the three provinces he acknowledged as still dangerous. But significant attacks ...

month in at least six provinces — Baghdad, Anbar, Diyala, Salahuddin, Kirkuk and Nineveh.

During a Rose Garden news conference Thursday, Allawi clicked off cities he deemed "completely safe."

"Few care to look at Iraq ... Najaf, to Karbala, to Diwaniyah, to Samawah, to Kirkuk, to Sulaymaniyah, to Dahuk, to Irbil. There are no problems," Allawi said. "It's safe. It's good."

But several of them — notably Najaf, Nasiriyah, Kut, and Karbala — were the scenes of heavy fighting earlier this

10/2/04
News Gazette

...n Scholz/The News-Gazette

Scholz/The News-Gazette
...is his bike lock
...nion in Urbana.

# ... of police to air on Urbana TV

## ■ Minimal legal risk seen after charges dropped

By MIKE MONSON
News-Gazette Staff Writer

URBANA — Urbana city officials have dropped their objections to showing, on the city's public access channel, a videotape recording Champaign and Urbana police and their interactions with black residents.

The "Citizen Watch" videotape, which was produced by Champaign activists E. Martell Miller and Patrick Thompson, will be aired four times this month on Urbana Public Television, Channel 6, city officials said.

The showing times are Oct. 6 at 4 p.m., Oct. 12 at 8 p.m., Oct. 20 at 6:30 p.m. and Oct. 27 at 8 p.m., said Chris Foster, Urbana Public Television coordinator.

Urbana City Attorney Steve Holz said that when Champaign County State's Attorney John Piland dismissed three felony counts of eavesdropping against Miller last week, he decided there was minimal legal risk in showing the videotape on Urbana Public Television.

"I told the UPTV coordinator to go ahead and run it based on the dropping of the charges," Holz said.

Previously, Holz had said publicly that he feared city employees could be prosecuted for showing the videotape and advised against airing it.

Piland dismissed the charges against Miller on Sept. 24 at the request of Champaign City Manager Steve Carter and Champaign Police Chief R.T. Finney.

Carter and Finney said in a letter to Piland that they were more interested in pursuing "a community-centered approach" to the issue of videotaping of police, rather than criminal prosecutions.

Miller was accused of using a camera to record, on Aug. 7, the conversations of local

Please see VIDEO, A-6



Mike Salwan/Assembly Hall

sociation's Entertainer of the Year, Alan
:1 No. 1 hits to Assembly Hall on Friday.

rs see it
because
ation is

er how
White
ublicity
s in the

at they
not that
White

officials
ve not
tions on
began
et, it has
ice for
of Bike-
ain St.,

unhappi-
because
as not
essary,"

said Krueger, who sells hundreds of the locks each year.

"Any security system can be defeated," Krueger said. "Even a U-lock I can cut through with a blow torch in about 30 seconds."

UI police have seen a decrease in the number of bike thefts since they began educating students about bike theft in 1996. Before, about 200 bikes were reported stolen each year, said Tony Ortiz, UI crime prevention coordinator.

That average has dropped to about 35 bikes each year since they began telling incoming freshman to bring cheap bikes to campus, Ortiz said.

"People were bringing bikes down here that were worth $2,000," Ortiz said. "They would leave them out there for hours and they expected them to be there?"

**You can reach Matt Stensland at (217) 351-5211 or via e-mail at mstensla@news-gazette.com.**

# Video

**Continued from A-1**

police officers dealing with citizens without the consent of the parties.

A felony count of eavesdropping remains in place against Thompson, who faces other unrelated felony charges.

Miller and Thompson are members of a citizens' group called Visionaries Educating Youth and Adults, which had been tape-recording with a video camera, stops of young black men by local police for the past few months.

Four local residents filed formal complaints last month with the Urbana Public Television Commission seeking to overturn the city's decision not to run "Citizen Watch," including Miller and Kimberlie Kranich of Champaign.

Kranich said she was pleased by the decision to show the videotape, but she questioned the rationale for not showing it earlier.

"It's the right decision to make and it's also puzzling because there's still an eavesdropping charge against Patrick Thompson that's still pending," Kranich said. "I think it shows rules and laws don't seem to be applied equally."

Kranich said she believes Urbana decided to show the videotape because of "community organizing."

"When people come together and organize to protect their rights, to protest repression, whether it's freedom of speech or legal repression, we can be victorious," she said.

"That's tremendously encouraging," Kranich said.

**You can reach Mike Monson at (217) 351-5370 or via e-mail at mmonson@news-gazette.com.**

---

hips in
al engi-
o torna-
hazard
on safe-
and the
science
health

use the
andards
ter for

Department's Office of Technology Policy, provides the two will work on business, legal, international, education and work force issues affecting the field of nanotechnology. The federal government has invested $3 billion in nanoscale research and development since 2000 through its National Nanotechnology Initiative. The UIS business college will help with issues arising as products and services are developed using the new technology.

valed brain trust on building safety issues.

"On nanotechnology, our (Office of Technology Policy) and the business school at Springfield already are involved in similar ways," he added.

UI President James Stukel said the UI has been involved since it was first chartered in developing technological knowledge and using it to strengthen the nation's economy.

"It is no surprise to see our

The News-Gazette.com

Sunday, June 11, 2006 East Central Illinois

# Police will have new policy for ride-alongs

Published Online Oct 6, 2004

By MIKE MONSON

News-Gazette Staff Writer

CHAMPAIGN - Champaign Police Chief R.T. Finney has started requiring officers to get his permission before they allow someone to ride along in a squad car.

The move is an apparent reaction to the public disclosure that an assistant state's attorney often rode along with a police sergeant and, in one case, was videotaping a large gathering of people in a convenience store parking lot.

Finney said he had ordered the drafting of a ride-along policy in July after discovering the department didn't have a formal policy, other than requiring a signed waiver of liability.

"There was no actual policy," said Finney, who became police chief last November. "It was more of a practice."

Finney said he began requiring his personal approval for ride-alongs in August after learning that Champaign County Assistant State's Attorney Elizabeth Dobson had been captured, on a videotape made by a community activist, herself videotaping a group of men at a north Champaign convenience store while an officer dealt with the crowd.

"Frankly, it was a surprise to me when I saw the videotape that she was taping also," he said.

Finney said he didn't think Dobson did anything wrong and actually was attempting to help the officer by documenting a recurring problem at the convenience store.

The police chief said that while he has no objections to people riding along with police officers, he believes riders should be observing, not participating. He said he considers Dobson videotaping outside of the police car on a police stop to be participation.

"The policy did not define the roles," he said. "We need to define what they do when they ride along and that was lacking."

Finney said he wants better documentation of ride-alongs and for passengers to be listed in police reports as potential witnesses.

Dobson rode along with Champaign police Sgt. Dave Griffet "pretty frequently" up until August, Finney said, adding he was somewhat aware of the situation. Griffet is a part-time investigator with the Champaign County state's attorney's office in addition to his full-time Champaign police duties. Dobson has not asked to be included in a ride-along in recent weeks, the chief said.

Champaign County State's Attorney John Piland said he doesn't see any problem with having an assistant state's attorney ride along with police officers. He also said he didn't think Dobson crossed any line by videotaping the men at the convenience store.

"We have assistant state's attorneys go to crime scenes and work with cops on all kinds of details," he said. "We go to crime scenes all the time and say 'This needs to be done,' or 'That needs to be done.'"

Piland said he personally has participated in ride-alongs and thinks it's valuable for prosecutors.

The News-Gazette.com

Saturday, June 10, 2006 East Central Illinois

# Race for the hot seat

Published Online Oct 17, 2004

By J. PHILIP BLOOMER

News-Gazette Staff Writer

You don't stay state's attorney for 10 years without making enemies.

John Piland just figured most of them would be criminals. Instead, he has found himself at odds with the media, local law enforcement agencies and various factions of the public during a tenure otherwise distinguished by high marks in fighting crime. It's that last part he hopes people remember when they go to the voting booth.

Piland said he hasn't sought, nor is he interested in any other job. His plan is to stay here, work hard and be aggressive.

"I'm not going to be part of a retreat in the fight against crime. We're going to continue to push, to produce better and better results," he said. "As proud as I am of the results we've achieved, I'm not satisfied. We can do better. I know we can do better. I want to work to make that happen."

Julia Rietz is pretty sure she can do better, too.

While Rietz isn't exactly an enemy of Piland's, she's definitely not his friend. She is a former assistant state's attorney under Piland, and under his predecessor, now-Circuit Judge Tom Difanis. She's also Piland's opponent in the race for Champaign County state's attorney.

Rietz was a supporter of Steve Holz, the Urbana attorney who came out of relative anonymity to arrive within 979 votes of unseating Piland four years ago. Rietz said she hoped that experience would send some signals the state's attorney's way.

Rietz left the state's attorney's office in 1999 to work as a prosecutor in the DuPage County state's attorney's office. She said she didn't seek out the DuPage County job, but it was offered, unsolicited, and given her frustration with the state's attorney's office, the change looked like a good career choice.

"I felt John Piland was more concerned about statistics and how the cases were handled publicly. He was more concerned about the numbers and the way they could be used," she said.

Rietz said the University of Illinois basketball player controversy last year clinched her decision to run.

She was referring to the burglary last November where three prominent University of Illinois basketball players escaped prosecution after being connected to a break-in at a student apartment and the theft of electronic equipment. Restitution was made and Piland declined to charge the players, saying he was acquiescing to the victims' wishes. Piland was roundly criticized for favoritism and abdication of responsibility.

"I was offended when he told the victims they'd be treated like the guy who caught the foul ball at the Cubs game. At the same time, I read in the paper about a 25-year-old woman from Sidney who was charged with a felony for breaking into her neighbor's screen porch to steal a kitten. Something's not right here," she said.

Rietz said she's very happy in her current position with Beckett & Webber. She runs a successful

practice and has a "fantastic" mentor in veteran defense attorney, and Democratic Champaign County board member, Steve Beckett. But she also said her roots, and a bit of her heart, remain in the prosecutor's office.

One of her mentors there was Bill Gaston, who remains first assistant state's attorney.

"I remember he said to me, 'We wear the white hats. We don't have to answer to clients, just our conscience.' I think I'd like to get back to that."

Piland said he went into the basketball case fully aware he was making an unpopular decision.

"I knew I was going to be criticized," Piland said. "I was getting good political advice. Politically I was told, 'John, just charge them and let the system do what it will to the basketball players and to the victims.' That's not what we've done, and we're not going to start now just making a decision purely based on political considerations."


Eavesdropping case

Similarly, and consistent with acceding to the victims' wishes, Piland reluctantly agreed with the city of Champaign - the victim - to partially dismiss charges in the eavesdropping case against Martell Miller and Patrick Thompson; however, the acrimony over that decision continues and underscores ongoing tension between the Champaign Police Department, the city of Champaign and the state's attorney's office, not to mention The News-Gazette and the state's attorney's office.

In an interview earlier this month, Piland stressed that in discussions with city officials, the idea of dropping the charges was raised in repeated conversations in the weeks since the Aug. 10 arrests, but with the request from the city that the charges be kept on file, or somehow kept in abeyance, to be used as leverage to get the relevant parties, including those charged, to the table. Those conversations included City Manager Steve Carter, Police Chief R.T. Finney, City Attorney Fred Stavins and Urban League President Tracy Parsons, among others.

"The suggestions that were made were not accurate, that somehow I deprived the police of the opportunity of some other way of pursuing the case. The truth is we filed the charges after and only after the police command staff specifically requested we file the charges, even after The News-Gazette said, 'Gosh, there goes Piland again on his own.' The Champaign Police Department requested we keep those charges on file specifically to facilitate the very meeting they were talking about in the newspaper. The suggestion that I somehow took this case away from the CPD without their knowledge and consent is absolutely false."

City Manager Carter said discussions from soon after the arrests centered on dropping the charges and taking a more community-oriented approach to the issue. Carter said Piland was concerned it appeared he was pursuing the case on his own when it was the city that initiated the case.

Piland did not want to participate in a meeting or a community dialogue and neither did Miller for a time, Carter said. The election, he added, has become an added complication.

"Another complicating factor was the extent to which some of the officers may have wanted to pursue charges more vigorously than the police administration," Carter said. "R.T. was consistent from early on that we were interested in having the charges dropped. In the end, when people saw the chief was serious about the decision to work with the community, it worked out. It looked like it had the potential of being a major step backward in these relationships."

Finney said the idea from early on was to arrange a meeting with the people doing the filming. He said it was Piland who asked Finney if Finney would support the continuation of charges until Piland gave his permission for Finney to sit down with the group and discuss the conditions of the filming and the charges.

Finney said he agreed to that and asked Piland to send him a letter granting that permission.