p.. 2

Mar 22 06 l2:3Op

rQaQ49

SRS88SB1352

1

AMENDMENT TO SENATE BILL 1352

2  AMENDMENT NO. I . Amend Senate Bill 1352 by deleting
  3   all of Section 5; and

on page 6, line 22 by inserting after "Act" the following~

"Section 4(e , 5(e or 9.1 of the Cannabis Control Act";

4

5

6

and

7 on page 7 by deleting lines 14 and

B    Eol1owing:~

9    "beco1~ing la

15 and inserting the

EXHIBIT "A"

14

17

18

21

23
26
28

P.

nar ~ Ub J~:~Up

88th GENERAL ASSEMBLY
State of lIIino~s
1993 and 1994
INTRODUCED    —.2 -9'/ , BY

SYNOPSIS AS INTRODUCED~
720ILCS 5/14—1        from Ch. 38, par.  >4—1
720ILCS 5/14—3        from Ch. 38, par.  14—3

720ILCS 5/14—3A    new

720ILCS S/14—3B    new

725ILCS 5/108B-3    from Ch. 38, par.  108B—3


   Amends the Criminal Code of ~96i relating to eavesdropping. Defines conversation. Exempts from eavesdropping violations recordings made simultaneously with a video recording of an oral conversation between a peace officer, who has identified his or her office, and a person stopped for an investigation of an offense under the Illinois Vehicle Code. Also exempts from eavesdropping recordings of a conversation made by or at the request of a person, not a law enforcement officer or agent of a law enforcement officer, who is a party to t~e conversation, who reasonably believes that another party to the conversation is committing, is about to commit or has committed a criminal offense against the person or a member of his or her immediate household and there is reason to believe that evidence of the criminal offense may be obtained by the recording. Amends the Code of Criminal Procedure of 1963 to permit the State's Attorney to seek an ex parte application to the court for interception of private oral communication for the following offenses~ solicitation of murder, solicitation of . ~r~er for re, first degree murder, money laundering, conspiracy to commit money laundering, conspiracy to commit first degree murder, and certain gang—related offenses.  Effective  i ediate~y, xcept that  the eavesdropping changes take effect January , 1995.

              i.RBS81 32 7IRCTn9

A BILL FOR

p...4

22 06  12:3Op

SB].352 Engrossed            LRB8813271RCOIC

1    AN ACT in relation to eavesdropping and interception of  59

2  private oral communications, amending . ~ed Acts.  60

3    Be it enacted by the People of the State of Illinois,    64

4  represented in the General Assembly:           65

5    Section 5.The Criminal Code of 1961 is amended by  68

6  changing Sections 2.4—1 and 14—3 and adding Sections 14—3A and   70

7  14—35 as follows:

8    (720 ILCS 5/14—1) (from Gb. 38, par. 14—1)    73

9    Sec. 14—1. Definition.               76

10    (a) Eavesdropping device.                78

11    An eavesdropping device is any device capable of being  80

12  used to hear or record oral conversation whether such  81

13  conversation is conducted in person, by telephone, or by any      82

14  other means; Provided, however, that this definition shall  83

15  not include devices used for the restoration of the deaf or 84

16  _ hard—of—hearing to normal or partial hearing.

17    (b) Eavesdropper.                 86

18    An eavesdropper is any person, including law enforcement     88

19  officers, who operates or participates in the operation of  89

20  any eavesdropping device cont ary to t .e rovisions of this 90

21  Article.

22    (c) Principal.                        92
23    A principal is any person who:        94
24        (1) Knowingly employs another tho illegal y uses an    96
25    eavesdropping device in the course of such employment; or   97
26        (2) Knowingly derives any benefit or information  99
27    from the illegal use of an eavesdrcDpir device by ~nothe ;  100
28    or
29        (3) Directs another to use an eavesdtoppinç device     102
30    illegally on his behalf.               103
31    (d) Conversation.                     105

852.352 Engrossed    —2—        LRB8813271RCrn9

1      For the purposes of this Article, the  term  cor.versation    107
2    means  any  oral  communication  betwee  2  or  more persons 108
3    regardless of whether one or more  of  the  parties  intended 109
4    their  communication  to be  of  a  private  nature  under
5    circumstances justifying that expectation.      110
6    (Source: Laws 1961, p. 1983,)            112
7      (720 ILCS 5/14—3) (from Ch. 38, par. 14—3)  115
8      Sec. 14—3. Exemptions. The following activities shall    117
9    be exempt from the provisions of this Article:    118
10       (a) Listening to radio, wireless and television    120
1].   communications of any sort where the same are publicly made; 121
12       (b) Hearing conversation when heard by employees of any   123

13 common carrier by wire incidental to the normal course of 124

14    their employment in the operation, maintenance or repair of  125
15    the equipment of such cc on ca net by wire so long as rio    126
16    information obtained thereby is used or divulged by the 127
17    hearer;
18        Cc) Any broadcast by radio, television or otherw:se  129

19 - whether it be a broadcast or recorded for the purpose of 130

20 later broadcasts of any function where the public is in 131

21 attendance and the conversations are overheard incidental to 132

22 the main purpose for w~ job such broadcasts are then being 133
23    made;
24        (d) Recording or listening with the aid of any device to  135

25 any emergency communication made in the normal course of 136

26 operations by any federal, state or local law enforcement 137

27 agency or institutions dealing in emergency services, 138

28 including, but not limited to, hospita.-, clinics, a~bu1ance 139

29 services, fire fighting agencies ny public utility,

30 emergency repair facility, civilian defense establishment or 140
31    military installation;                    141

32
(0) Recording the proteedings of any meeting required to 143
33    be open by the Open Meetings Act, as amended; and144
Mar 22 06 l2:SOp
p.5
Mar 22 06 lE:3Op                              p~ 6
S51352 Engrossed      —3—      LRB88132?lRcmg

1    (f) Recording or listening with the aid of any device to  146

2  incoming telephone calls of phone lines publicly listed or    147

3 advertised as consumer 'hotlines' by manufact'rers or 148

4    retailers of food and drug products. Such recordings must be 149

5 destroyed, erased or turned over to local law enforcement 150

6 authorities withir 24 hours from the Ame of suc recording

7 and shall not be otherwise disseminated. Failure on the part 151

8    of the individual or business operating any such recording or 152

9    listening device to comply with the requirements of this 153

10 subsection shall eliminate any civil or criminal immunity 154

11    conferred upon that in ividual or business by the operation

12  of this Section.                      155

13    (g) With  prior  notification to the State's Atto n~,yof 157

14 the county in which it is to occur,  recording  or  listening 158

15 with the aid of an device to an conversation where a law 160

16    enforcement officer, or any person acting at the direction of

17    law enforcement, is a  party  to  the  conversation  and  has 161

18 consented to it being intercepted or recorded under 162

19 circumstances where the use of the device  is  necessary  tar 163

20 -  the  protection  of the law enforcement officer on any person

21 acting at the direction of law enforcement, in the course  of 164

22   an  investigation of a forcible felony, a felony violation of 166

23 the Illinois Controlled Substances Act, a felony violation of 167

24 the Cannabis Control Act,  or  any  "streetgang  related"  or 168

25   "gang—related"  felony  as  those  terms  are  defined in the

26 Illinois Streetgang Terrorism Omnibus  Prevention  Act.   Any 169
27   recording or evidenc den ed as  he  esult of this exemption     171

28 shall  be  inadmissible i~ any proceeding, criminal, civil or 172

29   administrati'e, except (i) ;here a party to the  con ersation 173

30   suffers  great  bodily  injury  or  is  killed  during  such 174

31 conversation, or (ii) when used as direct  impeachment  of  a 176

32 witness  concerning  matters contained in the interception or 177
33   recording.  The Director of the Department  of  State  Police     179

34    shall  issue  regulations as are necessary concerning the use

                                    p.7

Mar 22 06 12:31p

   851352 Engrossed      —4—         LRB8813271RCmg

      of  devices,  retention  of  tape  recordings,  and2pLts     180

  2  rgarding their use.

3      (h) Recordings made simultaneously witha video   182
4    recording of an oral conversation between apeace officer,   183
5    who has identified his or her office, and aperson stopped   184
6    for an investigation of an offense under theIllinois Vehicle
7    Code.                            185
8      (i) Recording at a conversation wade byor at the   187
9    request of a person, not a law enforcementofficer or agent   188
10   of a law enforcement officer who is aparty to the   189
11   conversation, under reasonable suspicion thatanother party
12   to the conversation is committing, is about tocommit, or has   190
13   committed a criminal offense against the personor a member   191
14   of his or her immediate household, and there isreason to   192
15   believe that evidence of the criminal offense maybe obtained   193
16   by the recording.
17   (Source: P~A. 86—763)                   195
1B      (720 ILCS 5/l4—3A new)                198
19      Sec. 3.4—3k. Recordings, records, and custody.     200
20      (a~ Any private oral communicationinterceoted in   202
21   accordance with subsection (g) of Secton 14—3shall, it   203
22   practicable, be recorded by tape or othercomparable method.  204
23   The recording shall, it practicable, be done insuch a way as   205
24   will protect it from editing or other alteration.During an
25   interception, the interceotion shall be carriedout by a law   206
26   enforcement officer, and the officer shall keepa signed..   207
27   written record, including:
28      (1) The day and hours of interception orrecording; 209
29      (2) The time and duration of eachintercepted   211
30   communication;
31      (3) The parties, if known, to eachintercepted 213
32   communication; and

33          (4)  A summary of the contents of  eachintercepted  215

Mar 22 06 l2:3lp                              p.8

SB1352 Engrossed    —5—        LP.E8813271RCm5

1      communication,

2      (b)  Both  the  written  record  of  the  interception or 217

3   recordin and an and all recordin s of the  interception or    218

4   recording  shall  immediately  be  inventoried  and  shall be 219

5   maintained where the chief law  enforcement  officer  of  the

6   county  in  which  the  interception  or  recording  occurred 220

7   directs.   The  written  records  of  the  interception  or 221

8   recording conducted under subsection  (g)  of  Section 14—3 222

9   shall  not  be  destro~,ed  except upon an order of a court of

10   competent jurisdiction and in any event shall be kept for  10 223

11   years.

12      (720 ILCS 5/14—3E new)                  226

13      Sec. 14—35.  Notice of interception or record~j~228

14      (a)  Within  a  reasonable  time,  but not later than 120 230

15   days after the termination of interception  or  recording  or 231

16   immediately  upon the intiation off crli ial proceedings, the    232

17   person who was the subject of an  interception  or  recording 233

18   under  subsection (g) of Section 14—3 shall be served with an

19   -                inventory  at haM 1nclu~.~  234

20         (1)  Notice to any persar. who was the subject ot the    236

21   interception or recording;                237

22         (2)  Notice of any interception or r~g~~in it  the  239

23   defendant  was  arrested or indicted or otherwise ch~1ed  240

24   as a result of the interception of his  or  her  private 241

25   oral communication;

26         (3)  The date of the interception oL~c2!din~   243

27         (4)  The period of interception or recording; and   245

28         (5)  Notice  of  whether  during the Period of    247

29   interception or recording devices were or were  not  used 248

30   to  overhear and record various conversations and whether 249

31   or not the conve sations are recorded.

32   lb A court of competent jurisdiction, upon film of a 251

33 motion, may in ts discretion make available to those persons

252

Mar 22 06 l2:Slp                          P.S

S51352 Engrossed    —6—       LREBB13271RCm9

1  or their attorneys for inspection those portions o~ the 253

2  intercepted communications as the court determines to be  in 254

3  the interest of justice.

4    Section 10. The Code of Criminal Procedure of 1963 is 257

5  amended by changing Section 1085—3 as follows:    258

6    (725 ILCS 5/1085—3) (from Ch. 38, par. 1085—3) 261

7     Sec. 1085—3. Authorization for the interception of  263

8  private oral communication. The State's Attorney, or a person    264

9  designated in writing or by law to act for him and to perform    265

10  his duties during his absence or dsabili y, may authorize,   266

11  in writing, an ex parte application to the chief judge of a  267

12  court of competent jurisdiction for an order authorizing the

13  interception of a private oral communication when no party    268

14  has consented to the interception and (ij the interception  269

15  may provIde evide ce o , or ~ay assist in the apprehension of     270

16  a person who has co litted, is committing Or S about to 271

17  commit, a violation of Section  8—1.1 (solicitation  of

18  murder),  8—1.2 (solicitation of murder for hire), 9—I (first    272

19  degree murder), or 293—i (money laundering) of the  Criminal    273

20  Code  of  1961, Section 401, 401.1 (controlled substance     274

21  trafficking), 405, 405.1 (criminal drug conspiracy) or 407 of     275

22  the Illinois Controlled Substances Act or conspiracy to 276

23  commit money laundering or conspiracy to commit first  degree     277

24  murder;  (ii) in response to a clear and present danger of  278

25   imminent death or great bodily harm to persons resulting    279
26   from: (1) a kidnapping or the holding of a hostage by force  280
27   or the threat of the imminent use of orce; or (2) the
28   occupation by force or the threat of the imminent use of    281
29   force of any premises, place, vehicle, vessel or aircraft;   282
30    iii) to aid an investigation or prosecution of a civil 283
31   action brought under rhe Illinois Streetgang Terrorism    284
32   Omnibus Prevention Act when there is probable cause to

Mar 22 06 12:3lp

S81352 Engrossed    —7--        LRB8813271RCmg

1   believe the interception of the private oral communication 286
2   will provide evidence that a streetgang is committing, has 287
3   committed, or will commit a second or subsequent gang—related 288
4   offense or that the interception of the private oral
5   communication will aid In the collection of a judgment 289
6   entered under that Act; or (iv) upon information and belief 290
7   that a streetgang has committed, is committing, or is about 291
8   to commit a felony.
9     As used in this Section, ~streetgang~ and "gang-related11    293
10   have the meanings ascribed to them in Section 10 of the 294
11   Illinois Streetgang Terrorism Omnibus Prevention Act.   295
12   (Source: P.A. 88—249.)              297
13     Section 99. Effective date. This Act takes effect upon    300

14 becoming law, except that Section 5 takes effect January 1, 301
15  1995.

STATE OF ILLINOIS
88TH GENERAL ASSEMBLY
REGULAR SESSION
SENATE TRANSCRIPT

108th Leyis~ative Oay                    April 21, 1994


Senator~ OeAnge I is.


SENATOR OeANGEL IS:

Thank you, Mr. President. Senat~ Bill 1336 afforded the
taxpayers —— property taxpayers of the County of Cook, the same
opportunities that those who reside outside of the county can
have. Along with it, an amendment was adopted in committee which
lowered the burden of proof —— lowered the ability to appeal from
the burden of proof —— irom constructive fraud to the burden of
proof. And then there was some concern on the part of the more
legal experts on the Floor, and we changed that frOm burden of
proof to preponderance of evidence. Think this bill is going to
probably be worked on a little bit more in the House. This is, in
fact,a verysignificant step, however, for the taxpayers ofCook
Countyand —~and across the State, and I would urge passage, and

we'll keep working on it.
f¾-IOING OffIC~:    (5fNATSR 000Y'Cl)

Is there any discussion? If not, the question is, shall
cenate Gill 1733.4~ pas~ T~o~e ~r-~ ~avOc- ~(C. vote ~ye. Opposed
will vote Nay, and the voting is open. Have all voted who wish?
Have all voted who wish? Have all voted who wish? Take the
record. On that question, there are 53 Ayes, no Nays, none voting
Present, and Senate Bill 1336, having received the r>~quired
constit~jtionaL majority, is declared passed. On the Order of 3rd
Reading is Senate Bill i352. Senator Dillard. Madam —— Madam
Secretary, read the bill.

ACTING SECRETARY HAWKER:

Senate Bill 1352.

(Secretary reads title of bill)

3rd Reading of the bill.

PRESIDING OFFICER:        (SENATOR 000YCZ)

Senator Di llard.

SENATOR OILLARD:


1 38

EXHIBIT "B"
STATE OF ILLINOIS
88TH GENERAL ASSEMBLY
REGULAR SESSION
SENATE TRANSCRIPT
108th Legislative Day                    April 21, 1994


Thank you, Mr. President, and Ladies and Gentlemen of the
Senate.   This  bill, addresses an   interpretation that became

confusing, which resulted from an Illinois Supreme Court case,
dealing with consensual eavesdropping and the all—party consent
provisions that's in the Illinois Eavesdropping law. And in the
case called People vs. Beardsley, the Supreme Court found t-hat
consent of all of the parties to a conversation in an
eavesdropping situation really didn't mean that. It meant all
parties are not required, if it was clear that the conversation,
or somebody in the conversation, really didn't carry an
expectation of privacy. And this bill makes a suggested change by
the Illinois State Bar Association that restores an all—party
consent provision t3 Our law in Illinois, regardiess of whether

the parties really Intended their conversation to be private or

j

not. It restores that, but then it goes on to create three
exemptions to —— to the all—party consent requirement. The first

LtIing I did was make a provision identical to a bill that passed
this Body overwhelmingly a year ago, and that makes an exemption
for undercover police that are investigating felony drug offenses,
felony streetgang offenses, forcible felonies, where it's
necessary to protect a police officer's safety. It's a very
limited version of what about forty other states have, and what
federal agents have. The second thing the bill does in terms of
carving a exemption for consensual eavesdropping i5 something that
was subject to an amendatory veto by Governor Edgar a year ago,
and it died in the House in the fall Veto Session, and that's to
say that where police officers pull someone over for a driving
under the influence type of offense, that the audio portion of a
videotape of that type of stop by law enforcement off icers is also
exempt from consensual eavesdropping in Illinois. And the last
thing, and the third exemption, exempts recording by crime
victims. In other words if a stalking victim has someone call

139

STATE OF ILLINOIS

88TH GENERAL ASSEMBLY

/        REGULAR SESSION

SENATE TRANSCRIPT

l2lst Legislative Day                    May 18, 1991,

yOu wish to——this bilL returned 2nd Reading for the purposes ~f an amend'ment~ House Bill 356. Senator Dudycz seeks Leave of the Body to return House Bill 356 to the Order of 2nd Reading for the purpose of an amendment. Hearing no objection, Leave i5 granted. On the Order of 2nd Reading is House Bill 356. Madam Secretary, are there any Floor amendments approved for consideration?

ACTING SECRETARY HAWKER:

Amendment No. 4, offered by Senators Dudycz, Burzynsk , ~'3sara and Raica.

PRESIDING OFFICER:     (SENATOR WATSON)

Senator Oudycz.

SENATOR DUDYCZ:

Thank you, Mr. President. Floor Amendment No. 4 contains eight components. What it does, it adds, first of aLL, the contents of Senate BiLL 1722 that passed the Senate 57 to nothing, to allow MEG units to investigate gun and Qang—reLateo offerns~s. Number two, it adds the components of Senate SiLL 1705 that aLso passed the Senate with a vote of 56 to nothing, to inCLude armed violence in the death penalty felony murder provision. Number three, it adds Senate BiLl 1694 that passed the Senate 52 to 3, to clean up the stalking sentencing provision and add aggravated kidnapping to the list of offenses in the Habitual Offender Life Imprisonment  Section,  and  allow  use  immunity  on aLL criminaL

offenses, Number four, it adds Senate Si LI 1352 that passeo the Senate  with  a  vote  of  55 to nothing, to reverse the Beards Ley

eavesdropping case which wouLd allow consensual overhears by La~

enforcement in certain cases when necessary for officer safety,
and to expand wiretap to include murder, money saunder ing a-~d
gang—related felonies. And this —— this portion of the amenomer,t
also adds to wiretap, gun offenses that were in Senate Si L 1713.
Number five, it Creates a new offense of false personation of a
parent or a LegaL guardian of a minor to a public or schooL

EXHIBIT "C"

56

STATE OF ILLINOIS
88TH GENERAL ASSEMBLY
REGULAR SESSION
SENATE TRANSCRIPT

l2lst Legislative Day                    May 18, 1994

officer or an —— or empLoyee. The penalty wouLd be -— a C Lass ~
misdemeanor. And number six adds the components of Senate Si
1228 that passed the Senate with a vote of 58—nothing to ma~e it
unlawfuL to possess drug paraphernaLia with the intent to use
as drug paraphernalia. Number seven, it adds Senate BicL 151?
that passed the Senate 46 to 4, to aLLow the court to set up a
special drug—testing program as a condition of reLease on a
recognizance bond on a feLony or drug offense. And finaLLy,
adds Senate Sill 1717 that passed the Senate with a vote of 46 to
nothing, to a~Low a Statewide Grand Jury to investigate gun coo
gang—related Crimes.

PRESIDING OFFICER:     (SENATOR WATSON)

I~ there any discussion? Senator Karpiel. Senator Hendon.

SENATOR HENDON:

Thank you, Mr. President. Will the sponsor y i e Lcf for a
question? WaLter, what was the —— the vote totaL you ga,e on toe
amendment deaLing with the wiretap, because I don't I diun t -
I don't remember that vote beir~g that——that Lopsided on the
wiretap bill?

PRESIDING OFFICER:    (SENATOR WATSON)
    Senator Dudycz.

SENAIOR OUDYCZ:

Senator Hendon, that was Senate BiLL 1352, which passeo toe
Senate  55  to nothing  with  one  voting Present, to reverse toe

Seardsley eave dropping case aLlowing consensuaL overhears by Law
enforcement in certain cases when necessary for officer safety and
——   and  to  expand   wiretap  to incLude murder, ~~one y Launde<ng.

gang—reLated feLonies. And...(microphone cutoff).. .and size
said, it also adds to wiretap, the gun offenses that ~e~e
Senate Bill 1713.

PRESIDING OFFICER:    (SENATOR WATSON)
    Further ~iscussion?   Senator Hendon.

5

N

STA E OF ILLINOIS
88TH   ENERAL ASSEMBLY
REG LAR SESSION
I            SENA   TRANSCRIPT
l2lst LegisLative Day                        May 18, 199g.


SENATOR NENOON:
    Thank you, Mr. President.  WeL x, I have  a  probLem.  I  must
have  been the  one  Present vote   that wiretap biLL, because £

know there was much discussion about the wiretap Last year when
that came up. And there was a lot b,f concern about the wi retao
portion~ I. have no —— no problems with ~the —— with  the rest   of
it.    But              I wouLd like for the sponsor to expound a  cit  on the   --

the wiretap portion of t~e amendment, so —— because I -- ~hen you
say consensual wiretap, I know when a police officer's Life is in
danger, but are there any other situations where the wiretac
portion of that amendment would —— would appLy or be appLicabLe?

PRESIDING OFFICER:    (SENATOR 'WATSON)
    Senator Dudycz.

SENATOR~DUOYCZ:

    Well, Senator, Senator Di Llard was the sponsor of Senate Si
1352, and I would defer to Senator DilLard to expLain that portion
of the amendment for you.

PRESIDING OFFICER:    (SENATOR WATSON)
    Senator Di I lard.

SENATOR DILLARD:

    Senator Hendon, what we add for offenses for wiretapping are
solicitation of murder, solicitation of murder for hire, first
degree murder, money Laundering, as welL as the other of#ense that

—— the drug offenses. I mean, I —— I think these are —— are
reasonabLe and very, very heinous types of =— of activities that
our law enforcement officers ought to have the abi Lity to -- to
use eavesdropping under a controlled setting. ~I mean, 'we re

talking murder, money laundering — some very, very stiff types of
crimes.

PRESIDING OFFICER:    (SENATOR WATSON)

    Senator Hendon.
  /
SE1NATOR HENDON:
                            58
            STATE OF ILLINOIS
            88TH GENERAL ASSEMBLY
             REGULAR SESSION
             SENATE TRANSCRIPT

l2lst Legislative Day '                    May 18, 1994

    Well, in conclusion, I —— I'm clear now that I am not taLk~ng
about the same Senate bill, because my good friend wasn't a
Senator at the time. I was concerned about a bi sL simi Lar to this
that we passed last year that —— that had far more reaching -- was

far more wide—reaching than~ —— than what you're proposing here today. Thank you, ,Mr. Chairman.

PRESIDING OFFICER:. (SENATOR. WATSON)

Further discussion? Senator Cronin.

SENATOR CRONIN:

Yes. I just want to ask the sponsor — this biLL seeks to expand the powers of the Statewide Grand Jury. Do you know how many times the Statewide Grand Jury has been used under the current Attorney Genera~L, Democrat Roland Burns?

PRESIDING OFFICER:    (SENATOR WATSON)
Senator Dudycz.

SENATOR DUDYCZ:

Two times, with eighteen indictments.

PRESIDING OFFICER:      (SENATOR WATSON)
Further discussion?   Senator Shaw.

SENATOR SHAW:

WiLL the sponsor yieLd?

PRESIDING OFFICER:    (SENATOR WATSON)

Yes, the sponsor indicates he wilL yieLd, Senator Shaw.

SENATOR SHAW:

I wanted to get back to this wiretap, aid it's my
understanding that we have passed a number of these biLLs in -- in
separate bills. And now, why did we —— why do we need to pass
this —— bunch all of these bills up again and pass them again,
deaLing with the wiretap and the Statewide Grand Jury? ~4hy do we

—— why are we doing that?

PRESIDING OFFICER:    (SENATOR WATSON)
Senator Dudycz.
                STATE OF ILLINOIS
              88TH GENERAL ASSEMBLY
                REGULAR SESSION
              SENATE TRANSCRIPT
l2lst Legislative Day'                May 18, ~994

SENATOR DUDYCZ:

Well, unfortunately, many Senate biLLs are being amended in
the House, and it is the wise decision of the President of the
Senate to keep our Law enforcement CriminaL Code initiatlv~s
alive, and we are amending them into the vehicLe biLLs that
have available to us.

PRESIDING OFFICER:    (SENATOR WATSON)
Senator Shaw.

SENATOR SHAW:

Yeah. Could you tell us what the House are adding to these
bills? Whether they're making them better or not?

PRESIDING OFFICER:    (SENATOR WATSON)

Senator Dudycz.

SENATOR DUDYCZ:

Well, Senator, they're still in ——— they're stiLL in committee

— in the House committees — and we don't know what they 3re adding in those bills, because they haven't been voted out of comrn~ ttee yet.

PRESIDING OFFICER:    (SENATOR WATSON)
Further discussion?   Senator Shaw.

SENATOR SHAW:

The other part ——— why are we broadening the wiretap? _ _

——— one would assume that we're broadening this in terms o~ -- wiretapping in this State. Why are we broadening this? ~e know that  we  have a ——— when  we  passed the LegisLation giving the

Attorney General indictment power and aLL of that, that ~as supposed to be the panacea to the drug probLem that we had ½ State, and now we come back, we want to ——— wiLL the Attorney General be able to wiretap under this biLL?

PRESIDING OFFICER:    (SENATOR WATSON)

Senator Dudycz.

SENATOR OUDYCZ:
                    STATE OF ILLINOIS
                    88TH GENERAL ASSEMBLY
                    REGULAR SESS-ION
                    SENATE TRANSCRIPT
l2lst LegisLative Day                    >~ y 18, 1994


    My handler says, no, only State's attorneys may appLy for the
court orders.

PRESIDING OFFICER:    (SENATOR WATSON)

    Senator Shaw.

SENATOR SHAW:
    Doesn't  the   bill  itself talk about Law enforcement?   Is the

Attorney General considered a Law —— a part of Law enforcement ~n

•this State? Or did it —— does it exclude him?

PRESIDING OFFICER:    (SENATOR WATSON)
    Senator Dudycz.

SENATOR DUDYCZ:
    You're   correct. The  ——  the  Attorney  GeneraL i5  Law

en f o r c em en t , but t he I aw i s c I e a r t h a t it' s t h e r e s p on s i b i Li ty o f
the individual State's attorneys to appLy for -—— to make the
applications, not the Attorney General.

PRESIDING OFFICER:    (SENATOR WATSON)
    Senator Thaw.

SENATOR SHAW:

FinalLy, I don't want to prolong this, but it ——— ~t seemed to me when you go to ——— you're eroding peopLe's rights a LittLe bit at a time on this wiretapping business. And I ——~ I think most of us here, we don't have anythI~ng to Hde, but certainLy there are citizens of~t there and information that you would receive under the wiretapping. Say that you was Looking at a drug deaLer here. If other information that you received that might be crirninas i.i nature, what would you be allowed to do with that, once y~o received it?

PRESIDING OFFICER:     (SENATOR<WATSON)
     Senator Dudycz.

SENATOR DUDYCZ:

I'm sorry, Senator. I didn't understand your que~1on. CouLd you clarify it for me, please?

                         61
               STATE OF ILLINOIS
               88TH GENERAL ASSEMBLY
                REGULAR SESSION
               SENATE TRANSCRIPT
l2lst Lt~gislative Day                    May 18, 199~

PRESIDING OFFICER:     (SENATOR WATSON)

    Senator Shaw.

SENATOR SHAW:

    Under the —— wiretap, you are looking for drugs; yoo re
dealing with drugs. Once you obtain other criminaL activities or
information, what would you be permitted to do —- aLLowed to do
with it under this bilL?

PRESIDING OFFICER:     (SENATOR WATSON)
    Senator...

SENATOR ThAW:

    Is this bill structured simi Lar to the          sett ing op th~
Attorney General's grand jury powers?

PRESIDING OFFICER:     (SENATOR WATSON)

    Senator Dudycz.

SENATOR DUDYCZ:

    Senator, as long as the drug activity is being monitored, 30<
information that is being received by the Law enforcement agencies
as coLlatrral material, I guess wouLd —— wouLd be admissibLe.

PRESIDING OFFICER:     (SENATOR WATSON)
    Senator Shaw.

SENATOR SHAW:

    Would you repeat that again?

PRESIDING OFFICER:    (SENATOR WATSON)

Senator Dudycz, for a second time.

SENATOR DUDYCZ:

If  the  ——  if  the  law enforcement agency is monitoring the

activity for —— for the drug activity — the Language that is being
tapped — if there is other —— in conjunction with that Orog
Language, if there is any other information of a crimina~. natore
that is brought into that conversation, then the Law enforcement
community can proceed with the —— with the enforcement of it.

PRESIDING OFFICER:    (SENATOR WATSON)
STATE OF ILLINOIS
88TH GENERAL ASSEMBLY
REGULAR SESSION
SENATE TRANSCRIPT
121st Legislative Day                    May 18, ½9~

Senator Shaw.

SENATOR SHAW:

So we re no,t structuring this t~e same way we structured the
Statewide Grand Jury power, because it was my understanding that
the  passing  ——  when  we  passed  that  LegisLation,  they  were

prohibited from bringing in anything that was not directLy

related. And I know what you said.

PRESIDING OFFICER:          (SENATOR WATSON)

Further discussion? Senator MoLaro.

SENATOR MOLARO:

Thank you, Mr. President and Members. To the amendment:

problem I have is I think this amendment, in the way it s
presented —— I'm not sure what happened in the House. I nave no
idea what they attach. And, Senator Dudycz, I couLd certainLy
understand v th what's going on in the Last two Houses, wh3t
you're trying to accomplish. 8ut the probLem is, and why th~s is
totalLy  unfair  ——  and  ——  and  I  found  out,  and I think cur

Parliamentarian will tell me that I cannot cut up an amendment.
This is Amendment No. 4, so I can't cut it up. There are, as I

count them, si x.teen different types of things that we are trying
to do to the Criminal Code, of which I whoLeheartedLy agree to
thirteen, and I. don't want to be recorded as No on these tc~rteen.
But there are three that I think are terribLe. Now you oC 0ot me
in an unenviable position, and every Senator here, that if there s
one or two of these things that we don't agree to, we have to vote
No, and if somebody pulls this roll calL, we re voting No on about
fourteen good provisions. And I'm just wondering if tner~ s
another way that you can do this, because I'm assuming I cannot
divide this amendment. And for the record, the ParLiamentar~an ~s
shaking her head yes, Senator.

PRESIDING OFFICER:    (SENATOR WATSON)
Senator Dudycz.
                    STATE OF ILLINOIS
              88TH GENERAL ASSEMBLY

REGULAR SESSION
SENATE TRANSCRIPT

121st LegisLative Day                          May 18, 1994


SENATOR DUDYCZ:

Yeah.  I ——— I guess I'm a  little bit confused by your

statement, Senator. When——when I was reading oft the           the
various bilLs that we ——— that we passed previou½y, they were at
votes of like 57 to nothing, 56 to nothing, 52 to iS, Sc to
nothing, and we're trying to accommodate the ——— the entire Senate
to ——— w~th a package that can ——— that can have some teeth in it,
some Law enforcement effectiveness, and something that the
majority of us can vote for. Now I understand if you have a
problem with a component for it, Senator. You know, there are
many bills that the Senate President says, '1 have a probLem wIth
a portion of it, but I'm going to hold my nose and vote on it,
because it has a ——— a majority of it is something which I find
acceptable and find very much desirabLe> That's your
prerogative, Senator, but this is the package that was rianced to
me, and this is ——— the one I'm going to attempt to pa~.


PRESIDING OFFICER:     (SENATOR WATSON)

Senator Molaro.


SENATOR t10LARO:

Not ——— not to belabor the point, but you just said that somc
were voted 56 to 3 and some of these I have a probLem with. It's

not a single bill that the President or someone eLse ma~ have a
problem with and s~y I'm going to swalLow o this singLe OiLy and
vote Yes or vote No anyway. This is a probLem where you ha~o
distinct separate thoughts, distinct separate concepts that we
have on previously, and now I'm going to be forced to vote
No on ——on things I voted    Yes on previousLy, because there   are
certainthings that just        I cannot in goodconscience vote Yes

for. And it's terrible, and I just don't think it's right. But
that's all.

PRESIDING OFFICER:    (SENATOR WATSON)

   Further discussion? Senator Petka.
                   STATE OF ILLINOIS
                   88TH GENERAL ASSEMBLY
                    REGULAR SESSION
                    SENATE TRANSCRIPT
121st Legislative Day                    May 18, 19½.

SENATOR PETKA:

   Thank you, Mr. President. Will the sponsor yieLd.?
PRESIDING OFFICER: (SENATOR WATSON)

   Yes, the sponsor will yield, Senator Petka.

SENATOR PETKA:

   In response to a question that was asked previousLy, Senator,
about the use of the Statewide Grand Jury: Do you reca~ L ~ne
types of offenses that —— that were invoLved at that time?

PRESIDING OFFICER:       (SENATOR WATSON)

Senator Dudycz.

SENATOR DUDYCZ:

Well, the --— the one that we previously passed, Senator, were dealing with drugs and exclusively in drugs — my understanding. These are ——— are a little bit more expansive. We're deaLing with murder, money laundering, gang—related offenses, gun offenses.

It's not exclusive to drugs, as ——— as was passed previousLy.

PRESIDING OFFICER:     (SENATOR WATSON)

Further discussion? Senator Petka.

SENATOR PETKA:

We  passed  the Statewide  Grand Jury bi L L in 1990 and for --

then for a period of four years, we've had two drug—reLated prosecutions through a Statewide Grand Jury. in your opinion, Senator, what ——— how do you perceive the Statewide Grand Jurt roLe

being expanded by gun— and gang—related crimes to hive any impact on crime, if it's only been used twice in the Last four years?

PRESIDING OFFICER:       (SENATOR WATSON>

Senator Dudycz.

SENATOR DUDYCZ:

Senator, I don't know how I could answer that. You    we give
the tools to law ,enforcement in our State. We have the confidence
that they. have the ability, desire and the ——— the means to —- to
proceed with their prosecutions and then their enforcement.

STATE OF ILLINOIS
88TH GENERAL ASSEMBLY
REGULAR SESSiON
SENATE TRANSCRIPT

121st Legislative Day                    May 18, 19½.


PRESIDING OFFICER:      (SENATOR WATSON)
    Further discussion?   SenatorPetka.

SENATOR PETKA:

    So are ——— then, are you suggesting that perhaps the    if you
had a proactive professional law enforcement officer in the
Attorney General's Office, like ;Iim Ryan, that this wouLd perhaps
be used?

PRESIDING OFFICER:     (SENATOR WATSON)
    Senator Dudycz.

SENATOR DUDYCZ:

    Yes.

PRESIDING OFFICER:     (SENATOR WATSON)
    Further discussion?   Senator H•endon.

SENATOR HENDON:

    Thank you, Mr. President. I apoLogize for rising a second
t~me. But I ——~ I do want to ask the sponsor just a few questions.

In the bill last year, when a conversation was picked up that had
nothing to do with the case at hand, it was stated that that
those recordings would be. held for life. And —— and -- and then
anyone twenty years from then, thirty years from then, couLd have
access to that information. What is the —— what is the situation,
c i r c u r n s t a n c e s , w i t h non r e I a t~e d c r i m i ma I a c t i v i t y on c on v e r s a t i o n
picked up, under this bill?


PRESIDING OFFICER:     (SENATOR WATSON)
     Senator Dudycz.


SENATOR DUDYCZ:


     WelL, if it doesn't deaL with any criminaL offenses and has
nothing to do with the investigation under hand, then that's when

they would be held in confidence. They wouLd be kept private.


PRESIDING OFFICER:     (SENATOR WATSON)

     Senator Hendon.


SENATOR HENDON:


                         ~SA
          STATE OF ILLINOIS
          88TH GENERAL ASSEMBLY
           REGULAR SESSION
           SENATE TRANSCRIPT

121st Legislative Day
May 18, 1994

    Well, Mr.
talking about is how
where a new State's
ten years from now
that was totally
not the privacy a
maintained? And
under the earlier
year, I believe, o
pass the House
had rothing to do
picked  up  — how

that conversation
—— I mean, I understand "kept private".
  long will
  attorney

and possib

  unre Lated
spect, but
that was

legi s Lat ion

r if it did

— the quest
with  the
it  ——  language
What I'm

in some   ibrary
could come in or a cLerk can come in
ly blackmail somebody for something

to the case at hand. My quest;on is

 how long wilL these records be
what I was trying to get to earlier,
that did not' pass this 8ody - Last
pass, it was very cLose, and did not

ion was, what about conversation that
investigation, that was innocent Ly
long wouLd that conversation
be destroyed?
ie around, or ~i IL

PRESIDING OFFICER:        (SENATOR WATSON)

    Senator Dudycz.

SENATOR DUDYCZ:

    Well, there's a minimization ~e~quirement, Senator, whereh~ the

—— the law enforcement officials monitoring the conversations are
requi red  to  ——  if  the  conversations  dri ft  away  from  their
monitoring   intent ——   in   other   words,   if    if you and I are

speaking regarding some drug activity, and we are being monitored

by law enforcement community, and all of a sudden our conversation
turns to the Super Bowl 'or Bulls or —— or our fami Lies or anything
private, then they're required to shut off —— they can . airtain
their monitoring, but they are required to shut off the --
recording machines.. And then if our conversation returns tc the
criminal activity that is granted L~y the courts to be monitored,
then they —— they are allowed to turn those machines back on.

PRESIDING OFFICER:     (SENATOR WATSON)
     Further discussion?   Senator Hendon.

SENATOR HENDON:

     (microphone cutoff).. .Chairman, and I do truLy apoLogize.
               STATE OF ILLINOIS
               88TH GENERAL ASSEMBLY
               REGULAR SESSION
               SENATE TRANSCRIPT
121st LegisLative Day                    May 18, 1994


But, Walter, I'm trying to get to one point and one point a Lone.
What if that conversation is picked up, and somebody fouLed uc —
they didn't turn off the recorder, and —— and Senator Oudycz says
something that his wife,. ~ouldn't be happy with — not that you
would — wouLd that conversation —— because it says here, as I read

it, any private oraL communication intercepted in accordance with
subsection   blah,   blah  ——  if  practical, be recorded by tape or

other comparitable (sic> method. The recording shaLc,            if
practicable, be done in such a way as wilL protec~ it from ed~t~ng
or other aLteration.
need to realLy hear thi
that has nothing to do
your   personal  Life  o

should be edited. And
inn&cent conversation
languish around for
someone terribly for
wanted to blackmail
I'm not married, so I
 And I'm sayin

s — if such a

with crime but

r your family
 my question to
 is picked up any

twenty or thirty
no other reason
them or —— or get
don't have that
g —— my position is — and
conversation is picked
may be embarrassing to ——
life, then that convesat~
you is, what happens if tb
way? Will  it ——  wiLe

years and come back and
than somebody got it

politicaL retribution?
problem —— you know —-
 uP

 to

 00

 at

 it

 a r rn

 a r, d

And
bout

my wife hearing anything.    But  that's   something —-  JuLy  27~rd.
That's  something  that  ——  that  you  shouLd think about. And my

question to you is: What happens to unreLated nonc.rirninal
conversatiOn that happens to be picked up? Wi LL that he
destroyed, or will it be filed away somewhere for some000'i to
stumble upon twenty, thirty, fifty years later?

PRESIDING OFFICER:    (SENATOR WATSON)
    Senator Dudycz.

SENATOR DUDYCZ:

    Well, thank you, Senator. I appreciate your comments, arid I

———— I would hope that I would not say anything that wouLd offend my wife when I speak with you, publicly or privateLy. But -——but I guess to —~ to ——— to respond to yOur question, I guess the best

LQ

STATE OF ILLINOIS
88TH GENERAL ASSEMBLY
REGULAR SESSION
SENATE TRANSCRIPT

121st LegisLative Day                    May 18, 1994


way to do it, maybe to your satisfaction, Senator, is to read the two sentences that would ——— that apply, as far as the cur rent Criminal Code. One second, please. Okay. The Sect~on -—— SectiOn 108B—9. "ImmediateLy upon the expiration of the order pr its

extensions, the tapes, and other recordings, shaLL be transferred to the chief judge issuing the order and seaLed under his direction. Custody of the tapes, or othes recordings, shaLL be maintained wherever the chief judge directs.' And they shaLL not be destroyed, except upon an order of a court of competent jurisdiction" except ——— 'and in any event shaLL be kept for years. So they shall ~be kept for ten years, enator, and if ——— if the judge decides to ——— to have them destroyed — the chief judge — sooner, he can.

PRESIDING OFFICER:     (SENATOR WATSON)

Further discussion? Senator Hall.

SENATOR HALL

Wi IL the sponsor yield for a question?

PRESIDING OFFICER:    (SENATOR WATSON)

Senator Dudycz will yield, Senator HaLL.

SENATOR HALL:

Senator, I see that this bill was amended over here, right?
Is that correct?

PRESIDING OFFICER:    (SENATOR WATSON)

Senator £Judycz.

SENATOR HALL:

And~— and...

SENATOR DUDYCZ:

That's what I'm attempting to do right now, Senator.

PRESIDING OFFICER:    (SENATOR WATSON)

Senator Hall.

SENATOR HALL:

.1 don't remember exactly what you said.
                    I   thought yOu said
              STATE OF ILLINOIS

88TH GENERAL ASSEMBLY
REGULAR SESSION
SENATE TRANSCRIPT

l2lst Legislative Day                    May ~8, 199.4

that all these amendments we've been taLking about is —- 5 in
that. Is that what you're trying to do right now?

PRESIDING OFFICER:     (SENATOR WATSON)
    Senator Dudycz.

SENATOR DUDYCL:

    Senator, we're on 2nd Reading. I'm attempting to ameno hojse

Bill 356 with eight provisions from previous biLLs, most of w< ½

had passed previously, the Senate, and are somewhere in the otmer

Chamber.

PRESIDING OFFICER:     (SENATOR WATSON)

    Further discussion? Seeing none, Senator Oudycz, wouLd yOu
like to close? All those in favor, say Aye. A roLL caA has been

asked for. All those in favor, vote Aye. Opposed, vote ~. The
voting is open. Have all voted who wish? Have aLs voted yrc
wish? Have all voted who wish? Take the record. In tba~
quest ion, there are 47 voting Yes, no voting -—— 9 voting ND, II

voting Present. And the amendment is adopted. ~rd Read½g. A~e
there any —— okay. Error by the Chair, and we now have to recaL
this, Senator, back to 2nd Reading, and I'd ask ~eave of the Hody
to   return  Senate   Bill  ——  or House BilL 298 ~si c> (35½ to the

Order of 2nd Reading for the purpose of an amendment. ~ear>ig no
objection, leave is granted. On the Order of 2nd Read½g is Hoise
8111  298  (sic>.  Madam Secretary, are there any FLoor amendments

approved for consideration?

ACTING SECRETARY HAWKER:

   Amendment No. 5, offered by Senator KarpieL.

PRESIDING OFFICER:      (SENATOR WATSON)

   Senator Karpiel, on Amendment No. 5.

SENATOR KARPIEL:

   It is Amendment 5 to House Bill 356, correct?
PRESIDING OFFICER: (SENATOR WATSON)

   That is correct.


                        70
            STATE OF ILLINOIS
            88TH GENERAL ASSEMBLY
             REGULAR SESSION
             SENATE TRANSCRIPT
121st LegisLative Day              May 18, 1994

SENATOR KARPIEL:

Well, you had another number up there, that's why. Okay.
Thank you very much. Amendment 5 to House BiLL 356 simoLy

requires that the releasing authority notify a concerned citizen
upon a defendant's discharge from jail, or from a mentaL heaLth
faci Lity, or parole, or if they've —— they've escaped or uhatever,
but it does notify a concerned citizen upon the post - about a
post—conviction petition and hearing, if the conc~rned c~t~zen
does request that in writing.

PRESIDING OFFICER:        (SENATOR WATSON)

Is there any discussion? Seeing none, aLL those in favor, say
Aye. Opposed, Nay. The Ayes have it, and the amendment is
adopted. Any further Floor amendments approved for conside~at ion?

ACTING SECRETARY HAWKER:

No further amendments reported, Mr. President.

PRESIDING OFFICER:        (SENATOR WATSON)

3rd Reading.

PRESIDING OFFICER:        (SENATOR DONAHUE)

Leave was requested earlier to go back to House Hi LL 504. Co
on the bottom of your page 4 —— middle of the page 4 is house Hi LL

504. SenatOr Watson. Do you wish this bill to go back to the Order of 2nd Reading for the purposes of an amendment? hearing no objection, leave is granted. On the Order of 2nd Reading is House Bill 504. Nadam Secretary, are there any FLoor amendments

approved for consideration?

ACTING SECRETARY HAWKER:

    Amendment No. 2, offered by Senator Watson.

PRESIDING OFFICER:    (SENATOR DONAHUE)

    SenatOr Watson, on Amendment No. 2.

SENATOR WATSON:

    Yes, thank you. Thank you, Madam Chairman        or, President. I appreciate that. We —— this particular amendment takes out some
                    STATE OF ILLINOIS
88TH GENERAL ASSEMBLY
   REGULAR SESSION
  SENATE TRANSCRIPT
123rd Legislative Day
May ?0, 1994

Thi5 ~s
designed to stop that. And I've got to teLL you, if ——

Senator, if
8  in  his

from doing i
for people to

- not to be
second ghet
so—called we

PRESIDING OF

    Question
vote Aye. 0
voted who
wish? Have
question, t
Hill 343, ha
Mayor Johnson wants to have
community, he can have it.

t.  The fact of the matter,
  find housing where the
left in another c
to, except this
Il—intentioned pr
FICER: (SENATOR
  is,shaLl Hous

pposed will vote
wish? Have all
all voted who w
here  are  31 Ayes

ving received the
forty—two percent Section

This biLL do~sn t keeo him
this gives the oppOrtüni ty
jobs are
ommunity in w
  time it's

ogram. I urge

DONAHUE)

e Bill 343 pas
Nay. The voti

  voted who Wi
  ish? Take
  , 14 Nays, 12
hi ch
leg

we

S.

ng

s h?

the

v 0 t 1
  — where the jobs are
they re
i t i i, a t e

pass th

c r eat i ng

ties by

i-s bi~.
 Those in

is Ocen.

 ~iave aLL

rncord.

 resent
required constitution3L
a v o r

Have

vO to

 in
a

a
 a

d ~ho

tH a r

H o ü s e
major t /
decLared passed. Senator
bilL, Madam Secretary.
Dudycz, on House HiLL 356.

END OF TAPE

TAPE 2

ACTING SECRETARY HAWKER:

House Hi LI 356.

(Secretary reads titLe of biLL)

3rd Reading of the bill.

PRESIDING OFFICER:        (SENATOR DONAHUE)

Senator Dudycz.

SENATOR DUDYCZ:
Thank you,   Madam   President.  House Hi IL 356 is the first of

EXHIBIT "D"
STATE OF ILLINOIS
88TH GENERAL ASSEMBLY
REGULAR SESSION
SENATE TRANSCRIPT

123rd Legislative Day

four bills being presented today as the
being promoted and hopefully passed out of
356, first of aLl, limits
May ½, 1994
Senate c
the Senat
the grant of peace officer
rime   package,

e. House Hi LI
status for

federal officers
amendment passed
anIllinois    off
thepresence   o

granted - peace
acting under t
willful and
Department of

ch;efs' Assoc
contents  of

out of the Sen
Senate, and
Amendment No.
which passed
Butler, which
gang—re lated
sponsored by S
vote  of  56
penalty
Philip, the
passed the S
sentencing
offenses in
allow the
contents of
passed the
Beardsley ea
enforcement
and expand
to
the Current unlawfuL
    earlier in the committee, a
    icer in an arrest or when a

f the federal officer, that
    officer status. Also gives

hese provisions immunity from ha
wanton misconduct. This portion
State Police, the Sheriffs' A
iation and the FBI. Further,
Senate Floor Amendment No. 4, whi
ate —— which was adopted yest

I'll go briefly through the p

4. It contains the contents of
 the

would
Senate
allow
offenses. It
enator Philip,
to nothing,
57

MEG
to

uni
nothing,
ts to
adds the content
 that passed the

to include armed
felony  murder    provision.
contents of
enate with a
provision and
the habitual
use immunity
Senate Bill 1

Senate with
vesdroppiflg c

in certain
wiretap to
Senate   BilL 169

vote of 52 to 3,

add aggravated k
offender life imp

on all crimina
352, sponsored by

a vOtC of 55 to
us~ of weaponS
nd adds when assi
felony is committ

federaL office
the federaL of

bi Lity, wept
is supported Oy
ssociatiOn , P-o

it contains

ch passed yCStC

erday Out -~t

rovisions of S

Senate ~

  sponsored

invest i y~ t e

s of Sena

Senate a

violence

Also sponsored

inc


up


t

4  are

to  cLean


i    dnapp i ng


ri sonment

I offenses


Senator 0

noth i n~,

by ~

gun-

  Dy

s t i    o g

edin

r is


t i   cer

for

t ne

Lice

t h c

cOdy

the

ena t e

I 72k,

n a   t 0 r

and
te BiC~ I?
Iso. with
in the de
by Sena

~ud~d, wh
the staLk

o  tb~ L~st

section,

It adds

i LLard

to reverse

by

sa ~

1 ng

ase allowing consensual overhears

cases when necessary for officer

include murder, money Launder

o c

a

ath

tor

i ch

i ng
of

and

toe

i cb

the

Cty,

and

STATE OF ILLINOIS
88TH GENERAL ASSEMBLY
REGULAR SESSION
SENATE TRANSCRIPT

123rd LegisLative Day                                May 20, 1994

gang—related felonies.   This amendment —— or  this  portion  aLso
adds  to wiretap,  gun  —— gun offenses which were in Senate DiLL

1713. It also creates a riew~offense of false personation of a
parent or legal guardian of a minor to a public or schooL officer
or an employee. This —— this provision was taken from the --
Mayor DaLey's Safe Neighborhoods proposal. It adds the provis~ons
sponsored by Senator Topinka of Senate 8iIl 1228 that passed the
Senate 58 to nothing, to make it unlawful to possess drug
paraphernalia with the intent to use it as drug paraphernaLia.
Adds the contents of Senate Bill 1513, sponsored by Senator Petka,
that passed the Senate 46 to 4, to allow the court to set u~ a
• special' drug—testing  program  as  a   condition of   release on a

recognizance bond on a felony or a drug offense. It also adds the
contents of Senate BilL 1717, promoted —— or sponsored by Senator
Dillard, which also passed the Senate with a vote of 46 to
nothing, to aLLow a statewide grand jury to ~nvest~g te gon-, and

——and gang—related crimes. And finally, it contains——the 'biLL
contains the contents of Senate Floor Amendment No. 5, wnich ~e
also adopted yesterday, which added the contents of Senate DiLL
1517, sponsored by Senator Karpiel, requiring the State's attorney
to notify a witness of a defendant's post—conviction petition and
the time and place of a hearing on it, requiring the reL~ase --
releasing authority to notify a witness of a defendant's discrarge

from custody if the defendant was committed to the Department of
Mental Health and Developmental Disability under criminaL
~jthority. Requires the Prisoner Review Board to notify a witness
of a prisoner's escape and reapprehension. Requires the --
requires the Parole Review Board to notify a witness of a
prisoner's release on parole, the mandatory supervisory release,
and of his final discharge from parole, th~ eLectronic detention,
work release, et cetera, et cetera4' et cetera, et cetera,
et cetera.

123rd Legi
slative Day
May 20, 1994

                    I
          STATE ~OF ILLINOIS
        88THGE~ER AL ASSEMBLY
          REGLVLAR SESSION
          SENA7E TRANSCRIPT



PRESIDING OFFICER:    (SENATOR DONAHUE)

    Further discussion? Senator Molaro.

SENATOR MOLARO:

    Thank you, Madam Chairman. Just real quicKly. I'm not going
to talk    about   any of the    biLls. A's the Senator started reading
offrolL    calls,  he saw that    they weren't all unanimous. Some had

some No votes to it. I'm certainly not going to talk about bills
that we voted on two and a haLf weeks ago. I assume this is being
done to circumvent some gamesmanship
between the House and the Senate.
this way, because some of these bill
 there  are ———  about  thirteen  or

terrific. And I don't want to berec
ones, because someone could take~this
a 'Yes, but" button, but there is no
that this type of thing doesn~t keep
 know  what   gamesmanship
that apparently is
It' s too bad that
s that I voted No

 fourteen of the
orded No on the t

 roll caLl. I'm
such thing. And
coming before us.
                        has   caused  us
 go~ng

t has t

on --

si x teen

hi rteen

looking

I just

I

~o  have   such terr

vote

Th

LegislatiOn put with bad legislatiOn and you're forced to
or No on —— and it should —— just shouldn't be this way.
my only comment.


PRESIDING OFFICER:        (SENATOR DONAHUE)

Further discussion? Further discussion? Seeing none, the
questiOn iS, shall HousC Bill 356 pass. Those in favor ~iL~ vote
Aye. OppOsed, Nay. The voting is open. Have all voted who ½sh?
Have aLl voted who wj'sh? Have all voted who wj~h? Take the
record. On that question, there are 49 Ayes, 4 Nays, 6 vot~ng
Present. House BiLL 356, having received a reauired
constitutiOnal majority, is decLared passed. If I could have your
attentiOn for just a minute. Senator DeAngeliS and Senator Mahar
have a group of people they would like to introduce to the Senate.


SENATOR DeANGELIS

While  they're  aLl

filing   in, let me introduce the State ——

on

o ~e

and

are

go 0 d

for

wi sh

or\ t

ific

Yes
at's