Source: Legal > I. I> 7th Circuit - US Court of Appeals Cases
Terms: number(05-4324) (Edit Search St~iggest.Terms for My So rph)

2007 U.s. App. LEXIS 2606, *

ERIK REDWOOD and JUDE REDWOOD, Plaintiffs-Appellants, Cross-Appellees, v. ELIZABETH DOBSON and HARVEY CATO WELCH, Defendants-Appellees, and MARVIN IRA GERSTEIN, Defendant-Appellee, Cross-Appellant.

Nos. 05-4324 & 06-1165

UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

2007 U.S. App. LEXIS 2606

January 8, 2007, Argued
February 7, 2007, Decided

PRIOR HISTORY: [*1] Appeals from the United States District Court for the Central

District of Illinois. No. 00-2305--Michael P. McCuskey, Chief Judge.

DISPOSITION: The judgment is affirmed.

CASE SUMMARY

PROCEDURAL POSTURE: Appellants, a married couple, appealed from the United States District Court for the Central District of Illinois, which dismissed their 42 U.S.C.S. §~ 1983, 1.935 claims against defendants, attorneys, prosecutors, witnesses, and others, and which alleged, inter alia, conspiracy to maintain a malicious prosecution. Both sides asked for Fed. R. Civ. ...R.~ 3.0. sanctions for what they called frivolous arguments.

OVERVIEW: The couple treated all contact between prosecutors and complaining witnesses as "conspiracy." The minimum ingredient of a conspiracy, however, was an agreement to commit some future unlawful act in pursuit of a joint objective. The record in this case would not permit reasonable jurors to conclude the prosecutors and witnesses had a joint objective, let alone that they agreed to pursue it through unlawful acts. No prosecutor handled a case in an isolation tank. Discussions with victims, witnesses, and

police were common. These ordinary acts did not amount to 'conspiracy" to violate the Constitution. The parties motions for sanctions were based on acts which occurred during depositions. Mutual enmity did not excuse the breakdown of decorum that occurred at an attorney's deposition. The appellate court held that the district court should have used its authority to maintain standards of civility and professionalism. The district judge remarked that it was "ludicrous" for the couple to argue that lawyers may not instruct witnesses not to answer. Given Fed. R. Civ. P. 3OQd){1), however, the couple had a meritorious position on this issue.

OUTCOME:  The judgment of the district court was affirmed. The attorneys were censured for conduct unbecoming a member of the bar.

CORE TERMS: deposition, frivolous, conspiracy, criminal prosecution, prosecutor, recess, discovery, protective order, state-law, conversation, absolute immunity, prosecutorial, cross-appeal, unbecoming, settlement, instruct, contest, censured, happened, join, supplemental jurisdiction, professional standards, motions to strike, civil litigation, criminal charge, criminal record, federal law, grand jury, shoe-shine, harassment

https://www.lexis.comlresearchlretrieve? m= 1bc7b058a9c65275a59822a4cia~a I 5~ I 9R,rc~~—

<I In r~

a i~u~uui~1tt - uy L)ocKet lNumber - 05-4324    Page 2 of 9

LexisNexis(R) Headnotes ~ Hide Headnotes

Torts > Intentional Torts > Malicious Prosecution > Civil Rights Actions ~

~ "Malicious prosecution" is not a constitutional tort independent of complaints about

wrongful arrest and detention. More_Like This Headnote

Torts > Intentional Tnrts ~ Malicious Prosecution ~ General Overview tLL.

HN2~Unlike activity such as a prosecutor's personal conduct of an interrogation, or a pre-
litigation search or seizure, the choice of witnesses to present is part of the
prosecutoriat function and cannot independently violate anyone's rights (as a search
or seizure might do). More Like This Headnote

Civil Rig.hts Law > Conspiracy ~ Official Conspirators

Civil Rights Law > Conspiracy ~ Private Cons~tizators tLL

HN3~t42 U.S.C.S. § 1985(3)~ covers conspiracies between public and private
actors. More Like This Headnote

4;

Civil Riglifs Law ~ Conspka y ~ Elements ~u

HN4~.The minimum ingredient of a conspiracy is an agreement to commit some future
unlawful act in pursuit of a joint objective. More Like This Headnote

Civil Procedure > Ju~sd~ctio~ > Subject Matter ].nri~dictiqn > Su~pplemental Jurisdiction > General Overview

H~~tA court that resolves all federal claims before trial normally should dismiss
supplemental claims without prejudice. 28 U.S.C.S. § 1367(c)

(3.). More Like This Headnote

-4-

Civil Procedure ~ Discovery > Methods > ~aLQ.~positions ~u

'11~±Fed. ..R. Civ. P~. 3Q(d} specifies how harassment is to be handled. Counsel for the witness may halt the deposition and apply for a protective order, Rule 30(d)(4), but must not instruct the witness to remain silent. Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4). Fed. R. Civ. P. 30(d)(1). More Like_This Headnote

Civil Procedure ~ Discovery > Methods ~ Oral Depositions ~

Civil Procedure ~ Discoyery ~ Misconduct tL

HNtSanctions need not be monetary. Fed.. R. Civ. P. 30(d)(3), 37(a)(4), (b)(2). More Like This Headnote

Civil Rights Law > Practice & Procedure > Costs & Attorney Fees > Statutory Attorney Fee Awards

HN8~42 U.S.C.S. §1938 awards in a defendant's favor are proper only if the suit is frivolous or vexatious. More Like This I-Ieadnote

Civil Ri hts Law > Practice_& Procedure > Costs &_Attorney Fees > Statutojy~Attorne Fee Awards 'n~

HN9+Any defendant who seeks fees under 42 U.S.C.S. § 1988 for the cost of defense in the district court has a tough row to hoe, for two reasons - the legal rule that § 1988 creates is asymmetric in plaintiffs' favor, and appellate review of the district court's decision is deferential. More Like This Headnote

Civil Procedure > PI~.a.ding & Practice > Defenses, .D~murrers, & Objections > Motions to Strike ~ General Overview tL~

HN1O+ The Federal Rules of Appellate Procedure provide a means to contest the accuracy of the other side's statement of facts: that means is a brief (or reply brief, if the contested statement appears in the appellee's brief), not a motion to strike. More Like This Headnote

COUNSEL:    For ERIK REDWOOD, JUDE REDWOOD, Piaintiff-Appellee: Judith M. Redwood, REDWOOD LAW OFFICE, St. Joseph, IL; Charles L. Danner, Peoria, IL.

FOR MARVIN I. GERSTEIN, Defendant-Appellant: Roger B. Webber, BECKETT & WEBBER, Urbana, IL.

JUDGES: Before EASTERBROOK, Chief Judge, and ROVNER and WOOD, Circuit Judges.
OPINION BY: EASTERBROOK

OPINION:   EASTERBROOK, Chief Judge. This is a grudge match. Harvey Cato Welch represented Erik Redwood in a criminal prosecution for battery. Redwood was convicted and maintains that Welch is at fault. Redwood wants Welch to sign an affidavit confessing that he supplied ineffective assistance; he believes that with such an affidavit he could have his criminal record expunged. Welch, who believes that his legal work met professional

standards, has refused to fall on his sword for Redwood's benefit. Redwood has retaliated by insulting Welch in public, calling him, among other things, a "shoe-shine boy. Redwood is white and Welch black; Welch believes that this phrase, when spoken to an adult, is a racial (*2] slur. During October 1998 a scuffle occurred after Redwood again called Welsh a shoe-shine boy. Redwood filed a battery suit in state court; Welch filed a defamation counterclaim and asked the State's Attorney to prosecute Redwood for inciting a breach of the peace. Erik Redwood was represented in that litigation by attorney Jude Redwood, his wife, who also is a plaintiff in the federal suit. Elizabeth Dobson, an Assistant State's Attorney, decided that Erik Redwood had committed a hate crime by using a demeaning term that led to a physical confrontation. Officer Troy Phillips of the Urbana Police Department presented the evidence to the grand jury, which returned an indictment, Attorney Marvin Gerstein, representing Welch in the civil litigation, later wrote to Jude Redwood suggesting that, if the litigation could be resolved amicably, he would try to persuade Dobson to dismiss the criminal charge. The Redwoods rejected that offer. The civil case went to trial; while the jury was deliberating, the parties reached a settlement. Meanwhile the criminal prosecution had been dismissed on the ground that the state's hate-crime law does not apply to speech that does not threaten immediate (*3] physical injury. See People v. Redwood, 335 Ill, App. 3d 189, 780 N.E.2d 760, 269 III. Dec. 288 (4th Dist. 2002).

While the prosecutor's appeal in the criminal prosecution was pending, the Redwoods fifed this federal action against Dobson, Welch, Gerstein, Phillips, and the City of Urbana. The complaint, signed by Jude Redwood as counsel (she is also a plaintiff, alleging loss of consortium) accuses the five defendants of violating the first_amendment by discriminating against Erik Redwood's religion (which, he maintains, leads him to "teach truth and

righteousness to all persons, including defendant Harvey Welch", a curious euphemism for personal insults) and of conspiracy to maintain a malicious prosecution. These acts are alleged to violate 42 U.S.C.~A982~ and §A985 though the Redwoods have never tried to explain why a state may not apply a rule that is neutral with respect to the speaker's religion. See Ernployment Division v._Smiths .494 U.S. 87.~, 110 S. Ct._1595 108 L._Ed. 2d 876 1990 ; cf. Wisconsin v. Mitchell 508 U.S. 4Z.~j13S._Ct. 2194,424 L. Ed. 2d 436 (1993 The complaint also presents several claims [*4] under state law.

Urbana settled the litigation for nuisance value. After extended discovery, the district court granted summary judgment for the four other defendants. Phillips prevailed as a result of the absolute immunity that applies to witnesses in criminal proceedings. See Bri~scoe .y. Laflue, 460 U.S. 325j03_S. Ct. 1108, 75 L. Ed. 2d 96 1983 .The Redwoods have abandoned their claims against him but appeal with respect to the remaining three defendants. The Redwoods also appeal from the denial of their motion for sanctions in discovery, Gerstein has filed a cross-appeal to protest the district court's denial of his motion for attorneys' fees, and both sides ask us to award sanctions for what they call frivolous arguments in this court.

Dobson, Welch, and Gerstein are right to label most of the Redwoods' appellate arguments as frivolous. HNl~I~Malicious prosecution" is not a constitutional tort independent of complaints about wrongful arrest and detention, and Erik Redwood was never placed in custody. See Albright v. Oliver_510 U.S~ 266L114 S. Ct. 807 127 L. Ed._2d 114 (1.9Q4~; Ne~some_v. McCabe, 256 F.3d 747 (7th Cir. 2001). Dobson's decision to commence a criminal [*5] prosecution is covered by absolute immunity. See Imbler v. Pachtman, 424 U.S. 409, 96S. Ct. 984 47 L Ed. 2d_128 (191G). Although the plaintiffs insist that Dobson is being sued for administrative rather than prosecutorial duties, the only "administrative" act about which they complain is her decision to put Phillips before the grand jury as a summary witness, rather than to call Welch. That's precisely the kind of prosecutorial decision that immunity protects. HN2~Unlike activity of the sort at issue in Bqckley~y. Fitzsimmons, 5Q9 U.S. ..259~ 113 S. Ct. 2606, 125 L. Ed. 2d 209 1993 --such as a prosecutor's personal conduct of an interrogation, or a pre-litigation search or seizure--the choice of witnesses to present is part of the prosecutorial function and cannot independently violate anyone's rights (as a search or seizure might do).

As the complainant in the criminal prosecution, Welch lacks absolute immunity, see Kalinav.

Fletcher, 5220 S_118_118 S. Ct. 502,~fl9 L. Ed. 2d 471 199j}, but he's not a state actor and so can't be liable under §. 1983 in the first place. That is why the Redwoods invoke HN3 ~4.2.U.$.C. §. 1985(3), which covers conspiracies between [*6] public and private actors. But where's the conspiracy? Plaintiffs treat all contact between prosecutors and complaining witnesses as "conspiracy." HN4~he minimum ingredient of a conspiracy, however, is an agreement to commit some future unlawful act in pursuit of a joint objective. See United States v. Lechuga1 994 F..2d 346 (7th Cir.. 1993) (en banc). The record in this case would not permit reasonable jurors to conclude that Welch and Dobson had a joint objective, let alone that they agreed to pursue it through unlawful acts. Welch complained to the prosecutor, seeking an end to what he deemed racist harassment; Dobson acted as she conceived the public interest to require. Dobson had no reason to do any favors for Welch and received nothing (except this lawsuit) in return for her official actions. No prosecutor handles a case in an isolation tank. Discussions with victims, witnesses, and police are common. If these ordinary acts amount to "conspiracy" to violate the Constitution, then immunities will be worthless and both witnesses and prosecutors would be induced to remain passive rather than enforce the criminal law vigorously.

Then there is Gerstein, whose only role [*7] was to represent Welch in the tort litigation, and neither § 1983 nor § 1985(3) applies to that private activity. The Redwoods believe that Gerstein acted unethically by offering to contact Dobson and ask her to dismiss the criminal charge as part of a settlement. Whether or not that step was appropriate as a matter of legal

https://www.Iexis.comlresearchlretrieve? m= lbc7bOS 8a9c65275a59822a4da3a 181 2&csvc=... 2/9/2007

'Jet a L'ocument - oy IJocKet iNumner - U>4S~4       Page 5 ot 9

ethics in Illinois, it does not violate any rule of federal law--for so far as § 1983 and the Constitution are concerned, criminal charges may be dismissed in order to facilitate civil settlement. See Newton v. Rum~.ry, A$O U.S. 38~G, i07_S._Ct. 1187,~Q4L. Ed. 2d 405 (1.9871. Calling the offer "extortion," as the plaintiffs do, does not make it so, as Newton demonstrates. See also Dye v. Wargo, 253 F.3d .29.fr C7th. Cir. 2Q01). If Gerstein acted wrongfully in suggesting a global resolution, the Redwoods' remedy lay in the state court handling the civil litigation (to which they never complained), or the Attorney Registration and Disciplinary Commission of Illinois (to which they did), rather than in a federal lawsuit.

The only reason why the Redwoods' appeal is not wholly frivolous is that the district court dismissed the state-law claims on [*8] the merits rather than relinquishing supplemental jurisdiction. HNs~A court that resolves all federal claims before trial normally should dismiss supplemental claims without prejudice. 28 U.S.C. 1367 c (jì. That both sides have allowed animosity to get the better of legal judgment, however, implies the wisdom of bringing the contretemps to a conclusion in a single forum. The state-law claims were not complex. On appeal, the Redwoods treat them as replays of the federal claims, and their principal argument is that a jury could find a conspiracy among the defendants. As we have rejected that argument with respect to the federal theories, it fails for state-law theories as well.

A profusion of motions and cross-motions for sanctions--and the conduct underlying some of these motions--demonstrates the extent to which counsel have allowed personal distaste to displace dispassionate legal analysis. Most depositions are taken without judicial supervision. Witnesses often want to avoid giving answers, and questioning may probe sensitive or emotionally fraught subjects, so unless counsel maintain professional detachment decorum can break down. That happened here; the results [*9] were ugly.

Gerstein's deposition was taken by Charles L. Danner on behalf of both Redwoods, though Jude Redwood attended and sometimes acted as counsel in addition to her role as a plaintiff. Gerstein's counsel was Roger Webber, though Gerstein himself peppered the transcript with legal arguments. The deposition began badly when Danner spent the first 30 pages or so of the transcript exploring Gerstein's criminal record--mostly vehicular violations. Danner made no effort to explain how these questions could lead to admissible evidence, and they got under Gerstein's skin. After Gerstein spontaneously refused to answer some of the questions (remarking "That's none of your business"), Webber began instructing Gerstein not to answer.

Webber gave no reason beyond his declaration that the questions were designed to harass

rather than obtain information--which may well have been their point, but HN&~Fed__R. Civ. P. 30(d) specifies how harassment is to be handled. Counsel for the witness may halt the deposition and apply for a protective order, see Rule 30(d)C4), but must not instruct the witness to remain silent. "Any objection during a deposition must [*10] be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 3A1( j.)(4)." Fed. R. Civ. P. 30Qd)(j~. Webber violated this rule repeatedly by telling Gerstein not to answer yet never presenting a motion for a protective order. The provocation was clear, but so was Webber's violation.

Danner then turned to Gerstein's troubles with the state bar, another topic whose relevance (or ability to lead to relevant evidence) has never been explained. Gerstein was censured for misconduct in 1991 and suspended for a month in 2002. Although the reasons are matters of public record, Danner demanded that Gerstein confess them in the deposition; Gerstein professed inability to remember, and when Danner inquired whether Gerstein had been ordered to obtain psychiatric counseling or anger-management therapy, Webber again told him not to answer. Richard Klaus, representing Dobson, opined that Danner had committed a misdemeanor under Illinois law by asking questions about Gerstein's [*11] mental health. What happened next must be set out in full to be believed:

> Q [by Danner]. Mr. Gerstein, have you ever engaged in homosexual conduct?
>
> MR. WEBBER: Objection, relevance.
>
> MR. KLAUS: I join.
>
> MR. WEBBER: I believe it violates Rule 30, and I'm instructing him not to answer the question.
>
> A. I'm not answering the question.
>
> MR. KLAUS: I join the objection.
>
> Q. Mr. Gerstein, are you involved in any type of homosexual clique with any other defendants in this action?
>
> MR. WEBBER: Same objection. Same instruction.
>
> MR. KLAUS: I join the objection.

Gerstein would have been entitled to stalk out of the room. Webber justifiably could have called off the deposition and applied for a protective order (plus sanctions). Fed. R. Civ. P. 26 (c), 30(d)(3), (.4 ). Instead he told Gerstein not to answer, which was untenable as no claim of privilege had been advanced.

After a brief recess, Gerstein acquired "amnesia" and started playing word games.

> Q. During the last recess that we had that we just reconvened from, did you
>
> consult with your attorney concerning [*12] this deposition?

Instead of asserting the attorney-client privilege, a genuine reason not to answer (though perhaps consultation would have violated an order that the deposition be conducted without such conferences), Gerstein played dumb.

> A. I don't understand the question.
>
> Q. We just had a recess.

A. I understand that.

Q. Do you understand that? During that recess period, did you take that time to consult with your attorney regarding this deposition?

A. I don't know what you mean by the word consult.

Q. Did you speak with your attorney regarding this deposition?

A. I don't think so. I don't know.

Q. Do you know how--did you write anything to your attorney during that recess?
A. Write anything? Q. Correct.

https://www.lexis.comlresearchJretrieve? m= 1 bc7b058a9c65275a59822a4da3a 181 2&csvc=... 2/9/2007
(jet a Document - by Docket Number - 05-4324

Page 7 of 9

A. No.

Q. Did you speak with your attorney during that recess?

A. I had words with my attorney. We exchanged a conversation.

Q. Were those conversations--or strike that. Did any of the comments in that conversation or those conversations refer to any aspect of this deposition?

A. I can't recall.

The deposition fills a further 98 pages of transcript, unedifying to the end. At one point Danner asked [*13] whether the secretary who had typed the letter in which Gerstein offered to ask Dobson to dismiss the criminal prosecution was married; Webber instructed Gerstein not to answer. Danner asked whether the secretary had children; before Webber could leap in, Gerstein replied that she did. What this--indeed, what most of Dan ner's questions--had to do with the legal proceeding against Gerstein is unfathomable. Plaintiffs say that Gerstein once gave Danner "the finger," and though the transcript does not reflect that gesture the proceedings were heated enough that this could well have happened. (Gerstein does not deny this accusation; a video tape of the deposition was made, but we have not consulted it.)

Danner's conduct of this deposition was shameful--not as bad as the insult-riddled performance by Joe ]amail that incensed the Supreme Court of Delaware, see Paramount Communications Inc. v. QVC Network Inc., 637 A.2d 34, 52-57 (Del. 1994), but far below the standards to which lawyers must adhere. Gerstein, Webber, and Klaus were goaded, but their responses--feigned inability to remember, purported ignorance of ordinary words (the "consult" episode was not the only one), [*14] and instructions not to respond that neither shielded a privilege nor supplied time to apply for a protective order--were unprofessional and violated the Federal Rules of Civil Procedure as well as the ethical rules that govern legal practice.

At one point, after Jude Redwood said that, because this was a deposition rather than a trial, Danner was entitled to fish for evidence whether or not the answers would be admissible, Klaus replied: "[T]his is not a discovery deposition. There's no such distinction or dichotomy under the federal rules. Everything that is asked here must meet the standard of the federal rules of evidence," Klaus either did not know, or did not care, that discovery may be used to elicit information that will lead to relevant evidence; each question and answer need not be one that could be one that would itself be proper at trial. But Danner's questions had ventured so far beyond the pale that overstatement on the other side was inevitable.

When the Redwoods sought sanctions in the district court, the judge declared that everyone had behaved badly and that, because Danner was the greater offender, no sanctions would be appropriate. The district judge remarked [*15] that it was "ludicrous" for the Redwoods to argue that lawyers may not instruct witnesses not to answer. Given Rule 30(d}(1j, however, the Redwoods had (and have) a meritorious position on this issue.

Mutual enmity does not excuse the breakdown of decorum that occurred at Gerstein's deposition. Instead of declaring a pox on both houses, the district court should have used its authority to maintain standards of civility and professionalism. It is precisely when animosity runs high that playing by the rules is vital. Rules of legal procedure are designed to defuse, or at least channel into set forms, the heated feelings that accompany much litigation. Because depositions take place in law offices rather than courtrooms, adherence to

https://www.lexis.comlresearch]retrieve? m= 1 bc7b058a9c65275a59822a4da3a 181 2&csvc=... 2/9/2007
~et a uocumeni - oy L'ocKet IN umoer -            rage o ui ~:;'

professional standards is vital, for the judge has no direct means of control.

HN7~Sanctions are in order, but they need not be monetary. See Fed. R. Civ. P. 3oCd)(3}, 37 (a)(4), (b)(2). Because the arguments pro and con have been fully ventilated in this court, and none of the attorneys has asked for a hearing under Fed. R. App. P. 46(c), we [*16] see no need to drag out this controversy with a remand. Attorneys Danner, Gerstein, and

Webber are censured for conduct unbecoming a member of the bar; attorney Klaus is admonished. (We differentiate in this way because a censure is the more opprobrious label, see In re C'/2arges of Judicial Misconduct, 404 F.3d 688~. 69~5-96~}..~d. Cir. 20053, and Klaus's misconduct is substantially less serious than that of the other lawyers.) Any repetition of this performance, in any court within this circuit, will lead to sterner sanctions, including suspension or disbarment.

We are not done with motions and cross-motions for sanctions and other relief. Gerstein has asked us to penalize the Redwoods under Fed. R.App. P. 38 for taking a frivolous appeal. As we have explained, the Redwoods' principal arguments on the merits were frivolous, but their appeal with respect to discovery sanctions has been successful. Although we have the discretion to award Rule 38 sanctions issue-by-issue as well as appeal-by-appeal, we elect not to do so because fault is widely distributed. It should be plain to the Redwoods from what we have said, however, that any [*17] effort to resume this spite contest under another legal theory would not be in their financial interest (and would jeopardize Jude Red-wood's future ability to practice law in federal court).

In addition to asking for sanctions in response to the Redwoods' appeal, Gerstein filed a cross-appeal to contest the district court's order denying his motion in that forum for attorneys' fees under 42...U..$..Q. § 1988. HN87Such awards in a defendant's favor are proper only if the suit is frivolous or vexatious. See Christiansburg Garment Co.v. EEOc, 434 U.S. 412_98_S. Ct. 694 54 L. ~ ci64~(1978}. The Redwoods responded with a Rul838 motion of their own, asking us to award attorneys' fees in their favor on the theory that Gerstein's cross-appeal is frivolous. In a small concession, Gerstein has not asked for fees under Rule 38 on the theory that the Redwoods' Rule 38 motion is frivolous; perhaps he fears infinite regress.

HN9~Any defendant who seeks fees under § 1988 for the cost of defense in the district court has a tough row to hoe, for two reasons--the legal rule that § 1988 creates is asymmetric in plaintiffs' favor, see Hughes v. Rowe, .449 U.S. 5, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980), [*18] and appellate review of the district court's decision is deferential. See Webb v._County Bd. of Educ., 471 U.S. 234k 105 S. Ct. 1923.,. 85 i.... Ed. 2d 233 (1985). The district judge did not abuse his discretion. As we've mentioned, the state-law claims presented under the supplemental jurisdiction were not as fatuous as those arising under federal law. Although we would have been inclined to award sanctions were the decision ours to make, it is not; discretion includes the freedom to take decisions other than the appellate tribunal's first preference.

Finally, we have multiple motions to strike portions of the opposing side's briefs. The Redwoods asked this court to strike parts, if not all, of the statement of facts in Dobson's brief; Gerstein asked us to strike parts, if not all, of the statement of facts in the Redwoods'

brief. Each motion--which was deferred by a motions panel to the hearing on the merits--asserts that statements in the other side's brief misrepresent the record. And each motion was met, first, with a defense of the brief's accuracy and, second, with a motion under Rule 38 for sanctions for filing a frivolous motion to strike.

Each of the motions to strike was indeed [*19] frivolous, for the reasons given in Custom Vehicles,.. Inc. v. Forest River, Inc.,.. 464 F.3d 725 (.2006) (Easterbrook, J., in chambers).HN1O ~ The Federal Rules of Appellate Procedure provide a means to contest the accuracy of the

other side's statement of facts: that means is a brief (or reply brief, if the contested statement appears in the appellee's brief), not a motion to strike. Motions to strike sentences or sections out of briefs waste everyone's time. They go to a motions panel, which does not know (and cannot efficiently learn) which statements are accurate depictions of the record and, if erroneous, whether the error is legally material. If the motions panel defers decision to the hearing on the merits, as was done here, then the motion does nothing except increase the amount of reading the merits panel must do, effectively giving each side argument on top of the word limit set by Fed~ R.App. P. 32. Motions to strike words, sentences, or sections out of briefs serve no purpose except to aggravate the opponent--and

though that may have been the goal here, this goal is not one the judicial system will help any litigant achieve. (*20] Motions to strike disserve the interest of judicial economy. The aggravation comes at an unacceptable cost in judicial time.

These motions were filed before the opinion in Custom Vehicles issued, however, and therefore are not appropriate grounds of monetary sanctions. (It is too late to count the motion toward the allowable length of the brief, the sanction adopted in Custom Vehicles.) Future motions of this kind will not be so charitably received.

The judgment is affirmed. Attorneys Charles L. Danner, Marvin Ira Gerstein, and Roger B. Webber are censured for conduct unbecoming a member of the bar, and attorney Richard Klaus is admonished for conduct unbecoming a member of the bar.

Source:    L<eg~ > I... I> 7th Circuit - US Court of Appeals Cases ij
Terms: number(05-4324) (Edit Sech Suggest Terms for_My Search)
 View: Full
Date/Time:   Friday, February 9, 2007 - 3:16 PM EST

Au LexisNexis Terms & Conditions

LexisNexis>    Copyright© 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

https://www.lexis.comlresearchiretrieve? m= 1bc7b058a9c65275a59822a4da3a 181 2&csvc=... 2/9/2007