UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| MARTEL MILLER, PATRICK THOMPSON, and the VEYA, | ) | |
| FOUNDATION, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 05-2142 |
| | ) | JURY DEMAND |
| CITY OF CHAMPAIGN, R.T. FINNEY, JOHN MURPHY, | ) | |
| TROY DANIELS, JOHN SWENSON, DAVID GRIFFET, | ) | |
| JUSTUS CLINTON, MICHAEL PYBURN, All in Their | ) | |
| Individual Capacities, ELIZABETH DOBSON, In Her | ) | |
| Individual Capacity, | ) | |
| Defendants. | ) | |

**RESPONSE TO MOTION TO DISMISS (ELIZABETH DOBSON)**

NOW COMES, the Plaintiffs MARTEL MILLER, PATRICK THOMPSON, AND VEYA

INC., by and through their attorneys, ROBERT G. KIRCHNER LAW OFFICE, and in accordance

with Rule 7.1 of this Court files herewith their response to the *12(b)(6) Motion to Dismiss* filed on

behalf of Elizabeth Dobson (#103), and states as follows:

**I. Standard of Review**

In ruling upon Defendant's *12(b)(6) Motion to Dismiss* this Court must accept the allegations

of Plaintiff's Complaint as true and draw all reasonable inferences therefrom in a light most

favorable to the Plaintiff. (*Triad Associates, Inc. V. Robinson,* 10 F. 3rd 492, 495 (7th Cir.).  If it does

not appear beyond doubt that the Plaintiff cannot establish any set of facts which would entitle him

to relief the Court must deny Defendant's *Motion to Dismiss.* (*Hishon v. King and Spaulding,* 467

U.S. 69 (1984)*; Conley v. Gibson,* 355 U.S. 41 (1957).  Additionally, because a Plaintiff need not

plead all of the essential facts in his Complaint, the Court must also consider factual allegations

which are consistent with the Complaint that are provided by Affidavit, attached Exhibits, or

subsequent Briefs. (*Hrubec v. National Ry. Passenger Corp.,* 981 F. 2d 962, 963 (7th Cir. 1992)*; Doe v. First National Bank of Chicago,* 865 F. 2d 864, 873 (7th Cir. 1989).

## II. Statement of Points and Authorities

1. No violation of the eavesdropping act occurred. (*In Marriage of Almquist*, 299 Ill. App. 3d 732, 704 N.E. 2d 68 (3rd Dist. 1998); *People v. Ceja* 204 Ill.2d 332, 789 N.E. 1228 (IL 2003); *People v. Ledesma* 327 Ill.App.3d 805, 812, 763 N.E.2d 806 (4th Dist. 2002); *A. Cassidy v. American Broadcasting Companies Inc*. 60 Ill.App.4th 831, 377 N.E.2d 126 (1st Dist. 1978))

2. The burden of proving an entitlement to absolute immunity resides with the prosecutor (*Burns v. Reed* 500 U.S. 478, 486-487 (1991))

3. Dobson is not entitled to absolute  immunity for her delegation of the duty to prosecute, as that was not part of her roles as a "state's advocate"  (*Spurlock v. Thompson* 330 F.3d 791 (6th Cir. 2004; *Buckley v. Fitzsimmons* 509 U.S. 259, 113 S.Ct. 2606, 2616 (1993); *Spiegel v. Rabinovitz* 121 F.3d 251, 256-257 (7th Circuit)

4. Dobson is not entitled to absolute immunity for her retaliatory and malicious prosecution in violation of Plaintiffs' First Amendment Rights.  *Burns v. Reed*, 500 U.S. 478, 482, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)

5. For providing legal advice to the police, Dobson is not protected by absolute immunity. *Kijonka v. Seitzinger* 363 F.3d 645 (7th Cir. 2004)

6. A retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of regularity behind the charging decision. *Hartman v. Moore*, 126 S.Ct. 1695, 1706 (2006)

7.  "Official reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right." *Hartman v. Moore*, 126 S.Ct. 1695, 1706 (2006)

8.  "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions for speaking out ." *Hartman v. Moore*, 126 S. Ct. 1695, 1701 (U.S. 2006), citing *Crawford-El Britton*, 523 U.S. 574, 588, n.10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

9. The seizure of the camcorder and tape is an unlawful prior restraint. (*Channel 10 Inc. V. Gunnarson*, 337 F. Supp. 634 (Dist. Minn. 1972))

### III. Procedural History

In response to *Plaintiffs' Third Amended Complaint* (hereinafter Complaint) (#97), Dobson has filed a Motion to Dismiss (#103) and Memorandum of Law (#104), alleging that she has absolute immunity as to Counts I, III, and IV of Plaintiffs' Complaint, and alleging that she is protected by qualified immunity as to Counts II and V.  As to Counts II and V, Dobson asserts that "the allegation that Defendant Dobson directed the police officer to seize the videotape and camcorder fails to state a Section 1983 violation against Defendant Dobson." (¶ 7)

### IV. Argument

**A.    Dobson is not entitled to absolute immunity for any of the issues complained of in Plaintiffs' Complaint**

A prosecutor may be either entitled to absolute immunity or qualified immunity, depending on the function he or she is undertaking.  Plaintiffs do not dispute that Dobson is entitled to absolute immunity with respect to her role as a state's advocate. *Auriemma v. Montgomery*, 860 F.2d 273, 277 (7th Cir. 1988). *Yarris v. County of Delaware*, 465 F.3d 129, 138 (3rd Cir. 2006).  However, Plaintffs' Complaint alleges actions undertaken by Dobson not in her role as a "state's advocate"

3

but instead in her role as an administrator or investigator, for which she is not entitled to absolute immunity. "*Buckley* holds that a prosecutor lacks absolute immunity for violating the plaintiff's rights while conducting investigative work even if that work produces evidence that the prosecutor could with absolute immunity present to a grand jury. *Pena v. Mattox*, 84 F.3d 894, 897 (7th Cir. 1996), citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 271-78, 113 S.t. 2606, 2615-18, 125 L.ED.2d 209 (1993). "Absolute immunity does not extend to actions 'that are primarily investigative or administrative in nature but, instead, attaches only to actions which a prosecutor must perform while fulfilling his duty as an officer of the court. *Perez v. Ellington*, 421 F.3d 1128, 1133 (10th Cir. 2005), citing *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991). "[A] prosecutor has only the protection of qualified immunity when functioning in the role of an administrator or investigative officer rather than an advocate." *Mendenhall v. Goldsmith*, 59 F.3d 685, 689 (7th Cir. 1995), citing *Buckley*.

Dobson appears to concede that she is not entitled to qualified immunity for her legal advice to police regarding the seizure of Plaintiffs' camcorder and video. (Dobson Motion to Dismiss, ¶6)

Before addressing specifically the scope of the law pertaining to the eavesdropping statute and the First Amendment activities of the Plaintiffs, it is helpful to briefly review the parameters of the absolute immunity afforded to prosecutorial functions as the conduct and activities of Defendant Dobson do not fall within those protected parameters. In *Kijonka v. Seitzinger* 363 F.3d 645 (7th Cir. 2004) the Court noted that the absolute immunity of a prosecutor does not extend to giving legal advice to the police when they are investigating whether a crime has occurred.

Thus, it is clear that the dividing line between absolute and qualified immunity is specific to the functions being served by the prosecutor claiming that immunity and that the burden of proof

rests upon him or her in demonstrating an entitlement to absolute immunity. That burden has not been met.

**B.      Defendant Dobson is not entitled to absolute immunity for the delegation of her duty to prosecute (Count I)**

Despite the fact that no formal discovery has yet taken place in this case, Dobson's affidavit (#92) filed in the criminal case against Plaintiff Martel Miller (Champaign Co. Case No 04-CF-1482) alleging violations of the Illinois Eavesdropping statutes states that on August 9, 2004, Dobson went to the Champaign Police Department at the invitation of command staff to review the video/audio tape and to discuss the possibility of criminal charges being filed in the case (#92, ¶5); that Dobson met with two members of the Champaign Police Department staff about the case, but did not review Plaintiffs' video/audio tape (#92, ¶ 5); that a meeting took place between Dobson and other members of the Champaign police department command staff (#92, ¶8); that conversation was ongoing between Dobson and command officers at the Champaign Police Department as to whether charges would/could be filed (#92,¶ 9); that the conversations referenced by Dobson with Champaign Police Department command staff took place while command officers and the Chief of Police were present (#92, ¶10); that the Chief of Police "had authorized charges" against Plaintiff Miller (#92, ¶ 11); that before Dobson left her meeting with the Chief of Police and other command staff from Champaign, she received police reports from the Champaign Police Department to consider for charging (#92, ¶ 13); and that Dobson contacted University of Illinois police department and METCAD to get further information regarding the Plaintiffs' video recordings (#92, ¶ 13). Dobson's own statements, verified by her in that affidavit, demonstrate that she delegated her prosecutorial duty to the Champaign police department command staff and filed the charges, at least against Plaintiff Miller, after Champaign police department command staff "authorized" her to do

so.

Dobson is not protected by absolute immunity for her delegation of her prosecutorial discretion and therefore Count I should not be dismissed. (Motion to Dismiss, ¶5)

While Plaintiffs concede that a mere review of evidence and the process of deciding to pursue charges has been held to be a quasi-judicial act affording absolute immunity (*Spiegel v. Rabinovitz* 121 F.3d 251, 257 (7th Cir.), the conduct of Elizabeth Dobson as reflected in the affidavits filed with Plaintiffs' Complaint, along with the *Affidavit in Support of Motion to Dismiss* filed by Dobson in Champaign County Case No. 04-CF-1482 (*People v. E. Martel Miller*) and previously filed as #92 in this case, clearly constituted an abdication of that prosecutorial function and decision making to the "command staff" at the Champaign Police Department. Moremover, it appears that Defendant Dobson undertook an effort to involve another police agency in order to obtain the Champaign Police Department's authorization to prosecute and to use that authorization in convincing State's Attorney John Piland to file charges. (#92, ¶14)

It should be noted that the burden of proving an entitlement to absolute immunity resides with the prosecutor (*Burns v. Reed* 500 U.S. 478, 486-487 (1991)). Thus, where the prosecutorial function as an advocate has not yet begun- *i.e* prior to an indictment- absolute immunity has been held to be not applicable. (*Spurlock v. Thompson* 330 F.3d 791 (6th Cir. 2004) Additionally, controlling the prosecutorial function includes deciding whether to prosecute and the delegation of that function may in fact violate due process. (*Erickson v. Pawnee County Board of County Commissioners* 263 F.3d 1151, 1154 2001 DJCAR 4331 (10th Cir. 2001)*; Person v. Miller* 854 F.2d 656, 664 (4th Cir. 1998); *East v. Scott* 55 F.3d 996, 1000 (5th Cir.1995)). Yet this is precisely what Defendant Dobson did.

The development of witness testimony prior to the commencement of a prosecution has also been held to be beyond the role of acting as an advocate for the state. (*Spurlock v. Thompson* 330 F.3d 791 (6th Cir. 2004) Yet Defendant Dobson orchestrated and secured reports from the University of Illinois police department to be able to commence to Champaign Police Department to "authorize" prosecution.

Dobson's delegation of her duty to prosecute is not protected by absolute immunity, and she has not met her burden to prove her entitlement to absolute immunity. Defendant Dobson's Motion to Dismiss Count I for her delegation of her duty to prosecute, which may have violated Plaintiffs' due process rights (*Erickson v. Pawnee County Board of County Commissioners*, 263 F.3d 1151, 1154 2001 DJCAR 4331 (10th Cir. 2001), should be denied because Dobson has not proved that there are no set of facts for which Plaintiffs would be entitled to recovery

**C.    Defendant Dobson is not entitled to absolute immunity for her role in the retaliatory and malicious prosecution of Plaintiffs in violation of their First Amendment rights (Counts III and IV)**

Counts III and IV of Plaintiffs' Complaint allege that Dobson and the other Defendants retaliated against Plaintiffs Miller and Thompson for protected speech involving their work to document police and citizen interactions and disseminate that information through public access television by effectuating the filing of criminal charges against Plaintiffs Miller and Thompson for violating the Illinois Eavesdropping statutes. The complaint further alleges that Dobson's role in orchestrating the prosecution of Plaintiffs by acting as the "middle man" between the police and the State's Attorney John Piland occurred despite the absence of probable cause to initiate nor continue the prosecution.

Specifically with regard to the retaliatory action taken against Plaintiffs for Plaintiffs' video

taping of police and citizen interactions, on June 29, 2004, at approximately 2 am, Plaintiff Thompson was taping the crowd forming at Mac's. (#97-3, P. 5) While taping he also saw and videotaped Defendant Dobson, who was videotaping the same scene of events that Thompson was taping. (#97-3, P. 5) Thompson does not know if she was recording any voices because he has not seen the videotape she made. (#97-3, P. 5) Despite Thompson's presence with his camcorder, none of the officers, including Officer Griffet, nor Assistant State's Attorney Dobson, asked him to stop taping them or the scene. (#97-3, P. 5) On September 2, 2004, Patrick Thompson was charged by the Champaign County State's Attorney's office with Eavesdropping (#96-3, p. 6). Thompson believes that the charges were filed against him in retaliation for his filming Dobson on June 29, 2004, when she was filming the same crowd that he was filming and for exposing Dobson's 'ride alongs' with Griffet. (#97-3, P. 6) According to news articles, Dobson stopped doing 'ride alongs' after Miller and Thompson were charged with eavesdropping .

On August 7, 2004, Martel Miller was driving on Bradley Avenue when he observed two police cars and officers talking with a bicyclist, who he later found out to be James Wood. (#97-2 P. 3-4) Miller was approximately 60 feet away from the traffic stop while he was taping the officers' interactions. (#97-2, P. 3-4) Cars continued to travel east and west across Bradley Ave between where he was taping and the officers were talking with Wood. No voices of the officers or Wood were audible during the traffic stop. (#97-2, P. 3-4)

After the stop ended, Miller motioned for Wood to come over, which Wood did. (#97-2, P. 4) Miller requested and got consent from Wood to tape an interview with Wood. (#97-2, P. 4) About 2-3 minutes into the interview of Wood, Officer Clinton drove over to the north side of the street and from his car, yelled at Miller, "Are you taping my voice right now?"(#97-2, P. 4) As Miller

8

continued the focus of his camera and the interview on Wood, Miller responded that Clinton was placing his voice on the tape. (#97-2, P. 4) Clinton said to Miller: "You're taping my voice without my permission." (#97-2 p. 4) An additional officer came at a high rate of speed in his vehicle and got out of his squad car. (#97-2, P. 4)

This officer, who Miller later learned to be Officer Cleeve, told Miller to stop filming, so Miller handed the camera to Wood and told Wood to start filming him. (#97-2, P. 4) Miller heard officer Cleeve tell Wood that if he didn't stop taping, he'd be arrested. (#97-2, P. 4)  Miller told Wood to give the camera back to him, which Wood did. (#97-2, P. 4) Miller told Clinton and Cleeve that he and Patrick Thompson had been filming for two months and there had been no problem. (#97-2, P. 4)

Officer Cleeve told Miller that he was told recently that if any of the officers saw him or Patrick filming, to question us. (#97-2, P. 4) Miller asked the officers to call a sergeant to the scene. (#97-2, P. 4) Officer Griffet arrived about ten minutes later. (#97-2, P. 4) Miller heard Officer Clinton complain to Griffet that his voice was on the tape without his permission. (#97-2, P. 4) Miller explained to Griffet that Clinton's voice was only on the tape during his interview of Wood. (#97-2, P. 4) At all times that Clinton's voice was on the tape, the camera was pointed at Wood (for Wood's interview) (#97-2, P. 4) Miller believes that Clinton intentionally put his voice on the tape by yelling at Miller while he was interviewing Mr. Wood to justify an arrest, confiscation, and indictment of Miller. (#97-2 P. 4)

Miller offered to show Griffet the traffic stop and Griffet viewed it. (#97-2, P. 4)  There was no audible voice of any officer or Wood during the traffic stop on the tape that Griffet viewed. (#97-2, P. 4)  The only voice other than Miller's and Wood's on the tape that Griffet viewed was the part

where Clinton yelled at Miller while he was interviewing Wood.  (#97-2 P. 4)  There was no voice of Wood or an officer audible when Griffet viewed the tape with Miller that night. (#97-2, P. 4) After viewing that portion of the tape, Griffet went back to the car and talked with Dobson for about one minute. (#97-2, P. 4) Griffet returned and reported that Dobson told him that he could take the camera and tape. (#97-2, P. 4)

Officer Griffet informed them that Assistant State's Attorney Dobson, who he said was in the police car several feet away from where we were standing, had informed him that he had the right to seize both the camera and the videotape inside the camera, which he then instructed other officers to do. (#97-2, P. 4)

Miller believes that Griffet and other officers were aware of the videotaping and consented to that also because of Griffet's grand jury testimony in which Griffet states that he and other officers have been aware that there were citizen watch groups watching police actions and police interaction with citizens, and that no one had expressed any concern about that taping until the night of August 7, 2004. (#97-2, P. 4).

The criminal eavesdropping charges against both Plaintiffs were initiated without probable cause and the criminal eavesdropping charges against both plaintiffs were eventually dropped. Dobson has provided no documentation nor affidavits to show that the action of filing criminal charges would have been taken anyway, independent of her and the Champaign Police Department command staff's retaliatory animus toward Thompson and Miller for documenting police-citizen interactions for later viewing on the public access television station.

Counts III and IV (Retaliatory Prosecution and Malicious Prosecution) should not be dismissed.

Dobson is not entitled to absolute immunity for her role in the retaliatory and malicious prosecution of Plaintiffs.  Dobson acted not as an advocate for the state but more like a police officer, gathering evidence, obtaining the victims' consent to prosecute and then presenting that "evidence" to State's Attorney Piland who authorized the filing of charges.  Dobson's conduct is not protected by absolute immunity.   *Burns v. Reed*, 500 U.S. 478, 492-495, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

Nor can Defendant Dobson rely on qualified immunity for the retaliatory and malicious prosecution of the Plaintiffs for exercise of their protected speech.  It was clearly established before 2004 that retaliation against individuals for the exercise of their constitutionally protected First Amendment Rights to free speech, was prohibited. *Crawford-El Britton,* 523 U.S. 574, 588, n.10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) Furthermore, as discussed herein, it was clear at the time Plaintiffs were charged with violating the Illinois Eavesdropping statutes that their actions did not constitute a violation of the Illinois Eavesdropping statutes, and therefore, no probable cause existed for the filing nor prosecution of criminal charges against Plaintiffs.

With respect to the substantive aspects of the claims brought against Defendant Dobson she acknowledges the distinction between the advocacy role for which she is entitled to absolute immunity and the administrative or investigative role which includes giving legal advice to the police and which has been deemed to be administrative and thus subject to only qualified immunity. (Memorandum of Law, Defendant Dobson at pg. 2) Defendant Dobson argues that in assessing her claim of qualified immunity the Court must consider whether the Plaintiff has asserted a violation of a Federal Constitutional Right and whether the standards implicated were clearly established at the time in question. (Memorandum of Law, Defendant Dobson at pg. 3)

11

*In Marriage of Almquist*, 299 Ill. App. 3d 732, 704 N.E. 2d 68 (3rd Dist. 1998) the Appellate

Court, while noting that the expectation of privacy was no longer the determinative factor, also noted

that it was not the intent of the legislature to provide a definition of "conversation" so broad as to

encompass any audible expression whatsoever and that the statute is directed to only "recording of

conversation" (*Almquist* at 737).

The citation by Defendant Dobson to *Anderson v. Simon*, 217 F. 3d 472 (7th Cir. 2000)

directs the readers attention to page 476. (Defendant Dobson's Memorandum of Law at pg. 5)

*Anderson* does discuss the absence of evidence in that case to demonstrate that the police were under

any duty to follow the State's Attorneys orders or suggestions at issue therein. The Court does not

discuss the requirements of causation relevant to a §1983 analysis which provides that any person

who has "caused" the constitutional deprivation may be held responsible.

It is of significance that Defendant Dobson's motion before the Court is brought pursuant

to 12(b)(6) and that it has been filed without supporting documentation, including affidavits. The

parameters of Defendant Dobson's involvement as recited above, went well beyond simply giving

legal advice to law enforcement (an administrative function); well beyond an independent

assessment of whether the eavesdropping statute had been violated; and whether Plaintiff's should

be charged as a result of that.

In *People v. Ceja* 204 Ill.2d 332, 789 N.E. 1228 (Illinois 2003), the Illinois Supreme

Court addressed the post-amended version of the Illinois Eavesdropping Statue and held that no

violation of that statute occurs when the individuals are aware that their statements are being

monitored. The Court characterized this as acquiescence in an implied consent to monitoring

when the communications continue despite the knowledge that they were being monitored. (*Ceja*

12

at 349) Specifically, the Court noted that the controlling principals have been widely recognized and that the element of consent may be satisfied either expressly or by implication. Consent exists when a persons behavior manifests acquiescence.  Implied consent, the Court stated, is consent in fact which is inferred from the surrounding circumstances indicating that the party knowingly agreed to the surveillance. Although the circumstances relevant to an implication of consent will vary from case to case, language or acts that tend to prove a party knows of or assents to encroachments of the routine expectations, conversations of private are sufficient. The Court specifically noted the visibility of the speakers as a factor in determining consent. (*Ceja* at 349-350) As demonstrated by the facts presented herein. The Plaintiffs notified the City of Champaign Police Department of their intent to produce a documentary depicting the activities of the Champaign Police Department and it's officers and, in particular, their involvement in traffic stops. (See also #97-2, ¶ 4 p. 1-2 , ¶ 10 P. 2, ¶ 19 P. 2-3 ; #97- 3, p. 2).  That letter was received and acknowledged by the command staff and City officials and it is clear from the factual information provided herewith, that specific officers, including Officer Griffett, had full knowledge and awareness of the monitoring of their activities in conjunction with the production of this documentary. Additionally, Griffet, in the documentary tape, speaks with Miller while he is filming and Officer Griffet telling Miller he had no problem with the taping that was taking place.  (#97-2,  ¶¶ 18, 19, P. 2) Thus, at the very least, a factual issue is presented which should entitle the Plaintiffs to pursue discovery to demonstrate the scope and knowledge of Defendant Dobson with respect to the consent at issue on the stops during which she was involved. It is also significant to note that Sargent Griffet has advised this Court that at the time of the occurrence involving him, he was a part-time employee in the State's Attorney's Office for which Ms.

13

Dobson was an assistant. (See Affidavit of Sgt. David Griffet attached to his Motion for Summary Judgment, filed May 23, 2006.)

These same principles were applied by the Appellate Court in *People v. Soto* 342 Ill.App.3d 105, 796 N.E. 690 (2nd Dist. 2003).

Thus, as early as 2003 the law had been established by the Illinois Supreme Court and an Appellate Court that the type of consent required to avoid liability under the Eavesdropping Statute existed under circumstances akin to that presented herein. Moreover, accidental overhears of recordings of a conversation clearly do not violate the Eavesdropping Act. (*People v. Ledesma* 327 Ill.App.3d 805, 812, 763 N.E.2d 806 (4th Dist. 2002)) The post-amendment principles were entirely consistent with earlier precedent and clearly should have placed a seasoned prosecutor on notice. Moreover, comments by Defendant Dobson to the Grand Jury in which she advised that it was perfectly okay to videotape your kids but perfectly improper to videotape the police, call into question her entitlement to qualified immunity.(See EXH. E, P. 8)(See *People v. Calvert* 258 Ill.App.3d 504, 629 N.E.2d 1154 (5th Dist. 1994)

Although the Defendant distinguishes *People v. Beardsley* 115 Ill.2d 47, 503 N.E.2d 346 (Illinois 1986) by asserting the amendment of the statute after the issuance of the decision, a careful reading of that decision notes that its foundation and rationale stems from the United States Supreme Court decision in *Lopez v. United States* (1963) 373 U.S. 427 and that the harm sought to be remedied is the surreptitious interception of communications. (*Beardsley* at 58; See also *People v. Cole* 186 Ill.App.3d 102, 542 N.E.1145 (5th Dist. 1989); *A. Cassidy v. American Broadcasting Companies Inc.* 60 Ill.App.3d 831, 377 N.E.2d 126 (1st Dist. 1978))

Of particular note in *A.Cassidy* is that the audio recording was no more extensive than

14

what was able to be heard by those present. *(A. Cassidy* at 835) As reflected by the Affidavits filed herewith, at the time of the seizure of Plaintiffs' camcorder and tape and the interference with the individual Plaintiffs filming of the documentary (a First Amendment and protective activity), there was not simply an absence of probable cause – there was no cause for the officers involved or Defendant Dobson to have concluded that a crime had been committed. There is no audio portion of the August 7, 2004 traffic stop by Miller, only video. (#97-2, ¶ 32, p. 33-34). With regard to the taping by Thompson on June 29, 2004 at Mac's, the taping of the crowd scene was just that – taping a crowd scene. (#97-3, ¶ 44, P. 5) At all times, Thompson was clearly visible and was not trying to abscond himself. (#97-3, ¶44, P.5) What Dobson may not have been happy about was that she herself was 'caught' by Thompson videotaping the same crowd that he was taping. (#97-3, ¶44, P.5)

To prove malicious prosecution under section 1983, Plaintiffs must prove that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bring the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." (*Johnson v. Knorr*, 2007 WL 465704 at 5 (3rd Cir. Pa.))

Retaliatory prosecutions are subject to remedy under §1983. (*Duran v. City of Douglas, Arizona*, 904 F. 2d 1372, 1377-1380 (9th Cir. 1989); *Greene v. Barber*, 310 F. 3d 889, 895 (6th Cir. 2002); *Evans v. City of Chicago*, 2003 WL 22232963 (N.D. Ill 2003); see also *Lekas v. Bailey*, 405 F. 3d 602, 614 (7th Cir. 2005) and the principle has been so long and firmly established qualified immunity cannot be claimed. (*Duran v. City of Douglas, Arizona,* 904 F. 2d

1372 (9th Cir. 1989)

To demonstrate retaliation in violation of the First Amendment, Plaintiffs must prove that the action taken 'would chill or silence a person of ordinary firmness from future First Amendment activities.' *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006). "[U]pon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of." *Hartman v. Moore*, 126 S. Ct. 1695, 1704 (U.S. 2006).

It is clear from the factual allegations of the Complaint, along with the Plaintiffs' affidavits filed therewith, that Dobson and the other Defendants' role in the retaliation and malicious prosecution of Plaintiffs for the exercise of their constitutionally protected speech of documenting police and citizen interactions had 'chilling effect' on Plaintiffs' protected speech.

*Hartman v. Moore*, 126 S. Ct. 1695 (U.S. 2006) holds that the absence of probable cause must be plead and proved for retaliatory prosecution under Section 1983. This case is distinguishable from the present case. In *Hartman,* the claims against the prosecutor were dismissed because of the prosecutor's absolute immunity. However, the circumstances of this case in which Dobson delegated her duty to prosecute because Dobson took her authorization to prosecute first from the City of Champaign police department command staff (See #92, ¶ 11); and then communicated that "desire" of the Champaign Police Department command staff "to the Champaign County State's Attorney and, based on that reported position, received authorization from the Sate's Attorney to initiate criminal charges" (#92-¶14) make it distinguishable from *Hartman*. Because of Dobson's non-advocacy conduct in stepping into the roles typically provided by the police, she is not shielded by absolute immunity, as the

16

prosecutor in *Hartman* was. Dobson is also not protected by qualified immunity as the prohibition for retaliatory prosecution and malicious prosecution for Plaintiffs' exercise of their First Amendment right to free speech was clearly established well before 2004 (See, for example, *Crawford-El Britton,* 523 U.S. 574, 588, n.10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

The Court in *Shelton v. County of Butte*, 2007 WL 135667 (E.D.Cal) distinguished itself from *Hartman*'s requirement that the lack of probable cause be established as an element of a retaliation claim. *Shelton v. County of Butte*, 2007 WL 135667 (E.D.Cal) While Hartman involved "only criticism of certain business decisions advocated by the Postal Service with respect to the technology for sorting mail", allegations in *Shelton* included that the Sheriff's personnel, in addition to instigating the investigation itself, also solicited others against Shelton. *Shelton v. County of Butte*, 2007 WL 135667 at p. 2 (E.D.Cal) Dobson's conduct is analogous.

The Court in *Skoog v. County of Clackamas*, 469 F.3d 1221 (9th Cir. 2006) regarding first and fourth amendment violations brought under § 1983, held that Plaintiff need not plead the absence of probable cause in order to state a claim for retaliation in violation of the First Amendment. *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006). "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions for speaking out ." *Hartman v. Moore*, 126 S. Ct. 1695, 1701 (U.S. 2006), citing *Crawford-El Britton,* 523 U.S. 574, 588, n.10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). "[A] retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of the

regularity behind the charging decision." *Hartman v. Moore*, 126 S. Ct. 1695, 1706 (U.S. 2006) This again was the role assumed by Defendant Dobson. When an officer attempts to punish a person for the exercise of First Amendment rights by causing the filing of criminal charge against him there is a potential cause of action under both the Fourth and First Amendments (Incorporated as against the States through the 14th Amendment)(See *Hartman v. Moore*, 126 S. Ct. 169, 1701 (U.S. 2006), *Abrams v. Walker*, 307 F. 3d 650, 654 (7th Cir. 2002) (abrogated on other grounds by *Spiegla v. Hull*, 371 F. 3d 928 (7th Cir. 2004). While, whether the hurdles imposed in a retaliatory prosecution can be met is not a matter which should be determined at this stage of the pleadings, the affidavits, and exhibits before this Court clearly do more than meet the notice pleading requirements of federal law.

In *Connell v. Town of Hudson*, 733 F. 3d 465 (D. N. H. 1990) a news photographer brought an action against the Town of Hudson for violating his First Amendment Rights as an automobile accident scene when officers instructed him not to take pictures. No facts or circumstance which would outweigh the Plaintiff's right to continue filming in this case had been proffered to the court. Thus, no balancing is required of the rights and interests of the Plaintiffs versus the Police.

In *Iacobucci v. Boulter*, 193 F. 3d 14 (1st Cir. 1999) a journalist sued *inter alia* a police officer arising out of interference with the videotaping of a meeting of the Penbroke Historic District Commission. The criminal charges in that case, as here, were dismissed. In analyzing the qualified immunity assertion the Court examined the underlying alleged defense and that the Plaintiff was exercising his First Amendment Rights in an appropriate fashion. The Court rejected the claim of qualified immunity. Similarly, Plaintiffs were exercising their First

Amendment Rights in videotaping government (the police) interacting with the public.  Dobson, in her role in the prosecution of Plaintiffs should be denied qualified immunity.

In *Berglund v. City of Maplewood, Minnesota*, 173 F. 2d 935 (Dist. Minn. 2001) similar issues were presented in the filming for broadcast of Plaintiffs television public access show entitled  "Inside/Insight News Hour".  The Court specifically noted that during the confrontation the Plaintiff operated a video recorder and when he was arrested passed it to another who refused to voluntarily give up the video tape inside the video despite a demand that he do so.  That then resulted in police officers seizing and restraining the Plaintiff and confiscating the tape without a warrant on the alleged basis that it contained evidence of the commission of a crime.  The Court concluded that both the First and Fourth Amendments applied to the seizure at issue and that First Amendment materials are entitled to greater constitutional protection than material otherwise generally seized under the Fourth Amendment. (*Berglund v. City of Maplewood, Minnesota*, 173 F. Supp. 2d 935, 943 (Dist. Minn. 2001) On August 7, 2004, the seizure of Plaintiffs' videotape and camcorder, authorized by Dobson, should also be entilted to greater constitutional protection, as it was in *Berglund.*  The exigent circumstances exception acknowledged in Berglund has not been advanced by the Defendant herein nor is it factually supported.  While the ultimate decisions in *Berglund* is adverse to the Plaintiffs' position in this case, the analytical framework as applied to the eavesdropping statute as interpreted by the Illinois Supreme Court and the facts before this Court, which must be accepted as true, clearly support the maintenance of the Plaintiffs' claims and the denial of the Motion to Dismiss.

It certainly cannot be reasonably questioned that the Plaintiffs' conduct was entitled to First Amendment Protection. (*See e.g. Smith v. City of Cumming,* 212 F. 3d 1332 (11th Cir.

2000); *Thompson v. City of Clio*, 765 F. Supp. 1066 (M.D. Ala. Div. 1991). The *Thompson* decision is further relevant in light of the implication raised by Defendant Dobson's grand jury statements in which she deems acceptable the taping of ones kids but not police officers, if the seizure, alteration, and charging of the Plaintiffs' in this case were unrelated to the content (videotaping of police officers) then the Plaintiffs' would have been in no worse position than members of the public filming the 4th of July parade with audio content or videotaping children in a park during a soccer game or otherwise. But we know they are not prosecuted. It was the videotaping of police that is the issue. These distinctions are important by virtue of the fact that it is a Motion to Dismiss which we are addressing.

Recognition of First Amendment protection to the filming of police activities as a matter of public interest has also been acknowledged in *Porat v. Lincoln Towers Community Association*, 2005 WL 646093 (S.D.N.Y. 2005). The seizure and withholding of the camera and film and its subsequent alteration in order to interfere with filming and broadcast has been held to constitute an unlawful prior restraint. (*Channel 10 Inc. V. Gunnarson*, 337 F. Supp. 634 (Dist. Minn. 1972) (See also *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 541 (E. D. Penn. 2005) and citations therein. Thus, the Fourth/Fourteenth Amendment seizure issues of the Plaintiffs' videotape and camera and the First Amendment implications including those of prior restraint and retaliatory prosecution and malicious prosecution are directly placed before Defendant Dobson in this case and her claimed entitlement to absolute immunity has not been demonstrated, nor has any entitlement to qualified immunity been shown.

Thus, Defendant Dobson's Motion to Dismiss Counts III and IV should be denied as she has failed to demonstrate that there are no set of facts which would demonstrate that the

Plaintiffs would not be entitled to relief.

**D.    Defendant Dobson is not entitled to qualified immunity for her instruction and authorization to seize Plaintiffs' camcorder and video, which had a chilling effect on Plaintiffs' First Amendment rights**

Plaintiffs allege in Counts II and V of their Complaint and in their affidavits attached thereto, that Defendant Dobson instructed and authorized Defendant Griffet to seize Plaintiffs' camcorder and video on August 7, 2004. That camcorder was later returned, as was the video (though in an altered state). The seizure of Plaintiffs' camcorder and video on August 7, 2004, was undertaken without probable cause and further had a 'chilling' effect on the Plaintiffs' speech under the First Amendment.

Dobson argues that Counts II and V should be dismissed because Dobson is protected by qualified immunity for advising police to confiscate the camcorder and video. (Motion to Dismiss, ¶ 6) She further argues that directing the police officer to seize the videotape and camcorder fails to state a Section 1983 violation against Dobson (Motion to Dismiss ¶7).

However, it was apparently with her instruction and legal advice that Defendant Griffet seized Plaintiffs' camcorder and video.

As the Supreme Court has held, advising police in the investigative phase of a criminal case is not covered by absolute immunity. *Burns v. Reed*, 500 U.S. 478, 482, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Under the facts alleged in Plaintiffs' Complaint and affidavits, Dobson is not protected by qualified immunity in authorizing and instructing the seizure of Plaintiffs' camcorder and video because there no probable cause existed to believe that the camcorder or video contained evidence of a crime an d because she's part of the "causal chain" which resulted in constitutional injury to Plaintiffs.

21

The conduct of Defendant Dobson during a civilian ride along and her assumption of a role of giving advice to law enforcement officers "on the street" in the process of an investigation and determining whether probable cause existed, clearly fall outside the scope of absolute immunity. (Complaint ¶¶ 23, 24, 25, 26) The facts which are to be developed during the course of discovery are essential in determining whether qualified immunity is applicable.

Probable cause exists to seize a camera if there is a 'substantial basis' for believing that the item constitutes or contains evidence of the alleged crime. *Skoog v. County of Clackamas*, 469 F.3d 1221,1231 (9th Cir. 2006), citing *Illinois v. Gates* 462 U.S.213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

On August 7, 2004, Plaintiff Miller was videotaping a traffic stop from approximately 60 feet away and from which no conversation between the police and the individual stopped was audible. After the traffic stop ended, Miller got the attention of the individual who had been stopped, asked for and received his permission to interview him about the traffic stop, and proceeded to interview him when one of the Champaign police involved in the stop approached them and started yelling at Miller. Thereafter, Sergeant Griffet was called to the scene. He was accompanied by Defendant Dobson, who was conducting a 'ride along' with Griffet. Miller showed Griffet the video he had recorded that night, which included the video of the traffic stop and from which there was no audible conversation. The video also included Miller's interview of James Wood and Officer Clinton yelling at Miller while Miller was interviewing Wood. Despite the absence of any audible conversation between the police and the individual stopped for the traffic violation, Griffet seized Plaintiffs' camcorder and video at the instruction and authorization of Defendant Dobson.

Thus, the allegations as to Assistant State's Attorney Elizabeth Dobson arise out of her instructions and authorizations to Champaign Police officers during a ride along engaged in by her in her individual capacity.

Attached to Defendant Dobson's *Motion to Dismiss* is copy of parts of the Senate debates with respect to the Illinois Eavesdropping Statute and Senate Bill 1352. No affidavits or documentary evidence of a factual nature are presented in support of Defendant Dobson's 12(b)(6) motion. Filed with Plaintiffs' Complaint are the affidavits of Plaintiffs Martel Miller and Patrick Thompson. Those affidavits, together with the allegations of Plaintiffs *Complaint* are properly before this Court and may be considered by it in response to Defendant's *Motion to Dismiss*. (*Hrubec v. National Ry. Passenger Corp.*, 981 F. 2d 962, 963 (7th Cir. 1992); *Doe v. First Nation Bank of Chicago*, 865 F. 2d 864, 873 (7th Cir. 1989)) The affidavits of Plaintiffs Martel Miller (#97-2) and Patrick Thompson (#97-3) more fully illuminate the conduct of Defendant Dobson as described herein.

Thus, the Plaintiffs respectfully request that this Court deny Defendant Dobson's *Motion to Dismiss* and that an answer be ordered to be filed by her and that this matter proceed with discovery.

Respectfully submitted,

PATRICK THOMPSON, MARTEL
MILLER and VEYA, INC., Plaintiffs

**By: s/ Robert G. Kirchner**
Robert G. Kirchner Bar Number 6182070
Attorney for Plaintiffs
Robert G. Kirchner Law Office
100 Trade Centre Drive Suite 402
Champaign, IL 61820

23

Email: rgk-kirchnerlaw@sbcglobal.net

**By: s/ Ruth E. Wyman**
Ruth E. Wyman Bar Number: 6284294
One of the Attorneys for the Plaintiff
Robert G. Kirchner Law Office
100 Trade Centre Drive, Suite 402
Champaign, IL 61820
Phone: 217-355-5660
Facsimile: 217-355-5675
E-mail: rw-kirchnerlaw@sbcglobal.net

CERTIFICATION OF COMPLIANCE WITH C.D. IL RULE 7.1(B)(4)B)(1)

I hereby certify that this memorandum complies with the type volume limitation and that it contains 36,185 characters.

**By: s/ Robert G. Kirchner**
Robert G. Kirchner Bar Number 6182070
Attorney for Plaintiffs
Robert G. Kirchner Law Office
100 Trade Centre Drive Suite 402
Champaign, IL 61820
Email: rgk-kirchnerlaw@sbcglobal.net

**By: s/ Ruth E. Wyman**
Ruth E. Wyman Bar Number: 6284294
One of the Attorneys for the Plaintiffs
Robert G. Kirchner Law Office
100 Trade Centre Drive, Suite 402
Champaign, IL 61820
Phone: 217-355-5660
Facsimile: 217-355-5675
E-mail: rw-kirchnerlaw@sbcglobal.net

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Howard W. Small        hwslaw@shout.net

David E. Krchak        krchak@tmh-law.com

James D. Green          jim@tmh-law.com

Jerome P. Lyke          jeromelyke@yahoo.com

**By: s/ Robert G. Kirchner**
Robert G. Kirchner
One of the Attorneys for Plaintiffs
100 Trade Centre Drive, Suite 402
Champaign, IL 61820
Phone: (217) 355-5660
Facsimile: (217) 355-5675
E-mail: rgk-kirchnerlaw@sbcglobal.net

**By: s/ Ruth E. Wyman**
Ruth E. Wyman Bar Number: 6284294
One of the Attorneys for the Plaintiffs
Robert G. Kirchner Law Office
100 Trade Centre Drive, Suite 402
Champaign, IL 61820
Phone: 217-355-5660
Facsimile: 217-355-5675
E-mail: rw-kirchnerlaw@sbcglobal.net