**E-FILED**
Monday, 10 September, 2007  10:38:29 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARTEL MILLER and PATRICK THOMPSON, | ) ) ) | |
| Plaintiffs, | ) ) | 05-2142 |
| v. | ) ) | |
| CITY OF CHAMPAIGN, R.T. FINNEY, JOHN MURPHY, TROY DANIELS, JOHN SWENSON, DAVID GRIFFET AND ELIZABETH DOBSON, | ) ) ) ) ) | |
| Defendants. | ) | |

ORDER

The plaintiffs, Martel Miller ("Miller") and Patrick Thompson ("Thompson"), allege violations of their constitutional rights arising from their attempts to videotape and broadcast the interactions between on-duty police officers and private citizens in public places. Thompson also alleges that he was the victim of a racially motivated traffic stop. After the plaintiffs filed several amendments to their complaint, they obtained the assistance of counsel. A third amended complaint has been filed, which is the subject of several motions to dismiss. For the following reasons, the motions to dismiss [100, 103] are granted in part and denied in part.

BACKGROUND

During the summer of 2004, Miller and Thompson attempted to produce a videotaped documentary of police activity and conversations between police officers and the public. In August 2004, Miller was filming a traffic stop when he was approached by Champaign police officers. He was told to stop filming or he would be arrested. Officer David Griffet ("Griffet") went to his car to talk to Assistant State's Attorney Elizabeth Dobson ("Dobson"), who was doing a "ride-along." After conferring with Dobson, Officer Griffet confiscated the camcorder and tape. Both were eventually returned, but the tape recording had been altered or destroyed.

Thompson alleges that, in July 2004, he was filming a traffic stop involving Officer Griffet. Dobson was also filming in the area. The plaintiffs later gave to the City of Urbana a video to be broadcast on its public access television station. The plaintiffs claim the documentary was seized when an employee of Urbana Public Television responded to a subpoena to appear before a grand jury and produce the videotape and all copies. Miller and Thompson were then indicted for violating the Illinois Eavesdropping Act, 720 Ill. Comp. Stat. 5/14-1. The charges were later dismissed.

1

The plaintiffs bring seven claims against the defendant: Count I, delegation of duty to prosecute; Count II, unlawful seizure and prior restraint; Count III, retaliatory prosecution and filing of criminal charges; Count IV, malicious prosecution; Count V, seizure of the camcorder and video; and Count VII, a racially motivated traffic stop.[1]

ANALYSIS

In ruling on a motion to dismiss, a court must accept the plaintiff's well-pled allegations as true and draw reasonable inferences in the plaintiff's favor. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). "Once a claim for relief has been stated adequately, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (*quoting Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). At this early stage of the litigation, the court is not concerned with the plaintiffs' ability to prove their case.

On a Rule 12(b)(6) motion to dismiss, the court limits its analysis to the complaint and its attachments – in this case, the third amended complaint and the fact-intensive affidavits from the two plaintiffs. Facts appearing elsewhere in the record (for example, in the plaintiffs' memorandum in opposition to the motion to dismiss) are relevant if they are consistent with the language of the complaint. *Dausch v. Rykse*, 52 F.3d 1425, 1427 n.3 (7th Cir. 1994). That is, the plaintiff may use those facts to "flesh out" the allegations contained in the complaint.

### I.  Dobson's motion to dismiss

Dobson is named as a defendant in Counts I through V.[2] She claims she is entitled to absolute immunity on Counts I, III and IV, and to qualified immunity on Counts II and V.

### A.

A prosecutor is entitled to absolute immunity when initiating a prosecution or presenting the State's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). But "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). The court must focus on the conduct giving rise to the alleged constitutional violation. *Buckley*, 509 U.S. at 273. "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." *Buckley*, 509 U.S. at 273 (internal citations omitted). The inquiry turns on whether the conduct

---

[1] Counts I, II, III and VII are federal claims. Counts IV and V are apparently state law claims. The parties have stipulated to dismissal of Count VI.

[2] Count I is asserted against Dobson only. Counts II through V are asserted against Dobson and other defendants.

is associated with the judicial phase of the criminal process.  *Imbler*, 424 U.S. at 430.

"The duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom."  *Imbler*, 424 U.S. at 431 n.33.  Count I (delegation of duty to prosecute) alleges that Dobson procured reports, met with various police officials, and sought to convince them to prosecute the plaintiffs for violating the eavesdropping statute.   The plaintiffs allege that this amounts to delegation of a prosecutorial function.  The count heading is apt – Dobson's alleged conduct more closely fits with advocacy than investigation.  Dobson acted in a prosecutorial capacity, for which she is absolutely immune on Count I.

In Count III (retaliatory prosecution), the plaintiffs allege that in addition to the conduct alleged elsewhere in the complaint,  Dobson filed and pursued criminal eavesdropping charges against the plaintiffs in retaliation for their attempts to tape police interactions with the public. Again, the plaintiffs allege conduct consistent with the initiation of a prosecution; Dobson is entitled to absolute immunity on Count III.

In Count IV (malicious prosecution), the plaintiffs repeat some of the allegations stated elsewhere, as well as Dobson's continued (and allegedly wrongful) prosecution of the criminal charges against the plaintiffs.  However, the plaintiffs appear to pursue this claim under state law; they do not cite Sections 1983 or 1988 as they do in their first three counts.  Had the plaintiffs pursued this claim under Section 1983, Dobson would be entitled to absolute prosecutorial immunity as discussed above.  State law claims are subject to a different test: public officials are entitled to immunity for actions performed within their official discretion. *Aboufariss v. City of DeKalb*, 713 N.E.2d 804, 812 (Ill. App. Ct. 1999).  However, they are not immune for conduct resulting from "malicious motives."  *Aboufariss*, 713 N.E.2d at 812.  And malicious motive is exactly what the plaintiffs allege in their complaint and supporting affidavits.  Thus, Dobson is not entitled to public official immunity on Count IV of the complaint.

B.

Dobson claims she is entitled to qualified immunity on Counts II and V.  Count II alleges that Dobson directed Officer Griffet to seize the video recorder and videotape.  Count V alleges little conduct by Dobson other than what is alleged in Count II.  The court presumes that Count V is the state law version of Count II.[3]

---

[3] The presumption is based on the same pleading deficiency present in Count IV – no federal statute is cited.  The very first paragraph of the complaint states that the court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367, which strongly indicates the plaintiffs' intent to pursue one or more state law claims.

The plaintiffs allege that Dobson violated their constitutional right to be free of unreasonable seizure.  In Counts II and V, Dobson is alleged to have seized, or directed another to seize, the plaintiffs' camcorder and videotape, in violation of their constitutional right against unreasonable seizures.  Dobson argues that the items were seized as evidence "in plain view" of a crime for which the plaintiffs were later charged.

The conduct complained of in Count II falls within the category of investigation, for which Dobson may be entitled to qualified immunity.  The defense of qualified immunity shields a government employee from liability "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The inquiry is twofold – to be held liable, the government employee must have violated a constitutional right, and the right must have been clearly established at the time of the violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Johnson v. Fankell*, 520 U.S. 911, 915 (1997) (noting defendant is entitled to qualified immunity "when the complaint fails to allege a violation of clearly established law").

The court's determination at this stage of the litigation is limited to whether the conduct alleged would, if proved, amount to a violation of clearly established federal rights.  *See Johnson*, 520 U.S. at 915.  The right to be free of unreasonable seizure is protected by the Fourth and Fourteenth Amendments to the United States Constitution.  U.S. Const. amend. IV, XIV.  The plaintiffs allege that Dobson "instructed and authorized" Officer Griffet to seize the video recorder and videotape, *knowing* that no crime had been committed.  The plaintiffs assert that they were sixty feet away from the police officer at the time they videotaped the traffic stop, and no voices were audible from that distance.  If true, Dobson lacked probable cause to believe the eavesdropping statute had been violated, and a reasonable person in her position "would have understood that what [s]he was doing violated [the plaintiffs'] right to be free from unreasonable seizure." *Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007).  Dobson's motion to dismiss Count II is denied.

As to Count V, the state law doctrine of public official immunity applies *if* Dobson acted without malice.  *Aboufariss*, 713 N.E.2d at 812.  The issue in Count V is Dobson's role in advising Officer Griffet as to the seizure of the camcorder and tape.  Dobson's conduct is alleged to be wrongful but there no indication that it was malicious.  Consequently, Dobson is protected by public official immunity.  *Aboufariss*, 713 N.E.2d at 812.  She is dismissed from Count V.

In sum, the resolution of Dobson's motion to dismiss hinges on several factors: whether her conduct was prosecutorial or investigative, and whether the plaintiffs' claims are brought under federal or state law.  Count I is dismissed in its entirety.  Dobson's motion is denied as to Counts II and IV.  She is dismissed from Counts III and V.

## II.  The City defendants' motion to dismiss

The plaintiffs have filed Counts II, III, IV, V and VII against one or more of the remaining defendants (the "City defendants").

Counts II and V are asserted against Officer Griffet as well as Dobson.[4]   Count II alleges that Griffet and Dobson arrived on the scene after the plaintiffs videotaped the traffic stop. Officer Justus Clinton complained to Griffet that an audiotape of his voice had been made without his permission.  Miller then showed the videotape to Griffet to demonstrate that no voices were audible during the traffic stop.  Griffet conferred with Dobson and, at her direction, Griffet seized the camcorder and video tape.  When the camcorder and videotape were finally returned to Miller, the videotape had been altered and some footage was missing.

Griffet cites *Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004) for the proposition that a police officer who relies on a prosecutor's advice is entitled to qualified immunity.  The test for qualified immunity in this circumstance is whether the officer has a reasonable basis to believe that probable cause exists.  *Kijonka*, 363 F.3d at 648.  The *Kijonka* court held that the police officer was entitled to qualified immunity because "having consulted [with the prosecutor] and been instructed to arrest [the suspect] he had a reasonable basis for believing he had probable cause to make the arrest."  *Kijonka*, 363 F.3d at 648.  The Seventh Circuit reasoned that the prosecutor is "a law-trained specialist in the enforcement of the criminal law of Illinois," and a police officer's reliance on a prosecutor's advice and direction "goes far to establish qualified immunity."  *Kijonka*, 363 F.3d at 648.  For that reason, the case against the police officer (but not the prosecutor) was properly dismissed.  *Kijonka*, 363 F.3d at 648.  The same outcome is warranted here.  Consequently, Officer Griffet is entitled to qualified immunity on Count II.

As to Count V, the state law claim, Griffet is immune *if* he acted without malice. *Aboufariss*, 713 N.E.2d at 812.  In *Aboufariss*, the Illinois Appellate Court, having found the defendants entitled to immunity on the Section 1983 claims, dismissed the state law claims based on the same factual allegations, finding the defendants were entitled to public official immunity.  *Aboufariss*, 713 N.E.2d at 812.  Griffet's conduct was alleged to be "pursuant to the instruction and authorization of Dobson."  Consequently, Griffet is protected by public official immunity, as there is no allegation that Griffet acted maliciously, knowingly, or recklessly. *Aboufariss*, 713 N.E.2d at 812.  He is dismissed from Count V.[5]

---

[4] Count V was also brought against police officers Justus Clinton and Michael Pyburn, who have been voluntarily dismissed from this action.  *See* docket entry #115.

[5] Dobson and Griffet are the only two defendants named in Count V.  With the dismissal of both defendants, Count V is dismissed in its entirety.

Count III asserts a claim of retaliatory prosecution against Champaign Police Chief Finney and Officers Murphy, Daniels and Swenson.   Count IV alleges that Finney, Murphy, Daniels and Swenson initiated and pursued the plaintiffs' prosecution on charges unsupported by probable cause.

The plaintiffs claim that command officers (presumably Murphy, Daniels and Swenson) communicated Finney's concurrence that criminal eavesdropping charges should be filed against Miller.[6]   Count III alleges that the defendants sought to retaliate against the plaintiffs for their ongoing efforts to monitor the police by videotaping officers interacting with the public.  Count IV is a state law claim of malicious prosecution arising from essentially the same facts.  A key factor in both claims is the absence of probable cause.  *See Hartman v. Moore*, 547 U.S. 250, 261 (2006) ("litigating probable cause [is] highly likely in any retaliatory prosecution case, owing to its powerful evidentiary significance"); *Ritchey v. Maksin*, 376 N.E.2d 991, 993 (Ill. 1978) (requiring successful malicious prosecution claim to show absence of probable cause). The City defendants focus their argument on this aspect of the retaliatory/malicious prosecution claims.

The City defendants argue that a grand jury indictment constitutes "prima facie probable cause," citing *Mutual Medical Plans, Inc. v. County of Peoria*, 309 F. Supp. 2d 1067, 1082 (C.D. Ill. 2004).  However, the plaintiffs correctly point out that a grand jury indictment "is not conclusive evidence of probable cause and it may be rebutted by other evidence[.]" *Mutual Medical Plans*, 309 F. Supp. 2d at 1082 (*citing Freides v. Sani-Mode Mfg. Co.*, 211 N.E.2d 286 (Ill. 1965)).  The City defendants argue that there is no allegation the police officers conveyed false or misleading information to the grand jury, but the plaintiffs need not make that allegation. In Count III, they allege that the criminal charges "were false and were known to be false at the time the charges were 'authorized'[.]" In Count IV, the plaintiffs allege "there was no probable cause for the initiation nor continuation of the proceeding[.]" The plaintiffs have adequately alleged the absence of probable cause.  The court denies the motion to dismiss Counts III and IV.

In Count VII, Thompson claims that Griffet and Officer Lack effectuated a traffic stop and ticketed him because Thompson is African-American.  Thompson claims that he was sitting in his car drinking tea when Griffet walked up to him and asked him what he was drinking. Shortly thereafter, as Thompson drove through Champaign, he was followed by several police officers and was finally pulled over by Officer Lack, who issued a ticket for Thompson's failure to have a lighted rear license plate.  Thompson claims his license plate was lighted,[7] and the

---

[6] Although Count III alleges that Dobson filed eavesdropping charges against Thompson, it does not specifically allege the City defendants' conduct against Thompson.

[7] The defendants state, "there is no allegation that Officer Lack lacked reasonable suspicion, probable cause or any other legal basis to stop Thompson's car," overlooking

2:05-cv-02142-HAB-DGB    # 117    Page 7 of 8

traffic stop was nothing more than the City's continuing pattern and practice of racial profiling and disparate treatment in effectuating traffic stops.

The defendants point out the complaint's failure to specify which of the plaintiffs brings Count VII, and the defendants against which they assert the claim. However, this is not a fatal flaw because the allegations are stated clearly enough against Griffet and the City. Griffet argues that he did not effectuate a traffic stop against Thompson; however, Thompson's affidavit fleshes out the allegations. Thompson was seated in his car, which was stopped in a parking lot as he waited for traffic to clear. Griffet saw Thompson drinking something, approached the car, and learned that Thompson was drinking tea. Thereafter, various police officers began to follow Thompson until Officer Lack pulled him over and issued a warning for his license plate light. Giving Thompson the "benefit of imagination," *Twombly*, 127 S. Ct. at 1969, one could conclude that when Griffet was unable to cite Thompson for drinking tea while driving, Griffet enlisted the assistance of other officers who took turns following Thompson in the hope of citing him for something else, consistent with the City's policy of racial profiling. This endeavor proved unsuccessful until Officer Lack wrote a warning to Thompson for a bogus equipment violation. The motion to dismiss Count VII is denied.

<u>CONCLUSION</u>

For the foregoing reasons, the motions to dismiss [100, 103] are granted in part and denied in part. Counts I and V are dismissed in their entirety. Griffet is dismissed from Count II. Dobson is dismissed from Count III. Dobson's motion [103] is denied as to Counts II and IV, and the City defendants' motion [100] is denied as to Counts III, IV and VII.

The defendants shall file their answer within fourteen days of the date of this order.

Entered this  10th  day of September, 2007.

**s\Harold A. Baker**

_____

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

_____

Thompson's plainly stated allegation that "Officer Lack . . . issued a ticket for not having a [rear] license plate light, which [Thompson] did have."